**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOKOL GJONBALAJ, JOSEPH CAMPBELL, JESSICA COLE, KAREN WERNER, AUSTIN BARDEN, MARY GOVAN,  DIMITRI WILLIAMS, ANTONIO CABEZAS, RICK HORNICK, LISA and STEVEN DELPRETE, and KRZYSZTOF ZIARNO,  individually and on behalf of all others similarly situated, | Civil Action No. 2:19-cv-07165-BMC **JURY DEMAND** **CONSOLIDATED AND AMENDED CLASS COMPLAINT** |
| Plaintiffs, | |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, and VOLKSWAGEN AG, a foreign corporation, | |
| Defendants. | |

<u>**CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Sokol Gjonbalaj, Joseph Campbell, Jessica Cole, Karen Werner, Austin Barden, Mary Govan, Dimitri Williams, Antonio Cabezas, Rick Hornick, Lisa and Steven DelPrete, and Krzysztof Ziarno (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Consolidated and Amended Class Action Complaint against Defendants Volkswagen Group of America, Inc. ("Volkswagen America") and Volkswagen AG ("Volkswagen Global") (together, "VW"). Plaintiffs allege the following based upon personal knowledge as to their own acts, and based upon investigation of counsel as to all other allegations.

## I.       SUMMARY OF THE CASE

1.       VW is one of the world's largest automobile manufacturers and it has been quite profitable in the U.S. over the years.

2.       But VW took a hit to its reputation, credibility, and U.S. profit share as a result of "Dieselgate" – the scandal involving its admitted utilization of a "defeat device" enabling

emissions levels to be faked in approximately "580,000 vehicles it sold between 2006 and 2015," so as to allow them to "pass regulatory lab tests" for emissions levels even though the vehicles' "real-world driving[ ] emissions were several times the permissible limits."[1]

3.      The scandal continues to haunt VW. In fact, just last year, the U.S. Securities and Exchange Commission (SEC) charged VW Global and two of its subsidiaries "for defrauding U.S. investors, raising billions of dollars through the corporate bond and fixed income markets while making a series of deceptive claims about the environmental impact of the company's 'clean diesel' fleet."[2]

4.      In an attempt to win back some U.S. consumers after Dieselgate, VW broadened its written warranty offering the People First bumper-to-bumper New Vehicle Limited Warranty – a 6 year/72,000-mile warranty.[3] The warranty is longer than any other offered in the industry.

5.      All of VW's warranties promise consumers that VW will make "any repair to correct a defect in the manufacturer's material or workmanship."[4]

6.      VW has not honored this warranty statement when it comes to the following VW vehicle models, 2016-present: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and Volkswagen Touareg that are sold with a sunroof (collectively, the "Class Vehicles").[5]

7.      VW also has not lived up to the promises made to consumers in its advertising and marketing materials related to the Class Vehicles.

---

[1]    https://knowledge.wharton.upenn.edu/article/volkswagen-diesel-scandal/ (last accessed 12.20.2019).
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] Plaintiffs reserve the right to amend the Class Vehicles' definition upon further discovery identifying all VW vehicles manufactured and sold with the relevant defective sunroofs.

8.      Consumers purchase the Class Vehicles reasonably expecting that their vehicles can be used in the normal and ordinary manner in which cars are used, including driving in the rain.

9.      Consumers reasonably expect that the Class Vehicles, all equipped with sunroofs, will not suffer water damage in the interior of the car when the sunroof is closed during inclement weather.

10.     Despite these reasonable consumer expectations, VW knowingly, through the use of deceptive practices, sold (and continues to sell) tens of thousands of Class Vehicles equipped with sunroofs that have flaws that cause leaks resulting in damage to the vehicles' interior, including electrical systems, audio systems, upholstery, carpet, roof headliners, seats, and more (the "Defect"). Damage to the electrical systems causes certain features of the cars to malfunction. Consumers have experienced the forward/front and rear sensors malfunctioning which causes their vehicles to slam on the brakes and stop on their own – even when the vehicles are moving at high speeds in the middle of a road.

11.     Internal documents distributed from VW to its dealers in North America reveal that VW has long been aware of the Defect in its manufacturing and/or workmanship and has actively concealed it from consumers. Notably, and as further explained *infra*, VW's internal documents indicate that the Defect stems from "incorrect assembly in production…" and "[i]ncorrect rework in production." VW's attempts to remediate the Defect have concentrated on, *inter alia*, fixing flaws in manufacturing and/or workmanship, such as seals which do not meet its own specifications.

12.     Despite its knowledge of the Defect and the problems associated with it and despite the fact that a diligent consumer could not reasonably learn of the Defect, safety risks, and potential damages on his or her own, VW refuses to disclose and fails to warn consumers about the Defect and the propensity for the Class Vehicles' sunroofs to leak.

13.     VW also refuses and/or is unable to repair, correct, or otherwise remediate the Defect on the Class Vehicles, despite its promise to do so in express warranties to consumers.

14.     VW may have intended its new warranty to win over consumers after Dieselgate, but given that it failed to inform consumers of the Defect, failed to acknowledge or repair it, and failed to honor the spirit and terms of its express warranty until after it expired, the warranty has not restored Class Vehicle consumers' faith in VW.

15.     VW has created another scandal through its deceptive and fraudulent business practices allowing its profits to soar at the expense of its customers.

16.     Plaintiffs, individually and on behalf of proposed classes of consumers who purchased or leased the Class Vehicles with the same or substantially similar sunroof defect in materials and workmanship, seek recovery for damages suffered as a result of VW's defective sunroofs. Thus, Plaintiffs, on behalf of themselves and all Class Members bring this class action against VW for: breach of express warranties (count I); breach of implied warranties (count II); breach of express and implied warranties under the California Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.* (counts III & IV); violation of New York General Business Law §§ 349 and 350 (counts V & VI); violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (count VII); violation of California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (count VIII); violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a (count IX); violation of the Maryland Consumer Protection Act, Md. Code Ann. Law, Com. Law §§ 13-101, *et seq.* (count X); violation of Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501/201, *et seq.* (count XI); violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-2 (count XII); Fraud by Omission and/or Fraudulent Concealment (count XIII); and, Unjust Enrichment (count XIV).

## II.      JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendants because VW has regular and systematic contacts in the state of New York, in which it does business and placed Cass Vehicles into the stream of commerce.

18.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332, the Class Action Fairness Act, because the aggregated claims of Class Members

exceed $5 million, Plaintiffs and Defendants are residents of different states, and there are at least one hundred members of the proposed classes.

19.     Pursuant to 28 U.S.C. § 1391, venue is proper in this District because VW is subject to personal jurisdiction and the sale of some of the named Plaintiffs' Class Vehicles occurred in this District, giving rise to those claims.

## III.     THE PARTIES

20.     Plaintiff Sokol Gjonbalaj is a resident of Ridgewood, New York located in Queens County.

21.     Plaintiff Joseph Campbell is a resident of Liverpool, New York located in Onondaga, County.

22.     Plaintiff Jessica Cole is a resident of Santa Rosa, California located in Sonoma County.

23.     Plaintiff Karen Werner is a resident of Woodside, California located in San Mateo County.

24.     Plaintiff Austin Barden is a resident of Apple Valley, California located in San Bernardino County.

25.     Plaintiff Mary Govan is a resident of Chico, California located in Butte County.

26.     Plaintiff Dimitri Williams is a resident of Naperville, Illinois located in Dupage County.

27.     Plaintiff Antonio Cabezas is a resident of Reisterstown, Maryland located in Baltimore County.

28.     Plaintiff Rick Hornick is a resident of Newtonville, Massachusetts located in Middlesex County.

29.     Plaintiffs Lisa and Steven DelPrete are residents of Jupiter, Florida located in Palm Beach County.

30.     Plaintiff Krzysztof Ziarno is a resident of Lodi, New Jersey located in Bergen County.

31.     Defendant Volkswagen America is a New Jersey corporation with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

32.     Volkswagen America, through its various entities, markets, distributes, and sells Volkswagen automobiles, including the Class Vehicles, in multiple locations across the United States, including New York.

33.     Volkswagen America also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

34.     Defendant Volkswagen Global is a German corporation headquartered in Wolfsburg, Germany.

35.     Volkswagen Global is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States.

36.     Volkswagen Global and/or its agents designed, manufactured, and installed the defective sunroofs in the Class Vehicles.

37.     Volkswagen Global is and was at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within this District by selling, advertising, promoting, and distributing Volkswagen motor vehicles.

38.     Through its wholly owned subsidiaries and/or agents, Volkswagen Global markets its products in a continuous manner in the United States, including in this District.

39.     Volkswagen Global is the parent of, controls, and communicates with Volkswagen America concerning virtually all aspects of the Volkswagen vehicles distributed in the United States.

40.     Volkswagen America acts as the sole distributor for Volkswagen vehicles in the United States, purchasing those vehicles from Volkswagen Global for sale in this country.

41.     Volkswagen Global also developed, reviewed, and/or approved the marketing and advertising campaigns designed to sell the Class Vehicles.

42.     The relationship between Volkswagen Global and Volkswagen America is governed by a General Distributor Agreement that gives Volkswagen Global the right to control nearly every aspect of Volkswagen America's operation—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

43.     Volkswagen America is a wholly owned subsidiary of Volkswagen Global.

44.     VW has thousands of authorized dealerships across the United States and controls the distribution of automobiles, parts, services, and warranty repairs throughout the United States. VW authorizes these distributors and dealerships to sell VW vehicles, parts, and accessories and to service and repair VW vehicles using VW parts. Its operating income through those distributors and dealerships for its North American region totaled €30 billion for the fiscal year ending December 31, 2019.[6] VW sells its vehicles to its authorized distributors and dealerships, which in turn sell those vehicles to consumers. After these dealerships sells cars to consumers, including Plaintiffs and Class Members, they purchase additional inventory from VW to replace the vehicles sold, increasing VW's revenues. Thus, Plaintiffs and Class Members' purchase of Class Vehicles accrues to the benefit of VW by increasing its revenues.

## IV.     FACTUAL BACKGROUND

### A.     *The VW Sunroof Defect*

45.     Defendants manufacture, market, and distribute mass-produced automobiles in the United States under the VW brand name.

46.     The VW automobile models that make up the Class Vehicles in this case are the 2016-present Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and Volkswagen Touareg that are sold with a sunroof. Plaintiffs reserve the right to amend the Class Vehicles definition upon VW

---

[6]     https://annualreport2019.volkswagenag.com/group-management-report/results-of-operations-financial-position-and-net-assets/results-of-operations.html  (The Passenger Cars Business Area recorded sales revenue of €182.0 billion in the period from January to December 2019; 17% of Sale Revenue was attributable to North America).

identifying in discovery all of its vehicles manufactured and sold with the relevant defective sunroofs.

47.     The defective sunroofs in all of the Class Vehicles are substantially similar in design, manufacture, and operation.

48.     The VW sunroofs suffer from defects such that they are prone to leak water into the interior of the vehicle.

49.     The VW sunroofs are defective and prone to leak due to problems with their drainage systems and/or their incorporation of defective seals.

50.     Upon information and belief, VW has found multiple, long-standing sunroof production errors. As noted in an October 24, 2016 Technical Service Bulletin ("TSB"), "[t]he rear sunroof drains may be pinched shut by foam blocks on the headliner, not allowing the sunroof frame to drain properly" due to *"[i]ncorrect assembly in production* [which] allows too much length in the sunroof drain between the second and third securing clips. This causes excess slack in the drain hose allowing the foam block to contact the hose." October 24, 2016 TSB (emphasis added).

51.     Similarly, a November 22, 2016 TSB cites "*[i]ncorrect rework in production*" – "[s]pot welds around the perimeter of the sunroof opening may be too large. This prevents the outer sunroof seal from properly adhering to the body of the vehicle, allowing water to leak through the seal" and "[i]nsufficient cleaning process prior to applying outer sunroof seal. The sunroof frame opening may have been improperly cleaned prior to application of the acrylic tape on the outer sunroof seal. This prevents the outer sunroof seal from properly adhering to the body of the vehicle, allowing water to leak through the seal." November 22, 2016 TSB (emphasis added).

52.     The VW sunroofs present safety hazards to drivers, passengers, and others, as described herein.

53.     Due to the defective nature of the VW sunroofs, owners and lessees as well as others in the public are damaged and/or injured.

54.     All the while, VW profits.

55.     The actual material cost of the sunroof is relatively low, yet VW is able to charge more for the same vehicle if it has a sunroof – making the sunroof option one of the most profitable features in the automotive industry.

**B.     VW's Knowledge and Active Concealment of the Defect**

56.     VW wrongly profits on its defective sunroofs because it has known or should have known of the sunroofs' defective nature for years and VW never informed consumers of the Defect, never warned about the consequences of the Defect, actively concealed the Defect from consumers, and failed to live up to the express and implied warranties it made through its warranty materials, advertisements, and other contractual agreements and promises made to consumers.

57.     VW has been aware of the Defect since at least 2016, when it began issuing warnings and instructions to its authorized dealers about fixing leaks from the sunroof since January 2016. As discussed below, since TSBs and other technical reports are the results of issue-specific investigations, they are the last step in a months-long or even years-long process to fix defects after the manufacturer has become aware of them.

58.     At all relevant times, VW had superior and exclusive knowledge of the Defect and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class Members before their purchase or lease of the Class Vehicles.

59.     Before Plaintiffs and Class Members purchased or leased their respective Class Vehicles, and since pre-production and post-production road testing of the Class Vehicles, if not earlier, VW knew about the Defect through sources not available to consumers, including pre-release testing data, such as design mode failure analysis, early consumer complaints to VW and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from VW dealers about the problem. Publicly available facts set forth *infra* further confirm VW's knowledge.

60.     VW is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, VW conducts tests, including pre-sale and post-sale durability testing, on vehicle components such as the sunroofs in Class Vehicles, to verify the parts are free from

defects and align with VW's specifications. Further, pre-production and post-production testing on vehicles and their components is designed to be harsher than expected "real-world" driving experiences of consumers. Such testing necessarily includes examining the sunroofs. Thus, VW knew or should have known that the sunroofs in the Class Vehicles were defective and prone to leaking.

61.     Additionally, VW should have learned of this widespread Defect from the sheer number of reports it received from dealerships and from customer complaints made directly to it. VW's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

62.     VW's warranty department analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is VW's policy that when a repair is made under warranty, the dealership must provide VW with detailed documentation of the problem and the repair employed to correct it in order to be reimbursed. Dealerships have an incentive to provide detailed information to VW, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

63.     Further, VW issued to its dealers—but not to consumers—a number of TSBs related to the Defect. In general, these TSBs contain a VW's diagnosis of a particular problem as well as its recommended procedures for repair. These TSBs are tied to warranty claims made by consumers.

64.     By the time VW issues a TSB, it has already known of the problem, received various complaints, reports, and/or warranty claims about it, investigated the problem, strategized how to "fix" the problem, and how that "fix" should be communicated to dealers and/or consumers.

65.     The issue date of a TSB does not equate to VW's date of first knowledge about the problem; it would have been aware of, conducted an analysis about, and attempted to develop a response to the Defect well before issuing a TSB.

66.     VW issued no less than twelve TSBs relating to the sunroof feature in the Class Vehicles.

67.     VW also issued various Tech Tips which are treated essentially the same as TSBs. VW distinguishes between a Tech Tip and a TSB because a Tech Tip is, according to VW, not associated with warranty claiming, while TSBs are.

68.     Though Tech Tips are not based on warranty claims, they are only issued after VW has discovered a problem, investigated it, strategized how to "fix" the problem, and determined how the problem and "fix" should be communicated to dealers and/or consumers.

69.     Like TSBs, the date a Tech Tip issues does not equate to VW's date of first knowledge about the issue.

70.     VW issued no less than three (3) Tech Tips relating to the sunroof feature in the Class Vehicles.

71.     VW also has seven dealers in the country that are Product Field Information ("PROFI") designated dealers, which means those dealers are the face of quality control and they work with Volkswagen America engineers to help VW address technical issues.[7]

72.     VW issued no less than three (3) communications to its PROFI designated dealer(s) relating to the sunroof feature in the Class Vehicles and no less than an additional two (2) communications were made to VW dealers in general.

73.     VW also issues Service Actions, which could be referred to as service campaigns and are typically discussed in conjunction with recalls.

74.     Service Actions address technical issues and VW advises that these actions should be completed on all affected vehicles promptly in order to prevent the known problem from occurring.[8]

75.     VW issued no less than three (3) Service Action notices relating to the sunroof feature in the Class Vehicles.

---

[7] https://sites.hireology.com/volkswagenofsouthcharlotte/about.html (last accessed 3.21.2020).
[8] https://www.vw.com/owners-recalls/ (last accessed 3.21.2020).

76.     VW also issued one (1) Special Notice and one (1) Important Notice relating to the sunroof feature in the Class Vehicles.

77.     In total, there have been *at least* twenty-five TSBs, Tech Tips, Communications with PROFI Dealers, Communications with Dealers, Service Actions, and/or Special or Important Notices related to the defective nature of the Class Vehicles' sunroofs and their propensity to leak.

> ### 1. *VW TSBs, Tech Tips, Communications with PROFI Dealers, Communications with Dealers, Service Actions, and Special/Important Notices Related to the Defect*

78.     On January 7, 2016, VW issued an outbound communication with its PROFI dealers concerning "water leak from sunroof/water stains on headliner" instructing the dealers to inspect vehicles presenting with these problems for loose or pinched sunroof drain tubes. An excerpt of the communication appears below:[9]

| MY(s) Affected: | 2015-2016 |
|---|---|
| Vehicle Model(s): | Golf SportWagen |
| VIN Range (if applicable): | All |
| Engine Code(s): | All |
| Gearbox (Manual / Automatic): | All |
| **Issue Description / Symptom:** | |
| Water leak from sunroof / water stains on headliner. | |
| **Workshop Problem Validation Procedure:** | |
| Inspect vehicle for loose or pinched sunroof drain tubes. | |
| **Required Actions:** | |
| If a loose or pinched sunroof drain tube is found to be the cause of the complaint, please obtain pictures showing the condition of the sunroof drain tube and the location of the pinched/disconnected drain on the vehicle.  Please send pictures and vehicle information in to the Profi inbox with the title "2015-047 Golf SportWagen Sunroof Drain Tube."<br><br>Please repair the vehicle as needed. | |

---

[9] https://static.nhtsa.gov/odi/tsbs/2016/MC-10121057-9999.pdf (last accessed 3.21.2020).

79.     This request for an investigation and additional information on a sunroof water leak shows that VW was in possession of information evidencing the existence of the Defect.

80.      In April 2016, after twenty-two weeks of collecting information from its PROFI dealers regarding leaking sunroofs and pinched or loose drain tubes, VW closed its data collection on the issue from its PROFI dealers. An excerpt of the report on the issue appears below:

| Topic ID | Outbound requests closed within the last month | Closed | Weeks Open |
|---|---|---|---|
| 2015-047 | **Golf SportWagen Sunroof Drain Tube (VIN-4-A-PIN)**<br><br>Model Year: 2015-2016<br>Carline(s): Golf SportWagen<br>See outbound request form attached for details.<br><br>This topic is now closed as an outbound request and we are no longer requesting any further actions.<br><br>We have collected all of the information we need for this concern.<br><br>We greatly appreciate your support with this topic. | 4/12/2016 | 22 |

81.     The National Highway Traffic Safety Administration ("NHTSA") recorded VW's closure of its investigation of complaints concerning water leaks from sunroof drain tubes on April 28, 2016, as shown below:



10

_____

[10] https://www.nhtsa.gov/vehicle/2016/VOLKSWAGEN/GOLF%252520SPORTWAGEN#manufacturerCommunications (last accessed 3.21.2020). Note that the closure identifies the Golf, Golf SportWagen, and the GTI as affected vehicles.

82.    On September 28, 2016, VW issued a TSB providing dealers with a "PANORAMIC SUNROOF INSPECTION AND REPAIR PROCEDURE" in the event of a water leak. This TSB states that it applies to the Golf and the Golf GTI, model years 2015-2017. The required parts and tools include a repair kit and sealant.

### Required Parts and Tools

| Part No: | Part Description | Quantity |
|---|---|---|
| 5GM 898 041 | Repair Kit | 2 |
| D  172 090 A2 | Sealant | 1 |

83.    On October 24, 2016, VW issued a TSB instructing dealers of how to inspect and replace the rear sunroof drain hoses and ensure the correct routing of those hoses in the event "Water Leaks from the Rear of the Panoramic Sunroof." This TSB states that it applies to the Golf Sportwagen model years 2015-2017. The required parts include a water drain hose (Part No. 5G0877228).

### Required Parts and Tools

| Part No: | Part Description | Quantity |
|---|---|---|
| 5G0 877 228 | Water Drain Hose | 2 |

For Special Tools see Repair Manual.

//

//

//

//

//

84.    VW then issued a Tech Tip providing a "Sunroof Concern Diagnostic Tree to address Water Leaks, Wind Noise, Mechanical Concerns" on November 18, 2016. In the diagnostic tree, VW specifically acknowledges that the dealer may not be able to replicate the issue and provides steps to take, if this is the case. In the case of a water leak that cannot be replicated, the Tech Tip instructs that the dealer should clean the sunroof drains and adjust the sunroof glass.



85.     Just four days later, on November 22, 2016, VW issued a TSB concerning "Water Leak from Panoramic Sunroof." This TSB also asks dealers to "refer to TSB 2045672 Water Leaks from the Rear of the Panoramic Sunroof" (*i.e.*, the October 24, 2016 TSB). This TSB states that it applies to the Golf Sportwagen and Golf Alltrack, model years 2015-2017. The required parts include a sunroof seal and cleaning solution.

## Required Parts and Tools

| Part No: | Part Description | Quantity |
|---|---|---|
| 5G9 877 459 A | Sunroof Seal | 1 |
| D  00940104 | Cleaning Solution | 0.5 |

For Special Tools see Repair Manual.

86.     VW again issued a TSB on December 6, 2016. The required parts include the repair kit and sealant, just like the September 28, 2016 TSB.

87.     On January 4, 2017, VW issued Special Notice SM 14-2016 to "inform dealers to return all sunroof repair kits" labeled 5GM898041, and to order repair kit 5GM898041A going forward. The sunroof repair kit to be returned is the same one that was ordered to be used in the September 28, 2016 TSB in the event of a sunroof water leak.

88.     The "fix" provided by VW in the form of a sunroof repair kit did not work and the kit itself had to be replaced.

//

//

//

//

//

//

89.     On February 6, 2017, VW issued a TSB to supersede the one it issued on December 6, 2016 to include a different title and clarify the models, VIN range, and application of additional foil patches. This new TSB addressed "Water leak from the Sunroof (Panoramic Roof) on Golf and GTI models." This TSB states that it applies to the Golf and Golf GTI, model years 2015-2017. The required parts include the repair kit and sealant.

## Required Parts and Tools

| Part No: | Part Description | Quantity |
|---|---|---|
| 5GM 898 041* | Repair Kit | 2 |
| D  172 090 A2 | Sealant | 1 |

90.     On August 7, 2017, VW issued an Important Notice to Dealers – For Immediate Distribution to inform dealers about an upcoming update that would provide specific repair instructions on sunroofs "to prevent water leaks into the interior of the vehicle that could be caused by cracks in the sunroof frame."[11]

91.     The August 7, 2017 notice to dealers essentially issued a stop sale order, informing dealers that "each vehicle should be completed when it comes into the dealer for maintenance or any other service visit[,]" and "[d]ealer stock vehicles *cannot, however, be delivered* to consumers until the Update is completed." *Id.* (emphasis in original).

92.     The August 7, 2017 notice to dealers also actively advised dealers to conceal the defects, stating, "Volkswagen is not notifying consumers." *Id*.

93.     On August 8, 2017, VW issued the updated TSB to dealers that it had communicated about the day earlier. The TSB reiterated that dealers must "[p]erform this UPDATE on all applicable vehicles within New Vehicle Limited Warranty" and "[i]t is MANDATORY to perform UPDATES on all applicable vehicles in dealer inventory PRIOR TO

---

[11] https://static.nhtsa.gov/odi/tsbs/2017/MC-10125683-9999.pdf (last accessed 3.21.2020).

RETAIL SALE." (emphasis in original). This TSB states that it applies to the Golf and Golf GTI, model years 2015-2017. The required parts include the repair kit and sealant.

## Required Parts

| Part Description | Part No: | Quantity |
|---|---|---|
| Repair Kit | 5GM898041A | 1 |
| -And if required (cracks are found)- | | |
| Sealant | D  172090A2 | 1 |

94.     On September 6, 2017, VW then issued a TSB that superseded the one previously issued on November 22, 2016. VW issued this new TSB to include an additional model vehicle and an additional model year – the Golf Alltrack and 2018 model year vehicles, in addition to the Golf Sportwagen and Golf Alltrack and model years 2015-2017. This TSB addressed "Water Leak from Panoramic Sunroof" just as the previous November 22, 2017 TSB did. The required parts include a sunroof seal and cleaning solution.

## Required Parts and Tools

| Part No: | Part Description | Quantity |
|---|---|---|
| 5G9 877 459 A | Sunroof Seal | 1 |
| D  00940104 | Cleaning Solution | 0.5 |

For Special Tools see Repair Manual.

95.     VW issued a TSB on February 21, 2018 relating to "Water Leaks from the Rear of the Panoramic Sunroof."

96.     VW issued a Tech Tip on July 27, 2018 relating to the malfunctions that occur after the original sunroof seal has been replaced and the new seal does not properly compress.

97.     On information and belief, this July 27, 2018 Tech Tip relates to sunroof seal (Part No. 5G9877459A).

98.     VW issued a TSB on October 2, 2018 that superseded the one it issued on February 21, 2018 addressing "Water Leaks from the Rear of the Panoramic Sunroof." This TSB states that it applies to the Golf Sportwagen and Golf Alltrack, model years 2015-2018. The required parts include a water drain hose.

## Required Parts and Tools

| Part No: | Part Description | Quantity |
|----------|------------------|----------|
| 5G0 877 228 | Water Drain Hose | 2 |

For Special Tools see Repair Manual.

99.     VW issued a TSB on March 27, 2019 relating to "Sunroof Water Leak, Reduced Adhesion Causing Loose Seal." This TSB states that it applies to the Tiguan LWB, model years 2018-2019. The required parts include cleaner, primer, and gasket (adhesive).

## Required Parts and Tools

| Part Number | Designation | Qty. |
|-------------|-------------|------|
| D  009 401 04 | Cleaner | 0.5 |
| D  366 PR1 A1 | Primer | 1 |
| 3G9 877 459 A | Gasket (adhesive) | 1 |
| Part numbers are accurate at time of publication. Always refer to ETKA for the latest part information. | | |

No special tools required.

100.     On April 1, 2019, VW issued a TSB superseding the one it issued on March 27, 2019. These TSBs addressed the front headliner area showing leakage around the vanity light(s), sunroof, and overhead console area due to water entering via the sunroof.

101.     VW issued another TSB on July 18, 2019 that updated two previous TSBs (October 24, 2016 TSB and October 2, 2018 TSB) it had issued regarding "Water Leak From Rear Of

Panoramic Sunroof." This TSB states that it applies to the Golf Sportwagen and Golf Alltrack, model years 2015-2018. The required parts include a water drain hose (Part No. 5G0877228).

102.    On July 26, 2019, VW issued a Tech Tip related to the anti-lock braking system "ABS, Airbag, Traction and TPMS Lights ON with Numerous Rear Wheel Speed Sensor Faults" explaining that "[c]logged sunroof drains may cause water leaks in the A-pillar areas" which "may result in water ingression into TIUL coupling connector which may result in various system faults. Faults that may be present are C101C4A, C101C29, C101D29, C101D4A, C101D29, C101C14, C101D14, C114602, B10B300." This Tech Tip states that it applies to the Golf, Golf Sportwagen and GTI, model years 2015-2018.

103.    VW issued a dealer communication on December 2, 2019 informing dealers of an available repair for "Service Action 60E2 / Front Sunroof Drain Cleaning & Modification."  The service action affected over 50,000 vehicles and was limited to only 2018 or newer Atlases. An excerpt of the communication appears below:

| | |
|---|---|
| **Issue:** | In some sunroof-equipped vehicles, the front sunroof drains can become blocked with moist debris. If this happens, water could leak into the passenger compartment. |
| **Repair:** | • REPAIR AVAILABLE – December 03, 2019 - Dealers will inspect, clean and modify the front sunroof drains.<br>• See ELSA/ServiceNet for complete repair & claiming instructions<br>• Check both the daily Campaign Open Inventory report <u>and</u> OMD for affected vehicles in inventory. Verify OPEN status in ELSA <u>on the day of repair</u>.<br>• Repair every affected inventory vehicle <u>before delivery to consumers</u>. |
| **Parts Department:** | No parts needed. |

| **Affected Vehicles** | Country | Beginning Model Year | Ending Model Year | Vehicle | Vehicle Count |
|---|---|---|---|---|---|
| | USA | 2018 | 2019 | ATLAS | 49,714 |
| | CAN | 2018 | 2019 | ATLAS | 12,271 |

*Counts reflect overall recall population; some vehicles may have already been repaired. Check Campaigns/Actions screen in Elsa <u>on the day of repair</u> to verify that a VIN qualifies for repair under this action. Elsa is the <u>only</u> valid campaign inquiry & verification source.*

| | |
|---|---|
| **Notes:** | • Schedule owner repairs immediately<br>• Owner mailing – December 2019<br>• Service action expiration date: December 21, <u>2021</u><br><br><u>**U.S.A.:**</u> Loaner/rental coverage cannot be claimed under this action. However, loaner/rental may be covered under the mobility program. Please refer to the Volkswagen Warranty Policy and Procedures Manual for loaner claims information and reimbursement details.<br><br><u>**Canada:**</u> Loaner/rental coverage cannot be claimed under this action. Please refer to the Volkswagen Service Loaner Program to determine loaner eligibility. |

104.    On the same day, VW issued another dealer communication informing dealers that the same repair was available under "Service Action 60E5 / Front Sunroof Drain Cleaning & Modification" for 2018 or newer Tiguans – affecting over 100,000 vehicles. An excerpt of the communication appears below:

| | |
|---|---|
| **Issue:** | In some sunroof-equipped vehicles, the front sunroof drains can become blocked with moist debris. If this happens, water could leak into the passenger compartment. |
| **Repair:** | • REPAIR AVAILABLE – December 03, 2019 - Dealers will inspect, clean and modify the front sunroof drains. <br> • See ELSA/ServiceNet for complete repair & claiming instructions <br> • Check both the daily Campaign Open Inventory report and OMD for affected vehicles in inventory. Verify OPEN status in ELSA on the day of repair. <br> • Repair every affected inventory vehicle before delivery to consumers. |
| **Parts Department:** | No parts needed. |

**Affected Vehicles**

| Country | Beginning Model Year | Ending Model Year | Vehicle | Vehicle Count |
|---|---|---|---|---|
| USA | 2018 | 2019 | TIGUAN | 83,710 |
| CAN | 2018 | 2019 | TIGUAN | 23,769 |

*Counts reflect overall recall population; some vehicles may have already been repaired. Check Campaigns/Actions screen in Elsa on the day of repair to verify that a VIN qualifies for repair under this action. Elsa is the only valid campaign inquiry & verification source.*

| | |
|---|---|
| **Notes:** | • Schedule owner repairs immediately <br> • Owner mailing – December 2019 <br> • Service action expiration date: December 21, 2021 <br> **U.S.A.:** Loaner/rental coverage cannot be claimed under this action. However, loaner/rental may be covered under the mobility program. Please refer to the Volkswagen Warranty Policy and Procedures Manual for loaner claims information and reimbursement details. <br> **Canada:** Loaner/rental coverage cannot be claimed under this action. Please refer to the Volkswagen Service Loaner Program to determine loaner eligibility. |

//

//

//

//

//

//

//

//

105.    The next day, on December 3, 2019, VW issued two Service Actions and provided example letters to be sent out to consumers. One Service Action addressed the Atlas repair and one addressed the Tiguan repair. However, this was VW offering the same repair on different cars. The sample letters are nearly identical. An excerpt appears below:

Dear Volkswagen Owner,

As part of Volkswagen's ongoing commitment to customer satisfaction, we are informing you of our decision to conduct a service action on certain 2018-2019 model year Volkswagen Atlas vehicles. Our records show that you are the owner of a vehicle affected by this action.

| What is the issue? | In some sunroof-equipped vehicles, the front sunroof drains can become blocked with moist debris. If this happens, water could leak into the passenger compartment. |
| --- | --- |
| What will we do? | Your authorized Volkswagen dealer will inspect, clean and modify the front sunroof drains.  This work will take less than one hour to complete and will be performed for you free of charge. Please keep in mind that your dealer may need additional time for the preparation of the repair, as well as to accommodate their daily workshop schedule. |
| What should you do? | Please contact your authorized Volkswagen dealer as soon as possible to schedule this service. To set up an appointment online, please visit www.vw.com/find-a-dealer. |
|  | Please also ensure that you routinely inspect and maintain the sunroof. Refer to your vehicle owner's manual or your authorized Volkswagen dealer for additional information. |
| Service Action Expiration Date | This service action will be available for you free of charge only until December 31, 2021.  If you wish to have this service performed after that date, your dealer's normal labor cost associated with this repair will apply. |
| Lease vehicles and address changes | If you are the lessor and registered owner of the vehicle identified in this action, please forward this letter immediately via first-class mail to the lessee within ten (10) days of receipt. If you have changed your address or sold the vehicle, please fill out the enclosed prepaid Owner Reply card and mail it to us so we can update our records. |
| Can we assist you further? | If your authorized Volkswagen dealer fails or is unable to complete this work free of charge within a reasonable time, or if you should have any questions about this communication, please reach out to us using your preferred method of communication at www.vw.com/contact or by calling us at 800-893-5298. |
| Checking your vehicle for open Recalls and Service Campaigns | To check your vehicle's eligibility for repair under this or any other recall/service campaign, please visit www.vw.com/owners/recalls and enter your Vehicle Identification Number (VIN) into the Recall/Service Campaign Lookup tool. |

We apologize for any inconvenience this matter may cause; however we are taking this action to help ensure your vehicle continues to meet and exceed your expectations.

Sincerely,

Volkswagen Customer Protection

106.    The following day, VW revised the Service Action to update the criteria I.D. in claiming instructions.

107.    Each TSB, Tech Tip, communication, Service Action, and notice typically lists the affected models and model years, but each usually only states that it is applicable to one series of vehicles, either the Golf *or* the Atlas *or* the Tiguan, for example. Even if the same repair kit, part,

problem, code, procedure, "fix" is at issue for multiple cars (*e.g.*, the Golf, Atlas, *and* the Tiguan), VW provides separate documents for each series. This compartmentalization is by design. VW knows that certain information provided about, for example, the Golf Alltrack could, and often times would, impact, for example, the Tiguan in the same manner. This is evident upon closer examination of the documents. The same repair kits, same parts, same problems, same language, same procedure, and same "fixes" appear in reports relating to the Golf Alltrack as appear in reports relating to the Tiguan or even the Atlas.

108.   One example is the sunroof drain hose drain valve which is discussed in both December 3, 2019 Service Actions – the one for the Atlas and the one for the Tiguan. Both letters, in describing the repair process, include the following two images depicting and describing the sunroof drain hose drain valve.



- Remove flaps from left front and right front sunroof drains.



**Removing sunroof drain flap:**

> ⓘ **NOTE**
>
> When working during extreme temperatures, it is recommended that the vehicle be allowed to acclimate inside the shop to avoid temperature-related component damage/breakage. Damage to plenum chamber covers will not be covered under this action.

- Carefully lift the plenum chamber cover approximately 15 cm.

- Reach in along the outer edge of the plenum chamber (between the wiper transmission and the plenum chamber on the left side).

- Carefully remove the red sunroof drain flap <arrow> downward off the sunroof drain.

- Repeat on the opposite side.

109.    As the image below depicts, this same part is used in the Golf Alltrack, Atlas, Beetle, e-Golf, Golf, Golf R, Golf SportWagen, GTI, SportWagen, and the Tiguan.



110.    When it comes to VW sunroofs, the same parts are used across different models and used in different model years.

111.    Thus, VW's knowledge as to the sunroof Defect in one model vehicle or in a particular model year is evidence that VW knew or should have known about the Defect in other model vehicles or other model years with the same or substantially same sunroofs and parts.

112.    Based on these TSBs, Tech Tips, Communications with PROFI dealers, Communications with Dealers, Service Actions, and/or Special or Important Notices related to the defective nature of the Class Vehicles' sunroofs and their propensity to leak in addition to pre-production testing and design failure mode analysis, early complaints to dealers and warranty claims, replacement part orders, and complaints made to Volkswagen America and NHTSA discussed in more detail below, VW was aware of the sunroof Defect in the Class Vehicles but

continued to misrepresent the safety, reliability, and ability to drive the Class Vehicles in any weather, and further concealed the sunroof Defect and its effects from Plaintiffs and Class Members.

113.    Plaintiffs anticipate discovery will reveal additional internal documents, exclusively within the possession and control of VW, that demonstrate VW's knowledge and the extent of the cover up and concealment of the Defect from consumers.

### 2.    VW's Recent Attempts to Notify Consumers and Offer Repair is Too Little, Too Late

114.    Some Class Members have received letters similar to the sample letters provided in the December 3, 2019 Service Actions. However, after initiation of this lawsuit in late December 2019, the letter sent out in March 2020 expanded the service action from being available on certain 2018-2019 model vehicles to certain 2015-2019 model vehicles. An excerpt of the March 2020 letter received appears below:

| | |
|---|---|
| **Dear Volkswagen Owner,** As part of Volkswagen's ongoing commitment to customer satisfaction, we are informing you of our decision to conduct a service action on certain 2015-2019 model year Volkswagen vehicles. Our records show that you are the owner of a vehicle affected by this action. | |
| **What is the issue?** | In some sunroof-equipped vehicles, the front sunroof drains can become blocked with moist debris. If this happens, water could leak into the passenger compartment. |
| **What will we do?** | Your authorized Volkswagen dealer will inspect, clean and modify the front sunroof drains. This work will take about one hour to complete and will be performed for you free of charge. Please keep in mind that your dealer may need additional time for the preparation of the repair, as well as to accommodate their daily workshop schedule. |
| **What should you do?** | Please contact your authorized Volkswagen dealer as soon as possible to schedule this service. To set up an appointment online, please visit www.vw.com/find-a-dealer. |
| **Service Action Expiration Date** | This service action will be available for you free of charge only until December 31, 2021. If you wish to have this service performed after that date, your dealer's normal labor cost associated with this repair will apply. |
| **Lease vehicles and address changes** | If you are the lessor and registered owner of the vehicle identified in this action, please forward this letter immediately via first-class mail to the lessee within ten (10) days of receipt. If you have changed your address or sold the vehicle, please fill out the enclosed prepaid Owner Reply card and mail it to us so we can update our records. |

115.    This, and similar letters, being sent out does not right the wrongs VW has committed.

116.    A limited number of customers will actually receive, read, and take advantage of the offer in the letter by the December 31, 2021 deadline.

117.    The offered inspection along with the cleaning and modification of the front sunroof drains is not a permanent fix to the Defect and VW has not informed Plaintiffs and Class Members of this.

118.    Further, VW only offers to clean and modify the front sunroof drains. Yet, the TSBs, Tech Tips, Communications with PROFI dealers, Communications with Dealers, Service Actions, and Special and Important Notices discussed above indicate that the Class Vehicles' sunroofs have a propensity to leak from several areas, not just from the front drains.

119.    Even if the front drains were the only area where leaking occurred, there would be no guarantee that the inspection and suggested modification would fix the Defect permanently.

120.    There have been numerous TSBs, Tech Tips, Communications with PROFI dealers, Communications with Dealers, Service Actions, and Special and Important Notices related to the defective nature of the Class Vehicles' sunroofs and their propensity to leak and the problem continues to persist.

121.    The letter also would not remedy the damage suffered by vehicle owners whose car has interior damage to the headliner, carpet, electronics, electrical functions, etc. as VW does not offer to repair or replace any such damage caused by the defective sunroofs.

122.    The letter also cannot remedy the damage suffered by vehicle owners whose cars previously leaked and required a sunroof repair/replacement and leak damage repair that the owner paid for out-of-pocket and/or through an insurance claim with a deductible.

### 3.    *Consumer Complaints Demonstrate the Extent and Magnitude of the Defect as well as VW's Knowledge*

123.    Consumer complaints also demonstrate that VW knew or should have known of the Defect since at least 2016.

124.     Consumers complained publicly and directly to VW about the sunroof Defect and symptoms thereof via blogs, VW group websites, NHTSA, social media, and other forums.

### a.     Examples of VW Forum Consumer Complaints.

125.     One VW group website demonstrates the sheer volume of consumers experiencing VW sunroof leaks, the frustration and lack of help from VW dealers, and the lack of any permanent solution to the problem. Indeed, a search for "Sunroof Leak" at forums.vwvortex.com, a website dedicated to VW owners and enthusiasts, returns a maximum 3,000 results.

126.     In an informal poll of MK 7 / MK 7.5 owners, 40.16 percent of respondents indicated that they had suffered leaks from their VW Sunroof.



View Poll Results: Has your MK7 /MK 7.5 pano roof leaked?
Voters: 127. You may not vote on this poll
YES — 51   40.16%
NO — 76   59.84%

12

127.     Users' posts on this site demonstrate that VW knew about the specific problems addressed in its TSBs, Tech Tips, and other documents for year(s) before issuing those documents to dealers.

128.     The following communications demonstrate that VW knew of and attempted to correct the sunroof Defect prior to September 2016. On September 13, 2017, user girottic stated, "picking up my Alltrack tonight after 1 ½ weeks at the dealer. This is the 3rd attempt at fixing the leak. Water stains and dampness appeared on headliner, down both 'A' pillars and around panel

---

12 https://forums.vwvortex.com/showthread.php?9301399-POLL-Has-your-MK7-MK7-5-pano-roof-leaked/page2.

above rear view mirror after each fix." The user continued the post with a summary of the work and parts used. An excerpt of the post appears below:

```
1st attempt: Unkink front drain lines
2nd attempt: Replace both forward drain lines and headliner
3rd attempt: " . . . sunroof outer seal was lose . . . replaced. . . (see part #s below)
```

```
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
A       SUNROOF/CONVERTIBLE IS LEAKING PLEASE INSPECT AND REPORT
60VWZ        W           SUNROOF/CONVERTIBLE        0.00
    Tech(s):  19552
    5GM-867-501-J-ZA4           1 ROOFLINING
    5GM-867-233-F-MUY           1 PILLARTRIM
    5GM-867-234-F-MUY           1 PILLARTRIM
    5G9-877-459-A               1 GASKET
    D-009-401-04                1 *CLEANER
Pts:      1,114.78 Lbr:          0.00 Other:          0.00 Total Line A:
Story: 18282   NOTICE WATER STAIN ON BOTH SIDE A PILLAR AND
HEADLINER. REMOVE ALL GRAB HANDLES, SUN VISOR AND HEADLINER.
PERFORM WATER LEAK TEST FOR HALF HOUR. NOTICE WATER LEAK
FROM OUTER SUNROOF SEAL. INSPECT OUTER SUNROOF SEAL. CONTACT
TECH LINE. VTA 2212065. FOUND SUNROOF OUTER SEAL WAS LOOSE
AND NOT ATTACHED TO THE BODY. REMOVE SUNROOF GLASS PANELS
AND SUNROOF FRAME. REMOVE OUTER SUNROOF SEAL. CLEAN ALL
ADHESIVE ON THE BODY. CLEAN BODY WITH CLEANER. REPLACED
OUTER SUNROOF SEAL. REINSTALL SUNROOF FRAME. REINSTALL GLASS
PANELS. ADJUSTED SUNROOF FRAME AND GLASS PANELS. PERFORM
WATER LEAK TESTED. REPLACED HEADLINER AND TRANSFER WIRING
HARNESS AND PARTS TO NEW HEADLINER. REPLACED BOTH SIDE
A-PILLAR TRIM. REINSTALL ALL REMOVED PARTS.  VC WBR.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

[13]

Two users responded to girottic's post on September 18, 2017. User iluvbugs1970 wrote,

 I have a '16 SEL (not an Alltrack). I had a leak and a horribly annoying rattle that was fixed in August. They had to remove the entire sunroof assembly from the car. VW says that there are metal pieces in the sunroof cutout that are sticking up high than they should be, and the sunroof frame cannot seal properly. So the metal was ground down, the areas refinished and the entire sunroof was put back together….

Veedubgti then responded that

[t]he posted repair is exactly what they did to mine. It has been over a year now [sometime prior to September 2016] and I haven't observed anymore leaking (knock on wood). I must say though, every time it rains, when I get into my car, the first thing I do is look up. I have zero faith in the 'fix' but so far, so good. Again, knock on wood. My car was built in 12/15.[14]

---

[13] https://forums.vwvortex.com/showthread.php?8833009-Another-Pano-Roof-leak-(fixed-) (last accessed 3.23.2020).
[14] *Id.*

129.    A little over a month after the original post, user girottic posted a post-repair update to inform the group that the repair had not worked, and the sunroof was leaking again. On October 18, 2017, girottic wrote "And . . . . it's back. We haven't had much rain until this past week. Then this. [photo of damage] I spotted [water damage] above the passenger side window a couple of days ago. It's back to the dealer for the **4th time** next week. Awesome car, but this issue is infuriating."[15] (ellipse and emphasis in original).

130.    On June 22, 2019, user blbo posted expressing frustration with the sunroof leak Defect because this was the third time taking his/her vehicle into the dealer to attempt to address the issue. blbo's frustration was so great that he/she was considering implementing a DIY fix wherein he/she would seal the sunroof shut. blbo suggests the car would be much better without the sunroof feature. blbo's full post was as follows:

| blbo | "Permanently" sealing a leaky sunroof    06-22-2019 09:29 AM    Reply  #1 |
| --- | --- |
| n00b<br><br>Join Date:  Oct 5th, 2015<br>Posts:       5 | Hi,<br><br>My car is at the dealer for the third time with a sunroof leak, with the third one appearing less than 2 month after the 3y warranty expired... I am hoping that VWoA will cover the repair, but I am also ready for the worse.<br>At this point, I am about done with the sunroof, which I never open anyway, so I am thinking of tapping it shut by covering the whole roof with some form of plastic file. Maybe the type of material that is used to make hood "bras". Has anybody done this?. What kind of film can I use? It should leave no residue when removed, possibly a couple of years from now, and resist Louisiana sunlight. Are the fuses for the curtain and the roof the same? I'd rather be able to open the curtain.<br><br>Blaise |

16

---

[15] *Id.*

[16]     https://forums.vwvortex.com/showthread.php?9323775-quot-Permanently-quot-sealing-a-leaky-sunroof&highlight=sunroof+leak (last accessed 3.10.2020).

131. On December 16, 2018, user Houdinize posted sharing his/her personal story and seeking solutions as he/she "searched" but could not find that anyone had gotten their sunroof leak "fixed for good." Houdinize's full post was as follows:



17

**b.   Examples of NHTSA Consumer Complaints**

132. VW monitors customers' complaints made to NHTSA. Federal law requires automakers like VW to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

133. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their

---

17        https://forums.vwvortex.com/showthread.php?9275549-Has-anyone-had-a-water-leak-actually-fixed-My-3rd-VW-in-a-row-is-leaking!&highlight=sunroof+leak        (last        accessed 3.10.2020).

ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, VW knew or should have known of the many complaints about the sunroof Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, VW to the Defect. Upon information and belief, Volkswagen America monitors NHTSA complaints and responds to NHTSA inquiries and investigation as Volkswagen Global's designated agent in the United States. As such, Volkswagen America has the right to request manufacturing and design information within the possession of Volkswagen Global.

134. The following are examples of the many complaints from owners and lessees of the Class Vehicles concerning the sunroof Defect available through NHTSA's website. Spelling and grammar mistakes appear as in original. The date provided is the date reported by NHTSA and may or may not correspond with the actual date of incident.

a. <u>December 8, 2016 in a 2015 Golf Sportwagen</u>
MARCH 10, 2019 - BEGINNING ON 12/08/2016, MY VW HAS BEEN TO SERVICE FOR A LEAKING SUNROOF 4 TIMES (THE CAR WAS LESS THAN 3.5 YEARS OLD!). THE WATER HAS FILLED THE SPARE TIRE/SUBWOOFER WELL FULL, DRIPPED THROUGH THE LIGHTING AND ELECTRICAL SWITCHES OF THE ROOF, DRAINED INTO THE DASH AND SHIFTER AS WELL AS MY LAP WHILE DRIVING. AND IT PRESENTS SO MUCH MOISTURE IN THE CAR THE WINDOWS WILL NOT DEFOG WITH THE A/C ON. VW MAINTENANCE DEPARTMENTS ALWAYS BLAME ME FOR DEBRIS CLOGGING THE ROOF DRAINS. I'VE SINCE BEEN INFORMED OF TWO TSBS ON THIS ROOF ADDRESSING THE FLAWED ENGINEERING. ALL THE DEALERSHIPS HAVE DONE IS CLEARED MY DRAIN HOSES AND ON THE 4TH RETURN, PRESENTED A $1,600 BILL FOR REMOVING AND REPLACING MY DRAINS. I REFUSED THE REPAIR AND HAVE DUCT TAPED MY ROOF TO PREVENT FURTHER WATER DAMAGE UNTIL THIS MATTER IS FORMALLY RESOLVED. VW CUSTOMER CARE HAS REFUSED TO PAY FOR THIS SERVICE CLAIMING IT IS A MAINTENANCE ISSUE. GIVEN WHERE I LIVE, THE CALIFORNIA CENTRAL VALLEY, DURING THE FIRST THREE YEARS OF OWNING THIS VEHICLE, WE RARELY HAD RAIN. APPROXIMATELY EVERY 8 MONTHS THE CAR HAS BEEN TAKEN TO A VW DEALERSHIP TO ADDRESS THE LEAKING ROOF.

b. <u>July 1, 2018 on a 2017 VW Alltrack</u>
PANORAMIC SUNROOF LEAKS. HEADLINER I AND CARPET IS BADLY STAINED WITH VISIBLE MOLD GROWTH. PILLAR STAINING AS WELL. WATER LEAKS FROM DOME LIGHT AND SUNROOF CONTROL BUTTONS. WATER ALSO LEAKS INTO FOOT WELL. TAKEN TO TWO DIFFERENT DEALERSHIP WHO HAVE SAID THAT IT IS LIKELY THE

SUNROOF DRAINS ARE BLOCKED BY DEBRIS AND REPAIR WOULD
NOT BE COVERED BY WARRANTY. THERE IS NO WAY FOR THE
CONSUMER TO ACCESS THE SUNROOF DRAINS TO KEEP THEM CLEAR,
PARTICULARLY THE REAR DRAINS, WHICH ENTAILS DISMANTLING
PART OF THE CAR. THIS IS A KNOWN ISSUE WITH MANY REPORTED
COMPLAINTS BY OWNERS WITH A TECHNICAL SERVICE BULLETIN
BEING ISSUED. PLEASE ENCOURAGE AN INVESTIGATION AND
REPARATIONS FROM VW.

c.  November 4, 2018 on a 2017 VW Alltrack
PANORAMIC SUNROOF LEAKS WHEN DRIVING IN THE RAIN.
WINDOWS FOG UP, STAINS HEADLINER AND MOISTURE WILL OVER
TIME CAUSE MOLD IN VEHICLE. IN COLD TEMPERATURE FROZEN
CONDENSATION OBSERVED INSIDE OF VEHICLE WINDSHIELD AND
BACK WINDOW MAKING IT DIFFICULT TO SEE OUT.

d.  November 21, 2018 on a 2017 VW Alltrack
PANORAMIC SUNROOF LEAKS WATER INTO INTERIOR, CAUSING
CONDENSATION ON ALL INTERIOR GLASS AND MAKING IT
DIFFICULT/IMPOSSIBLE TO SEE OUT. THERE IS SO MUCH
CONDENSATION THAT AC/DEFROST SETTINGS CANNOT REMOVE IT
IN A TIMELY MANNER. IT TAKES SO LONG THAT ONE TRIES TO DRIVE
EVEN BEFORE FULL OUTWARD VISION HAS BEEN RESTORED,
INCREASING RISK GREATLY.

e.  November 14, 2018 in a 2018 VW Tiguan
PANORAMIC MOONROOF LEAKAGE.WATER DRIPPING INSIDE
VEHICLE ABOVE HEAD ON REAR RIGHT SIDE AND GOING DOWN INTO
SEATBELTS COMPARTMENT.VEHICLE WAS STATIONARY.WATER
DRIPPING IINSIDE SEAT BELT COMPARTMENT IN MY OPINION MAY
CAUSE SHORT SINCE SOME ELECTRICAL GOING THRU SAME
COMPARTMENT.

f.  September 23, 2018 in a 2015 VW Golf Sportwagen
LEAKING PANORAMIC SUNROOF CAUSES MOISTURE AND MOLD ON
THE INTERIOR OF THE VEHICLE. HAPPENED IN THE RAIN WHEN
PARKED AND DRIVING.

g.  December 12, 2018 in a 2015 VW Sportwagen
PROBLEM NOTICED DECEMBER 12TH WHEN ONE BY ONE ALL THE
WARNING LIGHTS CAME ON INCLUDING THE AIR BAG, THE
STABILIZATION SYSTEM, THE HEADLIGHT SYSTEM AND OTHERS.
THEN WHEN I STOPPED AT A RED LIGHT, THE CAR WOULD NOT SHIFT
OUT OF 1ST GEAR. I ENDED UP HAVING TO HAVE MY VEHICLE TOWED
BACK HOME. THE NEXT DAY A MECHANIC SCANNED IT AND SAID
THERE WAS A PROBLEM IN THE EMITIONS SYSTEM WHICH DISABLED
THE CAR BY MAKING IT NOT ABLE TO DRIVE. I THEN HAD IT TOWED
TO THE NEAREST VW DEALER WHO TOLD ME THAT THE WHOLE
PROBLEM, INCLUDING THE FAILURE OF THE SAFETY SYSTEMS, WAS
CAUSED BY A LEAK IN THE SUNROOF. WATER RAN DOWN THE A-
PILLER AND SHORTED SOME WIRING. THEY GAVE ME A PRINT OUT
WHERE VW ADMITS THAT THIS IS THE RESULT OF A PRODUCTION
DEFECT BUT THEY SAID THAT IF THE DEFECT WAS NOT FOUND
BEFORE THE WARRANTY RAN OUT THAT VW WOULD NOT ALLOW IT

TO BE FIXED UNLESS I PAID THEM OVER $1,0000. AS IT IS, I HAD TO PAY THEM $240 TO TAKE THE TRIM OFF OF THE A-PILLER AND DRY THE WIRING OUT. THIS MADE THE CAR RUN NORMALLY FOR THE TIME BEING BUT NOW I AM AFRAID THAT IT WILL HAPPEN AGAIN.

h.   September 27, 2018 2017 VW Alltrack
TL* THE CONTACT OWNS A 2017 VOLKSWAGEN GOLF ALLTRACK. THE CONTACT STATED THAT THE SUN ROOF WAS BLOCKED AND LEAKED WATER INTO THE VEHICLE WHEN IT RAINED. THE VEHICLE WAS TAKEN TO VOLKSWAGEN OF THE WOODLANDS (855-436-0113, LOCATED AT 16785 INTERSTATE 45 SOUTH, THE WOODLANDS, TX 77385) WHERE IT WAS STATED THAT THE FAILURE WAS DUE TO NEGLIGENCE BY THE CONTACT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND STOOD BY THE DEALER'S RULING. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 23,000. *DT UPDATED 11/2/18*JB THE CONSUMER STATED THE MANUFACTURER ADVISED ANY TIME THE VEHICLE WAS DRIVEN THROUGH MUD IT WAS POSSIBLE FOR THE DRAINS TO BECOME BLOCKED, WHICH THE CONSUMER WOULD BE RESPONSIBLE FOR REPAIRING.

i.   May 14, 2018 on 2017 VW Golf Alltrack
2017 VW GOLF ALLTRACK: HAVE HAD THIS CAR FOR FOUR MONTHS NOW AND JUST HAD THREE DAYS WORTH OF RAIN HERE IN MICHIGAN. THE FRONT OF THE HEADLINER IS COMPLETELY SOAKED ON BOTH A-PILLARS AND AROUND THE OVERHEAD CONSOLE OF THE VEHICLE. DEALERSHIP SAID IT WAS MORE THAN LIKELY WELDS THAT DIDN'T GET SMOOTHED DOWN AND THEREFORE PINCH THE TUBES THAT DRAIN THE TROUGH IN THE SUNROOF AREA NOT ALLOWING IT TO FLOW BACK INTO THE OPENING IN THE CAR. IN OTHER WORDS, VW SOLD ME A CAR WITH A KNOWN DEFECT! NOW I HAVE TO TURN MY CAR IN FOR SOME UNKNOWN AMOUNT OF TIME, HAVE THEM TEAR THE INSIDE APART, TAKE THE CAR TO A BODY SHOP AND HAVE THE BODY SHOP GRIND THE WELDS DOWN SMOOTH, THEN INSTALL A NEW HEADLINER IN THE CAR. THAT'S ALL GREAT (NOT REALLY), BUT WATER IS INCREDIBLY DESTRUCTIVE, SO WHAT ABOUT THE WATER THAT'S RUN DOWN THE A-PILLARS AND GOTTEN IN TO THE INSULATION IN THE DOORS? OR THE WATER THAT RAN LIKE A FAUCET OUT OF MY OVERHEAD CONSOLE THIS MORNING WHEN I STARTED DRIVING THAT DUMPED ALL OVER MY ELECTRONICS AND TRANSMISSION COLUMN? WHAT ABOUT THE POSSIBILITY OF WATER THAT WON'T BE LOOKED FOR IN THIS APPARENT FIX OF A KNOWN PROBLEM THAT THEN TURNS INTO BLACK MOLD THAT I AND MY FAMILY BREATH EVERY DAY FOR THE LIFE OF THE CAR?! THIS HAS TO BE CORRECTED AS THERE IS NO WAY THIS CAR SHOULD HAVE BEEN SOLD TO ME AND MY FAMILY WITH A KNOWN DEFECT.

j.   December 25, 2018 2017 VW Golf Sportwagen
PANORAMIC SUNROOF IS LEAKING WATER IN MULTIPLE PLACES. WHILE VEHICLE IS STATIONARY AND EXPOSED TO RAIN OR SNOW THE INSIDE OF PASSENGER CABIN GETS FILED WITH WATER, SPECIFICALY ON REAR RIGHT PASSENGER SIDE AND TRUNK AREA.

THE SPARE TIRE COMPARTMENT GET FILLED UP WITH WATER EVERY TIME IT RAINS.

k.   July 28, 2018 on a 2016 VW Golf Sportwagen
THE DRAIN ON RETRACTABLE ROOF BECAME BLOCKED. RAINWATER DRAINED INTO CAR SATURATING CARPETS. WATER FLOWED INTO CONTROL SYSTEM CAUSING AN EMERGENCY DASHBOARD ALERT TO STOP DRIVING IMMEDIATELY WHILE DRIVING ON HIGHWAY. THIS EVENT OCCURRED TWICE: FIRSTLY IN NEW YORK THEN TWO WEEKS LATER IN PA. VW SERVICE IN PA REPLACED CONNECTORS. VW SERVICE IN BROOKLYN NY AND WESTCHESTER PA EXPLAINED THAT THERE IS A DESIGN FAULT IN THE DRAINAGE SYSTEM IN THE RETRACTABLE ROOF.

l.   October 8, 2019 2017 VW Alltrack
TL THE CONTACT OWNED A 2017 VOLKSWAGEN GOLF ALLTRACK. THE CONTACT STATED THAT THE SUN ROOF LEAKED AND CAUSED MOLD TO FORM INSIDE THE VEHICLE. THE VEHICLE WAS TAKEN TO VOLKSWAGEN CLEAR LAKE (281-848-5500, LOCATED AT 15100 GULF FWY, HOUSTON, TX 77034) WHERE IT WAS DETERMINED THAT THE FAILURE RESULTED FROM THE OWNER'S NEGLIGENCE OF PROPER VEHICLE MAINTENANCE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND SUPPORTED THE DEALER?S CLAIM. THE CONTACT WAS INFORMED TO TAKE THE VEHICLE TO THE INSURANCE COMPANY. THE INSURANCE COMPANY TOTALED THE VEHICLE, STATING THAT IT WAS UNSAFE TO DRIVE. THE FAILURE MILEAGE WAS 11,000. THE VIN WAS NOT PROVIDED.

m.   September 20, 2019 on a 2017 VW Alltrack
I AM SEEING WATER STAINS ON MY HEADLINER AROUND THE ENTIRE PANORAMIC SUNROOF. THERE IS WATER SOAKING THE CARPETS ON THE FRONT AND REAR PASSENGER CARPETS. THERE IS ALSO A MUSTY SMELL DUE TO THE STANDING WATER THAT HAS BEEN LEAKING FROM THE SUNROOF.

n.   April 30, 2019 on a 2017 VW Alltrack
THIS PAST SPRING I NOTICED THE CAR'S HEADLINER WAS WET AND STAINED. IT THEN BEGAN TO DRIP COPIOUS AMOUNTS OF WATER INTO THE VEHICLE DURING HEAVY RAINSTORMS. THE CAR IS ONLY A YEAR AND A HALF OLD AND HAS 20,000 MILES. BUT THERE ARE WATER STAINS EVERYWHERE AND IT WILL BE A MOLD ISSUE SOON, I'M AFRAID. TOOK IT TO THE DEALER, THE CAR IS UNDER WARRANTY. THEY SAID IT'S A MAINTENANCE ISSUE, NOT A WARRANTY ISSUE BECAUSE THE DRAINS THAT RELEASE THE WATER FROM SUNROOF ARE ALL BLOCKED WITH DEBRIS. DEALER FIRST ASKED ME IF I HAD JUST SIMPLY LEFT THE SUN ROOF OPEN AND WAS VERY PATRONIZING, BY ASKING ME IF THERE WAS JUST A LEAF STUCK UP THERE, CALLING ME HUNNY OVER THE PHONE. I TOLD HIM NO, SOMETHING WAS WRONG AND WE DROPPED IT OFF. $600 TO CLEAR DRAINS. WE REFUSED BECAUSE WE FOUND MANY OTHER PEOPLE EXPERIENCING THE SAME PROBLEM WITH THE SAME CAR AND THERE IS A TECHNICAL SERVICE BULLETIN FOR THE PROBLEM. WE READ THE VW HELPED COVER THE COSTS FOR MANY PEOPLE SO WE CALLED VW CUSTOMER CARE. I ASKED FOR A BUYBACK OR FOR

THEM TO FIX THE CAR. THEY CALLED ME BACK SAYING THERE WAS NOTHING THEY COULD DO AND REFUSED TO ADMIT THIS IS A DEFECT IN THE DESIGN OF THE CAR. EVEN IF I JUST GOT THE DRAINS CLEARED, THERE WAS STILL DAMAGE DONE BY THE "MAINTENANCE" NOT BEING TAKEN CARE OF. "MAINTENANCE" THAT WE KNEW NOTHING ABOUT AND THERE IS NOTHING IN THE OWNER'S MANUAL ABOUT CLEARING THE DRAINS UNTIL AROUND 40,000 MILES. I WAS ASKED IF I PARKED UNDER TREES. WELL, YEAH, WE CAMP A LOT. THIS CAR IS ADVERTISED AS AN ADVENTURE CAR. I ALSO DON'T HAVE THE LUXURY OF PARKING IN A GARAGE. I'M A TEACHER. I WORK HARD TO MAKE CAR PAYMENTS, BUT I BOUGHT BRAND NEW CAR NOT KNOWING I WOULD NEED TO BE SPENDING HUNDRED UPON HUNDREDS OF DOLLARS TO "MAINTAIN" SUNROOF DRAINS. THE CAR IS CURRENTLY AT ANOTHER DEALER AND THEY WANT NUMBERS IN THE THOUSANDS TO FIX THE WATER DAMAGE.

o.  May 4, 2019 on a 2017 VW Alltrack
ROOF/SUNROOF LEAKING CAUSING STAINED HEADLINER AND WET CARPETING. VEHICLE SMELLS OF MOLD AND MILDEW AND CAUSES EXCESSIVE CONDENSATION ON WINDSHIELD. VW DEALERSHIP IN FAIR LAWN NJ ATTEMPTED REPAIR BY REPLACING SUNROOF DRAIN TUBES BUT DID NOT RESOLVE THE ISSUE. NEW LEAKS HAVE DEVELOPED AND DEALER SERVICE IS UNCLEAR WHERE OR WHAT IS CAUSING THEM. AS OF 6/12/2019 DEALER IS ATTEMPTING SECOND REPAIR STATING THE SUNROOF FRAME NEEDS TO BE REPLACED. UNSURE IF THIS WILL RESOLVE THE ISSUE.

p.  October 10, 2019 in a 2018 VW Tiguan
WATER LEAKS FROM SUNROOF AND DOORS. WATER FROM THE ROOF LANDS OF START ENGINE BUTTON. FLOORS FLOODED WITH WATER MAKES FOOT SLIPPERY.

q.  September 21, 2019 in a 2018 VW Tiguan
PANORAMIC SUNROOF DEFECTIVE AND CAUSED MAJOR LEAKAGE OF WATER INTO VEHICLE. IN ADDITION, IT SEEMS LIKE CHEMICALS POSSIBILITY FROM WINDSHIELD FLUID LEAKING INSIDE VEHICLE. THIS RESULTED ON BLACK MOLD TO DEVELOP THROUGHOUT THE VEHICLE. ALL CARPETS REPLACED ON MY VEHICLE; HOWEVER, EXTREME FOUL CHEMICAL ODOR CONTINUES IN THE INTERIOR AND MAKES IT DIFFICULT TO BREATH. THE DEALER HAS MY VEHICLE FOR MORE THAN 9 DAYS AND STILL NO RESOLUTION. ISSUE STARTED WITH LESS THAN 1 YEAR OF OWNERSHIP OF THIS BRAND NEW CAR. EVEN WHEN VEHICLE IS PARKED ON MY DRIVEWAY WITH WINDOWS CLOSED YOU CAN SMELL THE CHEMICAL ODOR AROUND THE VEHICLE. FIRST OCCURRENCE REPORTED ON 7/3/19 AND NO RESOLUTION. SECOND OCCURRENCE: 9/21/19 AND STILL ONGOING.

### c.    Examples of Facebook Consumer Complaints

135.    Customers complained on Facebook directly to VW via VW's Facebook Page. Examples of those consumer complaints include the following:

a. On May 19, 2016, Annette Leigh explained her 2016 Tiguan woes to VW, among them, a "shower" she had in her car that the VW dealer confirmed was a "leak in [her] sunroof." Ms. Leigh's full post was as follows:

 

**Annette Leigh** ▸ **Volkswagen** ✓

May 19, 2016 · 🌐

Spent time at the Volkwagon dealership again yesterday to address ongoing problems with my 2016 Tiguan. Service Manager and staff were great, but called this morning confirm the shower I had was a leak in my sunroof....just as I thought. The Service Manager is replacing the fuel system to try and address the whining sound that's been there from day one, but really isn't sure what's causing this. New transmission, new fuel system, leaky sunroof which I'm sure will affect electrical going forward.

Volkswagon...REPLACE THIS VEHICLE! Take care of your loyal customers that have supported you through your TDI scandal...this is my 3rd Volkswagen purchase.

Annette Leigh

#Volkswagon#Carproblems#Tiguan#Carreviews

 1

b. On July 1, 2017, Stephen Thaddeus Piorkowski complained to VW on its Facebook Page about his Tiguan's leaky sunroof which "fills" his car "with water" and causes the car to be "moldy." Mr. Piorkowski's full post was as follows:

 

**Stephen Thaddeus Piorkowski** ▸ **Volkswagen** ✓

July 1, 2017 · 🌐

Do not by Volkswagon our Tiguan sunroof leaks and Volkswagon could not care about any way of helping us fix the problem . Our car fills with water and is moldy , Never again Volkswagon is Europes version of Chrysler — with Geraldine Reitz and 7 others.

 3

c.  On July 9, 2017, Meka Valmadre directly reported to VW about the constant issues she was experiencing with her new Tiguan. She had already had the sunroof replaced and she then experienced leaking. The sunroof caused multiple trips to the dealer and she was left without a solution or answers. VW actually responded to Meka's complaint and demonstrates knowledge and receipt of this consumer issue. Ms. Valmadre's full post was as follows:



Hi, I have been waiting for 3 weeks for the service team at Springwood Volkswagen to call me back about an issue with my new Tiguan. It has already had the sunroof replaced and now the car is leaking. I have had it back to the dealership 2 times and then contacted them again 3 weeks ago about it leaking again.

They said that they would call me back as they were seeking further advice. I was told on 2 occasions when I called during the last 3 weeks that someone would call me backbut have not had a call back.

I am really pissed off and disappointed at the lack of service and consideration given. I have 2 small kids and paid for my car seats to be installed and have basically wasted my money as I have had to swap them out 4 times now.

If it was a fridge I would have been given a replacement or a refund by now. It is ridiculous how I have been treated and I just want a solution. Just a simple returned call to give me an update at the start would have been appreciated.

1 Comment



d.  On October 11, 2018, Laura Oconnor contacted VW America explaining that the panoramic sunroof leak in her daughter's Tiguan floods the car, has caused mold, and presents safety and health risks. Ms. Oconnor explains that VW has known of this issue and fails to correct it – "VW does not care." VW did not publicly respond to Ms. Oconnor, but the comments indicate that VW's response was to merely block Ms. Oconnor in an attempt to ignore her and not address the issue.



e.   On December 21, 2018, Anne Lowry wrote directly to VW about her Tiguan's panoramic sunroof letting water "get[] in all over the car." After the frame and drain tubes were replaced by the VW dealer, at Ms. Lowry's expense, Ms. Lowry experienced a steady leak when taking her car through the car wash. She was informed this was a drain failure in the sunroof and it would not be covered under warranty. She states that VW knows there is a problem with the sunroofs, but "Volkswagen of America would rather screw people out of money than admit this and deal with it properly." Ms. Lowry's full post was as follows:



**Anne Lowry ▶ Volkswagen** ✓
December 21, 2018 · 🌐

Today is December 21, 2018. I have a 2012 Volkswagen Tiguan with a panoramic sunroof. In March of this year water was getting in all over the car. Smith Volkswagen, in Wilmington, Delaware, said this was due to a cracked sunroof frame. They charged $2139.34 to replace the frame and the drain tubes. The car only had 46K miles on it at the time. No offer to make it right or anything. Early last week, only 9 months later I went through a car wash. Water leaked in from the roof, to the left of the sun-visor, in a steady stream, straight down into my lap. My shirt, pants and seat were soaked. Today was the first available appointment time, so I took the car in thinking whatever the problem was, it would be covered. I get a call telling me one of the drains failed and the repair cost is $500. Not covered because I put about 20K miles on the car since March. It would have only been covered if I had driven under 12K miles since March. The person who called to tell me this acted like this was no big deal. I got really upset. Another $500 on top of what they already charged??? There is a major issue with these sunroofs. It is clearly a design flaw, but Volkswagen of America would rather screw people out of money than admit this and deal with it properly. Funny that the car the shuttle driver used to take me home after I dropped my car off was a brand new Tiguan and as I was telling him why my car was in the shop, water began to leak from the middle of the roof, just above the touch screen, so years have gone by and Volkswagen still hasn't figured out how to make a better sunroof which drains properly. I couldn't believe the new one was doing the same thing my car was in for, for the second time. So after I got really upset and the service manager kept telling sorry it's not covered, he said they would cover the labor and I would have to pay for parts. $170 for two drain tubes. I said I don't have it. He said they would put the car back together and I could come get it, and when I was willing or ready or whatever he said to pay for the parts, to come back and get it fixed. Like I would ever go back there. Oh and since I got upset and used curse words I was told I would get more bees with honey. Seriously? I don't know anyone who wouldn't be angry and upset about this happening. The guy that first called me to tell me what the problem supposedly is and the price for to get it fixed acted like this was no big deal. Sure only $500 MORE and your car won't leak. I am beyond disappointed. Thanks a lot VW of America and Smith VW.

136.    These are only a sampling of Facebook complaints relating to certain VW model cars. Consumers made similar complaints about other Class Vehicles.

### d.    Additional Consumer Complaints about the Tiguan

137.    Consumers reported leaks in their Tiguans for years and compared the leaks to those seen in the Golf Alltracks and the same leaks VW sunroofs have displayed for decades.

138.    On July 1, 2011, Henri S. posted her sunroof leak problem and how the local dealer had seen numerous examples of the problem, relating to clogged drains.



**#2    Tiguan 2.0L**
Automatic transmission    40,000 miles
JUL 01 2011

Noticed water stains surrounding panoramic sunroof ... the interior of this car has never seen rain or any leak from the outside. The dealer says that the VW sunroof(s) and particularly the panoramic roof either has small leaks or condensation develops from the AC and doesn't drain properly resulting in the staining of the interior roof fabric. The local dealer says he has seen "numerous" examples of this problem. This dealer recommends clearing the roof drains every year ... $50 charge.

The "clearing out of the drains" (presumably low pressure air) is NOT a VW recommended service, The problem can't be anticipated. When the drains fail, water builds and the fabric stains either quickly or over time. One day you look up and there is a problem.

The most recent occurrence was a 7 hour drive in July which featured max AC most of the way with a 30 minute heavy rain storm on the freeway. The roof was tightly shut. The front portion near the windshield (passenger side) was sopping wet at the end of the drive. My trip to the service department for a drain cleaning revealed that the drains were open ... huh? Maybe the connections are leaking. Anyway, no satisfaction from the VW national complaint service. I can't verify that the problem started before the warranty expired.

Guess I am stuck with future leaks unless Tiguan owners start reporting this obvious design or manufacturing defect.

- **Henri S.**, West Chester, PA, US

18

139.    On September 3, 2014, user Jeff2 wrote, "I know a co-worker who's had their relatively new VW Tiguan in for service several times due to their sunroof leaking. I think in their case it was the drain tubes which were not working correctly."[19]

---

[18] https://www.carcomplaints.com/Volkswagen/Tiguan/2009/windows_windshield/sunroof_leaks.shtml (last accessed 3.27.2020).

[19] https://www.newbeetle.org/threads/help-sunroof-drain-recall-and-damage-not-being-covered-by-vw.93698/ (last accessed 3.27.2020).

140.    On January 30, 2016, user Chelsea wrote that she had just taken her car into a VW dealer to be serviced and address a leak. The dealer "cleared out the front drainage points on the sunroof" but did not clean up the water from the leak. She pleads to know how to "prevent this happening [] again?"



**Chelsea**
Registered

Joined Jan 30, 2016
1 Posts

✔ Discussion Starter  •  #1  •  Jan 30, 2016

Hi,

Newby to the forum/club....please be gentle with me!

I have just have had my Tig serviced and commented to the dealership that I seem to have a leak somewhere as I have noticed a few drops of water on the rubber mats. When I collected it they said that they had cleared out the front drainage points on the sunroof and that I might want to find an "Aqua Vac" to soak up the extra water on the carpet. I said ok but it wasn't until the next day when I had a look that the "extra water" was in fact 2cm of water under the carpet!!!!.....front and back!

I have soaked it up with towels and will see if I can lock the car away somewhere with a de-humidifier for a few weeks to suck up the rest!

How can I prevent this happening this again? I can see how to clear out the front drainage points but how the hell do I get to the back tubes?

This is ridiculous!

HELP....please!!

20

141.    On April 14, 2016, Ahmed T. reported that his Tiguan experienced a leak from his sunroof, the VW dealer diagnosed the sunroof drains as clogged, but because he was outside of his warranty period, the cost would be $2,500.00-$3,500.00 to repair the leak and related damage. Ahmed contacted VW directly. VW refused to accept responsibility. Ahmed then did research and discovered that VW had settled a sunroof leak class action suit, but it did not cover his model vehicle. He was surprised that given the class action settlement, VW would not take responsibility

---

[20] https://www.volkswagenownersclub.com/threads/tiguan-panoramic-roof-leak-2010-2-0-match-diesel.92290/#post-645874 (last accessed 3.27.2020).

for the leak in his vehicle, because "the design of all these sun-roofs are similar. Definitely the description of the problem is identical…Why would the drains be designed an[y] different?"



My car was full of water after a hard rain- I took it to the VW dealer and he diagnosed that the sun-roof drains were plugged and the sun-roof lining was damaged. Only to fix the cause of the leak ( unplug the drains and replace them) cost about 1250 dollars. He needed to also replace all the lining that was damaged, take out the car seats and dry the interior. Some of the damage cannot be foreseen because of the negative effects of water on the electric system and auto and power system in general. To do a fine job he estimated 2500 to 3500 dollars.

I called VW manufacturer (800) 822-8987 and they did not accept to take responsibility of the problem. I searched and found the Dewey class action suit but does not include Tiguan 2009. I expect that the design of all these sun-roofs are similar. Definitely the description of the problem is identical to other models including the new Beetle 2009. Why would the drains be designed ant different. How can I get my right, I feel I am cheated because a leaking car at 90000 mile of service is unheard of except with VW. Used cars as old as 15 years don't leak. Please help !!!!

   - **Ahmed T.**, Metairie, LA, US

21

142.   On April 4, 2017, user 40acres, in a post titled "2012 Tiguan Rear sunroof drains" asked if anyone had schematics of the rear sunroof drain in the 2012 Tiguan. He explained that his/her car had wetness and "[t]he front drains have been cleaned out," but wanted to check the rear ones.[22]

//

//

//

//

//

//

//

---

[21] https://www.carcomplaints.com/Volkswagen/Tiguan/2009/windows_windshield/sunroof_leaks.shtml (last accessed 3.27.2020).

[22] https://forums.vwvortex.com/showthread.php?8571137-2012-Tiguan-Rear-sunroof-drains (last accessed 3.27.2020).

143.    On May 5, 2017, one user posted online that his or her Tiguan sunroof was leaking and one week after the alleged repair, the leak appeared again making the vehicle's headliner wet. The user's full post appears below:



**ILoveMyTiguan**
Registered

Joined Sep 12, 2012
4 Posts

✓ Discussion Starter  •  #1  •  May 5, 2017

I noticed the headliner above my front passenger side was wet after the car had been sitting in the heavy rain for quite a few hours. So I took it to the shop and this is what they did:
Inspected sunroof drain nipples in clow, ok, not clogged. Dropped front portion of headliner and pour water in the drainage channel. Found when very full water ingresses near sunroof cable guide tube. Sealed using butyl sealing cord and tested. No leaks present. Suspect a minor crack in the sunroof frame. If water ingress continues, a new sunroof frame is required.

Now Its been a week after I picked up the car from the shop, and the headliner is wet again. It has been raining non stop for past two days. I hate to replace the whole frame, which will cost about 3k, until I exhaust all other options first. I don't see any crack and neither did the mechanic. They said they were following the protocol: first try the sealant, if does not work, then it must be the crack in the frame. Any ideas/suggestions?

💬 Reply                                                                                    🔖 Save    ✎ Share

In response to this post, user blazrco stated on June 15, 2017, that his/her Tiguan suffered from leaks and another Tiguan owner was experiencing the same issue.



**blazrco**
Registered

Joined Jun 15, 2017
1 Posts

#2  •  Jun 15, 2017

I also have a leak in sunroof and in the same place as yours. Fortunately it only leaks when taken through a high power car wash. Another Tiguan owner has the same issue, he applied Flex Seal (the TV adverted stuff) to the front portion of the sunroof. He said that the roof has not leaked since. I haven't tried that yet, but thought I would pass it on.

💬 Reply                                                                                    🔖 Save    ✎ Share

23

---

23              https://www.volkswagenownersclub.com/threads/tiguan-sunroof-leak-please-help.110042/#post-702586 (last accessed 3.27.2020).

144.    On July 26, 2018, user SASF1 posted a photo showing a leak in his/her vehicle titled "2018 tiguan leaking from here?!" and stated, "[d]oes anyone have this? We've had monsoon rains in the mid atlantic, but I'm having lots of leaking from here?"



Several users responded to SASF1's post with comments and similar experiences with their vehicles (*e.g.*, "'13 Jetta wagon," "2016 GTI"). Of particular note, is user donrobson's post who said this same "exact occurrence" happened to a 2018 Tiguan that he had driven.

[–] donrobson  '18 Tiguan SEL  2 points 1 year ago

I saw this exact occurrence on a White 2018 Tiguan SEL that I test drove for a weekend. Well, it was on the other side. And it had a sunroof. I told the sales guy and he said it was probably that tube and that it would be checked but who knows if it checked.

I bought a different one and haven't had any issues.

User b0bc joined the discussion to comment that this "has happened to almost every VW model for like [the past] 20+ years" and described how his wife's 2009 Tiguan also suffered from a sunroof leak.

[–] b0bc  7 points 1 year ago

This is the most infuriating thing as this has happened to almost every VW model for like 20+ years. I don't understand how they can't just make drains that don't fall apart after 2 weeks. My wifes Tiguan (2009) I actually dropped the entire headliner and got brass connectors and replaced all the stupid rubber things they use that leak straight from the factory.

Here is a similar fix:

http://www.forums.tdiclub.com/showthread.php?t=444922

User SRTie4k explained that the same Defect has affected the Golf Alltrack.

> [–] **SRTie4k**  3 points 1 year ago
>
> This has been an ongoing issue for Alltrack owners as well. As someone else mentioned here, blocked and/or pinched drain tubes is usually the culprit.
>
> Take your vehicle to the dealer, as they're going to have to replace your headliner as well.

24

145. VW knew or should have known about these and other consumer complaints as they were made directly to VW, consumers filed warranty claims, dealers informed VW, and/or the complaints were posted on cites that VW monitors as a part of industry practice, such as NHTSA.

146. If Plaintiffs and Class Members had known about the Defect at the time of the sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less given the Defect.

**C.      *VW's Deceptive Warranty Practices***

147. VW offers a minimum 3-year/36,000-mile New Vehicle Limited Warranty on all of its cars.[25]

148. VW warrants to make "any repair to correct a defect in the manufacturer's material or workmanship."[26]

149. VW broadened its warranty for its Atlas and Tiguan and then "[b]uilding on the success of the new Atlas and Tiguan's guarantee," VW introduced "the People First Warranty" which "comes standard on all 2018 [and 2019] Volkswagen models, with the exception of the

---

[24] https://www.reddit.com/r/Volkswagen/comments/9238sr/2018_tiguan_leaking_from_here/?sort=old (last accessed 3.26.2020).

[25] https://www.vwannarbor.com/warranty-information.html (last accessed 12.20.2019).

[26] *Id.*

electric 2018 [and 2019] e-Golf."[27]

150.    The People First bumper-to-bumper New Vehicle Limited Warranty is a 6 year/72,000-mile warranty.[28]

151.    The new People First Warranty was introduced "to win back American customers" after VW "struggle[ed]" "since it admitted in 2015 [that] the company installed secret software that allowed vehicles to cheat emissions tests for six years."[29]

152.    The People First Warranty was touted as "the best SUV Bumper-to-Bumper Transferable Warranty in America!"[30]

153.    The Executive Vice President of Sales and Marketing for Volkswagen Group of America stated that "VW has always stood for strong value, and this warranty proves our commitment to that goal" and "[n]ow" people "don't have to buy a luxury car to get a luxury-level warranty."[31]

154.    VW's CEO of the North American Region claimed, "VW is the people's car, and this warranty puts our people first"[32]—it "addresses the needs of American buyers head-on."[33]

//

//

---

[27]    http://newsroom.vw.com/vehicles/volkswagen-unveils-the-people-first-warranty-the-new-industry-leader/ (last accessed 12.20.2019); *see also* https://www.cars.com/articles/volkswagen-nixes-6-year-warranty-what-shoppers-need-to-know-407046/ (last accessed 12.20.2019) ("Effective for the 2018 and 2019 model years across virtually the entire Volkswagen lineup, the outgoing warranty furnished bumper-to-bumper coverage (including powertrain) for six years or 72,000 miles, whichever comes first….It's also fully transferrable with no loss in coverage" to subsequent owners.).

[28]    *Id.*

[29]    https://www.cnbc.com/2017/04/12/volkswagen-offers-6-year-warranty-to-win-back-us-customers.html (last accessed 12.20.2019).

[30]    https://www.vwannarbor.com/warranty-information.html (last accessed 12.20.2019).

[31]    http://newsroom.vw.com/vehicles/volkswagen-unveils-the-people-first-warranty-the-new-industry-leader/ (last accessed 12.20.2019).

[32]    *Id.*

[33]    https://www.cnbc.com/2017/04/12/volkswagen-offers-6-year-warranty-to-win-back-us-customers.html (last accessed 12.20.2019).

155.    VW advertised the 2018 Tiguan as being accompanied by "America's Best SUV Bumper-to-Bumper Transferable Warranty" referring to the 6 year/72,000-mile warranty.

 

34

156.    Plaintiffs and Class Members experienced damage from the Defect within the respective warranty periods of their vehicles.

157.    VW knew of the Defect prior to Plaintiffs and Class Members purchasing their Class Vehicles and experiencing damage as a result of the Defect in their vehicles.

158.    VW chose not to inform Plaintiffs and Class Members of the Defect prior to their purchase of the Class Vehicles and VW chose not to inform them of the Defect while under warranty.[35]

159.    Despite knowing about the sunroof leak issue and issuing a TSB to repair the sunroof in the event of a water leak, VW stated that the repair was only to be done in response to a "customer complaint" about the issue – so no preventative measure would be taken – and that if the "[v]ehicle [is] outside any Warranty" then the "Technical Bulletin is informational only." *E.g.*, September 28, 2016 TSB.

160.    Plaintiffs and Class Members reasonably expected that any and all damage that resulted from the Defect would be covered under warranty, and that they would not be charged for necessary repairs.

161.    VW has systematically denied coverage and/or refuses or is unable to adequately

---

[34] 2018 Tiguan brochure available at https://www.leithvwraleigh.com/volkswagen-brochures-pdf.html (last accessed 12.20.2019).

[35] While VW recently sent out letters regarding an available repair, VW did not disclose that the issue being addressed is a defect and the majority of purchasers are no longer under warranty.

repair the Class Vehicles with respect to the defective sunroofs.

162.    Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

**D.    *VW's Deceptive Advertising Practices***

163.    In addition to VW's failure to disclose the Defect, failure to warn of the Defect, omissions as to the Defect, and deceptive warranty statements, VW also engaged in a deceptive advertising campaign.

164.    For example, VW advertised that "[t]he Golf Alltrack has the features needed to stay in touch with the tech you love."[36]

165.    When in reality, VW provided the Golf Alltrack with a defective sunroof prone to leak which can result in damage to the electrical components within the vehicle (*i.e.*, "the tech you love.").

166.    VW touted that it got a "high-five" from NHTSA "for high performance" "earn[ing] a 5-star overall safety rating."[37]

167.    The reality is that the Class Vehicles' safety performance is lacking given the dangers posed to drivers, passengers, and others on the roads due to the Defect.

168.    VW advertised "the Golf Alltrack [a]s a fun-to-drive, ready-for-adventure, über-versatile wagon,"[38] when in reality, it is not fun to drive a vehicle that is prone to leak.

169.    Plaintiffs and Class Members describe the problems involved with driving a leak-prone vehicle like the Class Vehicles.

170.    VW states that with the Golf Alltrack one can expect "[s]moother sailing, even on rough terrain and in inclement weather." VW claims that the Golf Alltrack is engineered to handle

---

[36] https://www.vw.com/content/dam/vwcom/brochures/2017/VWA_MY17_Alltrack_Digital.pdf (last accessed 12.20.2019).
[37] *Id*.
[38] *Id*.

"rough road conditions and inclement weather."  VW represents that it is "a car designed for the outdoors" and "ready for almost anything."[39]

171.    In reality, the Class Vehicles, including the Golf Alltrack, are not ready for any adventure if rain or other precipitation is involved.

172.    VW represents that the Golf Alltrack is designed to "help weather the storms," "[h]elp[] you stay out of trouble," and "check[] all the boxes."[40]

173.    This is simply not true as Plaintiffs and Class Members cannot weather storms in their Class Vehicles without risking and/or suffering injury to themselves, others, their vehicles, or other physical property.

174.    Plaintiffs and Class Members cannot even weather a carwash.

175.    Due to the defective nature of the sunroof, the car brings trouble and diminution in value to all owners and lessees due the Defect.

176.    A reasonable consumer would expect that to "check all the boxes," a vehicle with a sunroof would not suffer from a leak Defect that the manufacturer refuses to properly and permanently remedy.

177.    Aside from these examples of misleading individual statements, the advertising campaign for the VW Golf Alltrack focused on how well the car was equipped for the outdoors and adventure.

178.    The brochure for the 2017 Golf Alltrack features photographs of the vehicle parked next to mountains, near a campsite, by a lake, driving through the woods, and making its way through the mud. It also includes a photograph of a couple snowshoeing. The brochure imparts a vision of "[t]aking a detour off the highway to traverse previously uncharted territories…. Scenery. Fresh air. Tranquility."; "looking for adventure off the beaten path"; "a car designed for the outdoors"; "sporty," "rugged," "all-wheel adventurer"; "[t]he great outdoors meets the great indoors." VW stated that "[w]hether you're exploring new pavement or taking a detour onto a dirt

---

[39] *Id.*

[40] *Id.*

road, the Golf Alltrack is the key to unlocking destinations that were once out of reach." It "was designed to take the road less graveled. No matter how you adventure, it's safe to say you'll be doing so with a turbocharged smile on your face."[41]

179.    VW also released a series of commercials designed to show off "the rugged build" and "the sporty style and performance [of the Golf Alltrack]…[that could take drivers] on excursions that [take] them off the beaten path."[42] The commercials are titled "Foggy Road,"[43] "Snowy Road,"[44] "Mountain Bike,"[45] "Snowboard,"[46] "Salmon,"[47] and "Terrarium"[48] and are meant to convey that the Alltrack is "built for adventure."[49]

180.    The Class Vehicles are not equipped for this type of rugged adventure given their Defect and Plaintiffs and Class Members whose Class Vehicles have already experienced leaks are not adventuring with or smiling because of their vehicle. Instead, they are dealing with the aftermath of the Defect and dreading driving their vehicles in rain, inclement weather, or through a car wash.

181.    VW made similar representations across the Golf product line.

182.    For example, in a 2016 VW Golf brochure, VW represents that the Golf line is

---

[41] *Id.*

[42]  https://www.neftinvw.com/blog/2017-volkswagen-golf-alltrack-commercials/ (last accessed 12.20.2019).

[43]     https://abancommercials.com/ad/9189/volkswagen-golf-alltrack-foggy-road-commercial-tv-spot (last accessed 12.20.2019).

[44]    https://www.ispot.tv/ad/Auzk/2017-volkswagen-golf-alltrack-snowy-road (last accessed 12.20.2019).

[45] https://www.ispot.tv/ad/AFN7/2017-volkswagen-golf-alltrack-mountain-bike-song-by-joywave (last accessed 12.20.2019).

[46]  https://www.ispot.tv/ad/AFNL/2017-volkswagen-golf-alltrack-snowboard-song-by-powersolo (last accessed 12.20.2019).

[47]     https://www.ispot.tv/ad/A_Nw/2017-volkswagen-golf-alltrack-salmon (last accessed 12.20.2019).

[48] https://www.ispot.tv/ad/AECb/2017-volkswagen-golf-alltrack-terrariums-song-by-eddie-rabbitt (last accessed 12.20.2019).

[49]  https://www.neftinvw.com/blog/2017-volkswagen-golf-alltrack-commercials/ (last accessed 12.20.2019).

designed to be a "mobile refuge from the outside world," highlighting the panoramic sunroof as an available feature.[50] The marketing materials emphasize safety, reliability, and functionality, and the brochure features Golf vehicles, including the Sportswagen, ably navigating urban streets.[51]

183.     Likewise, the 2017 Golf brochure reaffirms the versatility and "sport" focused nature of the Golf line, including the Sportswagen. [52] Touting "driver focused features," "versatility," and emphasizing the panoramic sunroof as an available feature, the brochure features photographs of Golf vehicles, including the Sportswagen, navigating different terrain, including a curving mountain road.[53]

184.     Representations regarding versatility, safety and reliability are repeated in marketing materials for the 2018 Golf Sportswagen, and panoramic sunroof continued to be a highlighted additional feature. For example, brochures and marketing photos depict the 2018 Sportswagen in various terrains and elements, including parked on an open-air parking lot post-rain.[54]

185.     VW made similar representations about the 2018 Tiguan.

186.     For example, VW represented that, with the Tiguan, "[o]n a variety of roads and in challenging conditions, you can be confident and comfortable."[55] A driver will have "greater peace of mind" and a "panoramic sunroof that blends seamlessly into the cabin."[56] The car "balances sleek and rugged" and "[t]ransforms drives into journeys" – it is "Superlative. All the way." As it

---

[50] http://www.motorologist.com/wp-content/uploads/2016-Volkswagen-Golf-brochure.pdf (last visited August 25, 2020).

[51] *Id.*

[52] http://www.motorologist.com/wp-content/uploads/2017-Volkswagen-Golf-brochure.pdf (last visited August 25, 2020).

[53] *Id.*

[54] https://di-uploads-pod16.dealerinspire.com/josephvolkswagenofcincinnati/uploads/2018/10/Trim-chart_GolfSportWagen-2018-1.pdf (last visited August 25, 2020).

[55] 2018 Tiguan brochure available at https://www.leithvwraleigh.com/volkswagen-brochures-pdf.html (last accessed 12.20.2019).

[56] https://www.vw.com/models/tiguan/section/technology/ (last accessed 12.20.2019).

is "built with 100% galvanised steel and the stringent of manufacturing processes. That, along with the choicest of design elements make the Tiguan truly perfect in every way."[57]

187.    At least one VW authorized dealer represented that the VW Tiguan sunroof "gives you that convertible feel without having to worry about the bugs."[58]

188.    The advertising associated with the Class Vehicles taken as a whole conveys an image of the Class Vehicles that they cannot live up to given the Defect.

189.    Given VW's knowledge of the existence of the Defect since at least 2016, the brochures for the Class Vehicles from 2016 through the current 2020 model years should have disclosed and should currently disclose that the sunroofs installed possess a defect which allows water to infiltrate the passenger cabin.  However, none of the brochures for the Class Vehicles reference leaks from the sunroofs at all, nor that VW has yet to find a permanent repair for the Defect.

190.    VW's marketing and advertising campaigns associated with the Class Vehicles are deceptive.

**E.    The Defect Presents a Safety Risk and Causes Plaintiffs and Class Members to Suffer Damages**

191.    Plaintiffs and Class Members relied on VW's deceptive warranty practices, advertising campaigns, and/or material omissions of the existence of the Defect to their detriment.

192.    Omission of the Defect prevented Plaintiffs and Class Members from making an informed decision about whether or not to purchase their Class Vehicles.

193.    Plaintiffs and Class Members have suffered and continue to suffer due to their leak-prone sunroofs as a result of the defective manufacturing, and/or workmanship of VW's sunroofs in the Class Vehicles.

---

[57]  https://www.volkswagen.co.in/en/models/tiguan.html#item=3&gallery=150339998013542611 (last accessed 12.20.2019).

[58]    https://www.facebook.com/TEDDYVOLKSWAGEN/videos/696518864055018/    (last accessed 12.20.2019).

194.    The Defect typically makes itself known to owners and lessees with water leakage as the first sign noticeable to Class Members. Leakage results in water dripping into the vehicle from the sunroof during rainstorms, other extreme weather conditions, carwashes, etc. If the leaking occurs while the vehicle is on the road, it may distract the driver making already dangerous driving conditions more dangerous for all drivers and passengers on public roadways. The Defect also causes excessive condensation resulting in the windshield fogging up during dangerous weather conditions, thereby limiting driver visibility. When the water drips into the vehicle it can damage the car's electrical systems which can cause parts of the car to malfunction resulting in the car slamming on the breaks and stopping motion abruptly on its own. Leakage can damage the car's interior lining and create mold in a short amount of time.

195.    Consumers complain about the smell of mold and mold growth which appears to be rapid in the defective Class Vehicles, especially those in warm climates.

196.    Here is a photograph of the mold build up in a 2018 Tiguan, equipped with the



defective leaking sunroof, after staying closed for only one month in Miami: [59]

197. As explained herein, the Defect presents a safety risk to Plaintiffs, Class Members, and other drivers, passengers, and individuals on public streets and highways.

198. All Class Members with the defective sunroofs have suffered damages in that the value of the vehicle they purchased (*i.e.* with a defective sunroof) was worth less than the amount they paid for the vehicle.

199. Class Members suffer lost time and energy to address the Defect and get VW to repair it.

200. Class Members lost money for repairs done to the Class Vehicles, even though the Defect should be repaired at no cost to them under the VW warranties.

201. Class Members are damaged because the current and future re-sale value of their Class Vehicle is significantly reduced due to the existence of the sunroof Defect and the damages incurred.

202. Class Members did not receive the benefit of their bargain when they purchased their defective Class Vehicles.

## **PLAINTIFFS' EXPERIENCES**

### **Plaintiff Sokol Gjonbalaj**

203. Plaintiff Sokol Gjonbalaj purchased his 2018 VW Tiguan complete with a movable, panoramic sunroof in August 2017 from Platinum Volkswagen – a VW dealer located in Hicksville, New York.

204. Plaintiff Gjonbalaj purchased his Class Vehicle for personal, family, and/or household use.

205. At no time prior to, during, or after his purchase, did VW inform Plaintiff Gjonbalaj that his Class Vehicle contained the sunroof Defect. Before making his purchase, Plaintiff

---

[59] https://www.youtube.com/watch?v=iuraGvF8yP0 (last accessed 12.20.19).

Gjonbalaj researched the 2018 Tiguan and reviewed the Monroney Sticker or "window sticker," which listed official information about the vehicle.

206.    Relying in part on the representations and omissions described herein, Plaintiff Gjonbalaj purchased his Class Vehicle.

207.    Plaintiff Gjonbalaj reasonably expected to be able to use his Class Vehicle for normal and ordinary purposes.

208.    Plaintiff Gjonbalaj expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

209.    Since the purchase of his Class Vehicle, Plaintiff Gjonbalaj has experienced approximately four (4) separate leak events in his Class Vehicle due to the sunroof Defect.

210.    Each leak has occurred in the rain and some occurred while Plaintiff was driving on the road.

211.    On or about October 11, 2018, while it was raining outside, Plaintiff Gjonbalaj experienced the first sunroof leak in his Class Vehicle of which he was aware.

212.    The leak occurred while Plaintiff Gjonbalaj was driving on the road.

213.    Once it was safe, Plaintiff Gjonbalaj captured video of the leak, screenshots of which include the following:



214.    Plaintiff Gjonbalaj then took the vehicle to Volkswagen of Huntington – a VW dealer in South Huntington, New York – for diagnosis and repair of the sunroof leak.

215.    The VW dealer kept the car for approximately 2 weeks, at which time, after purported examination, the VW dealer claimed that it could not replicate the leak and returned the vehicle to Plaintiff Gjonbalaj.

216.    On or about November 13, 2019, while Plaintiff Gjonbalaj was driving his Class Vehicle in the rain, he again experienced another sunroof leak in his Class Vehicle.

217.    Plaintiff Gjonbalaj, again, captured video of the leak, screenshots of which include the following:

 

218.    Following this leak, Plaintiff Gjonbalaj again took the vehicle back to a VW dealer.

219.    This VW dealer kept the Class Vehicle for approximately one week and then explained that the VW dealer had conducted an open hose test, but the VW dealer claimed that it could not replicate the leak.

220.    The Class Vehicle was again returned to Plaintiff Gjonbalaj without any dealer performing any repair of the sunroof leak.

221.    The sunroof leak caused discoloration stains and damage to the vehicle's carpet, roof headliner, and seats.

222.    Plaintiff Gjonbalaj captured video of the discoloration to the vehicle's roof headliner, screenshot of which includes the following:



223.    Neither VW dealer replaced the stained roof headliner.

224.    Now every time it rains, there is a moldy smell in the car and if the air conditioning unit is turned on while it is raining, the car smells even worse – very moldy.

225.    As a result of the Defect, Plaintiff Gjonbalaj's Class Vehicle has also suffered electrical/electronic issues, some of which pose a safety risk to him, his passengers, and others on the road.

226.    At least two times since the Defect manifested in the form of a leak, Plaintiff Gjonbalaj has experienced his Class Vehicle's front or forward moving sensors malfunctioning. The front sensors "go off" as if the car is too close to another car or object, when in reality no cars or objects are in close proximity to the vehicle, and the car on its own slams on the brakes and stops. Both instances have occurred while Plaintiff Gjonbalaj was driving on the road while it was raining outside.

227.    At least three or four times since the Defect manifested in the form of a leak, Plaintiff Gjonbalaj has experienced a similar issue with his rear sensors. Each instance has occurred while it was raining outside.

228.    The front and rear sensors glitching in this manner pose a safety threat.

229.    Since the Defect manifested in the form of a leak, the headlights or radio sometimes fails to come on when Plaintiff Gjonbalaj's Class Vehicle is started. This requires Plaintiff Gjonbalaj to hold the power button for 15 seconds in order to reset it.

230.    Plaintiff Gjonbalaj has also experienced static coming from the passenger side tweeter or treble speaker in his Class Vehicle.

231.    In or about summer 2019, Plaintiff Gjonbalaj also experienced a "misfire" issue with his Class Vehicle.

232.    Due to the issues he has experienced in his Class Vehicle as a result of the Defect, Plaintiff Gjonbalaj has been scared for his safety while operating his Class Vehicle.

233.    Aside from reporting these issues to the VW dealers where he has sought repair – to no avail – Plaintiff Gjonbalaj has also directly contacted VW North America and reported the issues he has experienced with his Class Vehicle.

234.     Plaintiff Gjonbalaj has spent his valuable time trying to address the issues resulting from the sunroof Defect, including taking his car to various VW dealers and contacting VW North America.

235.     Plaintiff Gjonbalaj has lost use of his Class Vehicle due to the Defect.

236.     Plaintiff Gjonbalaj does not like to operate his Class Vehicle in the rain anymore due to the Defect.

237.     Plaintiff Gjonbalaj does not like to even let his Class Vehicle get exposed to rain, but it is kept outside and subject to the elements as they come.

238.     Plaintiff Gjonbalaj's Class Vehicle at all relevant times has been under warranty. His car was and remains covered by the VW People First Warranty.

239.     Despite that Plaintiff Gjonbalaj's Class Vehicle is under warranty, VW has refused or has been unable to repair, correct, or otherwise remedy Plaintiff Gjonbalaj's Class Vehicle and the issues he has experienced as a direct and proximate cause of the Defect.

240.     Due to the Defect, Plaintiff Gjonbalaj's Class Vehicle was and is worth less than what he paid for it.

241.     Due to the Defect, the current and future re-sale value of Plaintiff Gjonbalaj's Class Vehicle has been significantly reduced.

242.     Plaintiff Gjonbalaj did not receive the benefit of his bargain with VW for his Class Vehicle.

243.     At no time has VW acknowledged the existence of the Defect to Plaintiff Gjonbalaj or disclosed, warned, or otherwise informed Plaintiff Gjonbalaj of the Defect.

244.     Had VW informed Plaintiff Gjonbalaj (or had Plaintiff Gjonbalaj otherwise known) of the Defect, Plaintiff Gjonbalaj would not have purchased his Class Vehicle.

**Plaintiff Joseph Campbell**

245.     Plaintiff Joseph Campbell purchased his 2016 Volkswagen Golf certified preowned from Burdick Volkswagen, a Volkswagen dealership located in in Cicero, New York.

246.    Plaintiff Campbell purchased his Class Vehicle for personal, family, and/or household use.

247.    Plaintiff Campbell reasonably expected to be able to use his Class Vehicle for normal and ordinary purposes.

248.    Plaintiff Campbell expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

249.    A principal reason for Plaintiff Campbell's purchase of a Volkswagen was the touted quality, reliability, and safety of VW vehicles, as represented in VW's marketing materials.

250.    Prior to purchase, Plaintiff Campbell test drove the vehicle. At the time of his purchase, he had no forewarning of the sunroof Defect.

251.    At no time prior to, during, or after his purchase, did VW inform Plaintiff Campbell that his Class Vehicle contained the sunroof Defect.

252.    Relying in part on VW's representations and omissions, Plaintiff Campbell purchased the Class Vehicle.

253.    Since purchasing the vehicle, Plaintiff Campbell has experienced numerous issues with sunroof leaks. Initial leaks through the sunroof caused water to pour into the vehicle's cabin, including water intrusion into the switch console. An overpowering odor resulted from the influx of water. Plaintiff Campbell brought his Class Vehicle to Burdick Volkswagen for repair, which included replacement of the entire sunroof and sunroof seals. Nevertheless, the leaking continued, and Plaintiff Campbell had to repeatedly return to the dealership in an attempt to correct the Defect.

254.    On or about March 29, 2020, Plaintiff Campbell sent a letter detailing this and other issues to VW. The letter was sent at the advice of a salesperson at Burdick Volkswagen, due to the dealership's inability to repair the sunroof Defect.

255.    In total, Plaintiff Campbell has returned to the dealership seven times and they have not yet been able to correct the issue. Both the odor and the leak remain unabated.

256.    Due to the issues he has experienced with the Class Vehicle as a result of the sunroof Defect, Plaintiff Campbell is apprehensive about operating his vehicle in rainy weather.

He is concerned leakage will occur, his Class Vehicle will incur more damage, and that his safety and those of others may be compromised.

257.    Plaintiff Campbell has spent his valuable time trying to address the issues resulting from the sunroof Defect, including taking his car to multiple times the VW dealership and contacting Volkswagen America directly.

258.    Plaintiff Campbell has lost use of his Class Vehicle due to the Defect.

259.    Plaintiff Campbell has been damaged as a direct and proximate cause of the Defect.

260.    Due to the Defect, Plaintiff Campbell's Class Vehicle was and is worth less than what he paid for it.

261.    Due to the Defect, the current and future re-sale value of Plaintiff Campbell's Class Vehicle has been significantly reduced.

262.    Plaintiff Campbell did not receive the benefit of his bargain with VW for her Class Vehicle.

263.    At no time prior to his purchase, the numerous "repairs" of his Class Vehicle,  or otherwise, did VW acknowledge the existence of the Defect to Plaintiff or disclosed, warned, or otherwise informed Plaintiff of the Defect.

264.    Had VW informed Plaintiff Campbell of the Defect, Plaintiff Campbell would not have purchased his Class Vehicle.

**Plaintiff Jessica Cole**

265.    Plaintiff Jessica Cole purchased her VW Golf Alltrack complete with a movable panoramic sunroof on approximately December 26, 2018 from Hansel Volkswagen – a VW dealer located in Santa Rosa, California.

266.    Plaintiff Cole purchased her Class Vehicle for personal, family, and/or household use.

267.    At no time prior to, during, or after her purchase, did VW inform Plaintiff Cole that her Class Vehicle contained the sunroof Defect.

268.     In fact, before purchasing her vehicle, VW specifically informed Plaintiff Cole that she would not have any sunroof leaks.

269.     Relying on that omission and representation, along with VW's other representations described herein, Plaintiff Cole purchased her Class Vehicle.

270.     Plaintiff Cole reasonably expected to be able to use her Class Vehicle for normal and ordinary purposes.

271.     Plaintiff Cole expected that her Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

272.     Less than a year after she purchased her Class Vehicle, she discovered her sunroof was leaking. It was raining and Plaintiff Cole's Class Vehicle was parked outside exposed to the weather. Plaintiff Cole got into her vehicle and saw that the vehicle was leaking.

273.     Plaintiff Cole immediately returned to Hansel Volkswagen for diagnosis and repair of her Class Vehicle's sunroof leak.

274.     The VW dealer told her that the drains in her sunroof were clogged.

275.     The cause for the issue, according to the dealer, varied. The VW dealer claimed that the fires happening in California were the cause. At one point, the VW dealer also claimed that it was Plaintiff Cole's fault for failing to maintain the sunroof drains. But when Plaintiff Cole asked to see how to perform the maintenance on the drains, the VW representative could not show her.

276.     The VW dealer did not mention the Defect or that this was a widespread problem. Yet, the VW dealer told Plaintiff Cole that what people had been doing was submitting this as an insurance claim and that she should do the same as it would not be covered under any warranty.

277.     The VW dealer kept the car for approximately two weeks. Plaintiff Cole drove a rental car during this time.

278.     Plaintiff Cole understands that due to the damage caused by the Defect, the VW dealer replaced all sunroof drain nipples and clipped them to make them narrower, put in a new headliner, replaced the flooring, and put in new padding.

279.    The VW dealer informed Plaintiff Cole that the new altered sunroof drain nipples *would* be nosier, but *should* prevent any sunroof leaks from occurring again.

280.    After the VW dealer allegedly diagnosed and repaired her Class Vehicle, Plaintiff Cole inspected her own vehicle and she found that the rear spare tire wheel well – where certain vehicle electronics are housed – was full of water.

281.    Plaintiff Cole fears that, in addition to the damage already incurred, her Class Vehicle has suffered electrical/electronic damage, some of which may pose a safety risk to her, her passengers, and others on the road.

282.    Due to the issues she has experienced with her Class Vehicle as a result of the sunroof Defect, Plaintiff Cole feels vulnerable in continuing to drive her Class Vehicle, but feels financially locked-in to owning, and therefore driving, the car.

283.    Plaintiff Cole has spent her valuable time trying to address the issues resulting from the sunroof Defect, including taking her car to various VW dealers and contacting VW North America.

284.    Plaintiff Cole has lost use of her Class Vehicle due to the Defect.

285.    Plaintiff Cole does not like to operate her Class Vehicle in the rain or inclement weather anymore due to the Defect. She is concerned leakage will occur, her Class Vehicle will incur more damage, and that her safety and those of others may be compromised.

286.    Plaintiff Cole has been damaged as a direct and proximate cause of the Defect.

287.    Due to the Defect, Plaintiff Cole's Class Vehicle was and is worth less than what she paid for it.

288.    Due to the Defect, the current and future re-sale value of Plaintiff Cole's Class Vehicle has been significantly reduced.

289.    Plaintiff Cole did not receive the benefit of her bargain with VW for her Class Vehicle.

290.    At no time prior to her purchase or "repair" of her Class Vehicle, did VW acknowledge the existence of the Defect to Plaintiff Cole or disclosed, warned, or otherwise informed Plaintiff Cole of the Defect.

291.    Had VW informed Plaintiff Cole of the Defect, Plaintiff Cole would not have purchased her Class Vehicle.

**Plaintiff Karen Werner**

292.    Plaintiff Karen Werner purchased her 2017 VW Golf Alltrack complete with a movable, panoramic sunroof in approximately October 2016 in California.

293.    Plaintiff Werner purchased her Class Vehicle for personal, family, and/or household use.

294.    Plaintiff Werner reasonably expected to be able to use her Class Vehicle for normal and ordinary purposes.

295.    Plaintiff Werner expected that her Class Vehicle would be able to withstand extreme weather conditions and inclement weather, including rain.

296.    At no time prior to, during, or after her purchase, did VW inform Plaintiff Werner that her Class Vehicle contained the sunroof Defect.

297.    Relying on that omission and VW's representations described herein, Plaintiff Werner purchased her Class Vehicle.

298.    Less than one year after she purchased her Class Vehicle, VW issued the September 6, 2017 TSB entitled "Water Leak from Panoramic Sunroof" which superseded the November 22, 2016 TSB and now included the Golf Alltrack, which is Plaintiff Werner's Class Vehicle.

299.    The September 6, 2017 TSB discussed that one cause of water leaking into the vehicle from the sunroof was due to an "[i]ncorrect rework in production." "Spot welds around the perimeter of the sunroof opening may be too large. This prevents the outer sunroof seal from properly adhering to the body of the vehicle, allowing water to leak through the seal." The TSB also indicated there was an "[i]nsufficient cleaning process prior to applying outer sunroof seal. The sunroof frame opening may have been improperly cleaned prior to application of the acrylic

tape on the outer sunroof seal. This prevents the outer sunroof seal from properly adhering to the body of the vehicle, allowing water to leak through the seal."

300.    In mid-March of 2019, on a rainy weekend day, Plaintiff Werner discovered her Class Vehicle's sunroof was leaking.

301.    On Monday, March 11, 2019, after conducting some research, Plaintiff Werner took the car to Broadway Volkswagen for diagnosis and repair of her Class Vehicle's sunroof leak armed with the September 6, 2017 TSB.

302.    While her Class Vehicle was at the dealer, Plaintiff Werner contacted Volkswagen America. In the first conversation, Plaintiff Werner was informed that the problem was the result of clogged drains which should be checked as part of the routine service maintenance and that the cost would be Plaintiff Werner's responsibility. However, Plaintiff Werner had already informed Volkswagen America (and the dealer) that her husband had confirmed the drains were not clogged.

303.    On March 14, 2019, the VW dealer contacted Plaintiff Werner to let her know that it took them a while to identify the problem, but they found the cause of the leak was the result of a welding issue – as Plaintiff Werner had predicted. The dealer said the remedy would be to replace the sunroof frame, headliner, rear drain, carpet, and padding for a cost of $3621.

304.    The dealer would not cover the repairs under warranty even though Plaintiff Werner had owned her vehicle less than 3 years, and despite the fact she had a leak occur while her vehicle was under warranty, and despite the fact that VW issued the relevant September 6, 2017 TSB less than a year after Plaintiff Werner's purchase.

305.    Had VW notified Plaintiff Werner at the time VW issued the TSB specific to her vehicle, she would have taken the vehicle in for preventative repair. Instead, VW elected not to notify customers and chose to treat this known problem as a service issue to be addressed *if* the consumer ever complained. VW also included crafty language so that if the vehicle was out of warranty, the TSB was merely advisory.

306.    VW chose not to notify consumers and to passively wait for any consumer complaints in an attempt to repair less vehicles in total and a lot less free of charge. By not

informing consumers, VW was playing the odds that the Defect would not leak and/or the owner would not present the car for repair until after the Class Vehicle's warranty expired. By adopting this passive approach, VW only obligated itself to fix vehicles where a leak occurred, a consumer complained and brought the vehicle in, and no warranty limit (miles or years) passed.

307.    This severely limits the number of repairs VW has to make under warranty free of charge and this approach left many Plaintiffs and Class Members to fend for themselves.

308.    Plaintiff Werner paid $968.29 out-of-pocket for VW to make the necessary repairs to her Class Vehicle as a result of her defective sunroof.

309.    The dealer had the vehicle for approximately 10 days to complete the work.

310.    Plaintiff Werner again contacted Volkswagen America and spoke to multiple representatives, including a supervisor about her dissatisfaction and asking that VW cover the repair of the Defect at no charge to her. VW refused.

311.    Plaintiff Werner has spent her valuable time trying to address the issues resulting from the sunroof Defect, including communicating with Volkswagen America by phone and in writing.

312.    Plaintiff Werner has lost use of her Class Vehicle due to the sunroof Defect.

313.    Plaintiff Werner is concerned leakage will occur again and her Class Vehicle will incur more damage.

314.    Less than a month prior to the visible leakage in her Class Vehicle, a USB port went bad and her husband replaced it – another out-of-pocket expense. It is unknown to what extent her Class Vehicle's electronics and electrical functionalities have been impacted by the sunroof Defect.

315.    Plaintiff Werner has been damaged as a direct and proximate cause of the Defect.

316.    Due to the Defect, Plaintiff Werner's Class Vehicle was and is worth less than what she paid for it.

317.    Due to the Defect, the current and future re-sale value of Plaintiff Werner's Class Vehicle has been significantly reduced.

318.    Plaintiff Werner did not receive the benefit of her bargain with VW for her Class Vehicle.

319.    At no time prior to Plaintiff Werner's leak, complaint, or "repair" did VW acknowledge the existence of the Defect to Plaintiff Werner or disclose, warn, or otherwise inform her of the Defect.

320.    Had VW informed Plaintiff Werner of the Defect, she would not have purchased her Class Vehicle.

**Plaintiff Austin Barden**

321.    Plaintiff Austin Barden purchased his 2016 Volkswagen Golf on March 6, 2020 in Apple Valley, California.

322.    Plaintiff Barden's Class Vehicle had approximately 28,000 miles on the odometer at the time of purchase.

323.    Plaintiff Barden purchased his Class Vehicle for personal, family, and/or household use.

324.    Plaintiff Barden reasonably expected to be able to use his Class Vehicle for normal and ordinary purposes.

325.    Plaintiff Barden expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

326.    At no time prior to, during, or after his purchase, did VW inform Plaintiff Barden that his Class Vehicle contained the sunroof Defect.

327.    Prior to purchase, Plaintiff researched the vehicle and did not see any warnings from VW regarding the sunroof Defect. Plaintiff Barden made his decision to purchase a Volkswagen Golf, in part, based on VW's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of VW vehicles.

328.    Before purchasing his vehicle, Plaintiff Barden test drove it. At the time of his purchase, he had no forewarning of the sunroof problem.

329.    Relying on VW's representations and omissions, Plaintiff Barden purchased the Class Vehicle.

330.    Almost immediately after his purchase, the sunroof in Plaintiff Barden's Class Vehicle began leaking. The water leakage poured onto the center console, the sun visor, the light panel and the pillars.

331.    Plaintiff Barden brought his vehicle to two different Volkswagen dealerships, however both refused to correct the issue for him without payment for the repair.

332.    Currently, Plaintiff Barden parks his car under a covered parking spot in order to avoid precipitation due to the sunroof Defect.

333.    Plaintiff Barden has been damaged as a direct and proximate cause of the  Defect.

334.    Plaintiff Barden has spent valuable time trying to address the issues resulting from the Defect, including taking the vehicle to two dealerships in an attempt to rectify the situation.

335.    Plaintiff Barden has lost use of his Class Vehicle due to the Defect.

336.    Due to the Defect, Plaintiff Barden's Class Vehicle was and is worth less than what he paid for it, and its resale value is significantly diminished.

337.    At no time prior to, during, or after his purchase, discussions of repairs, or otherwise, did VW inform Plaintiff Barden that his Class Vehicle contained the Defect.

338.    Had VW informed Plaintiff Barden of the Defect, he would not have purchased his Class Vehicle.


**Plaintiff Mary Govan**

339.    Plaintiff Mary Govan purchased her new 2017 SEL Golf Alltrack complete with a movable panoramic sunroof in approximately November 2017 from her local VW dealership in Chico, California.

340.    Plaintiff Govan purchased her Class Vehicle for personal, family, and/or household use.

341.    Plaintiff Govan reasonably expected to be able to use her Class Vehicle for normal and ordinary purposes.

342.    Plaintiff Govan expected that her Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

343.    Prior to purchasing her Class Vehicle, Plaintiff Govan took the vehicle for a test drive, reviewed the Monroney Sticker or "window sticker," which listed official information about the vehicle, and went over the vehicle specifications with the VW sales representative.

344.    Relying on VW's representations and omissions, Plaintiff Govan purchased her Class Vehicle.

345.    Since the purchase of her Class Vehicle, Plaintiff Govan has experienced two notable leaking incidences with her sunroof.

346.    In or around April 2019, Plaintiff Govan began noticing water leaks in her vehicle during rainy weather. She took the vehicle to her local dealership and was told that the issue stemmed from her failure to clean the sunroof drains (notwithstanding the fact that such vehicle maintenance was never conveyed to her, nor indicated in any VW documentation). She was informed that the dealership could do the work for her, but that it would cost $150 and that it would not be covered under warranty.

347.    Plaintiff Govan contacted Volkswagen America's customer service and was told that her vehicle was "out of warranty" and thus the cost of repairs would not be covered.

348.    Rather than pay VW's $150 fee, when her car was under warranty, Plaintiff Govan opted to take her vehicle to a private mechanic to have the cleaning performed.

349.    Several months later, Plaintiff Govan again noticed leaks during inclement weather. Around this same time, Plaintiff Govan also began to notice electrical malfunctions in her vehicle, including malfunctions with the lane assist and cruise control features, among others. The most alarming leaking incident occurred while Plaintiff Govan was driving her vehicle during a rainstorm and water began "pouring" into her vehicle, across her dashboard. Plaintiff Govan was

extremely fearful given the influx of water and the potential damage to her electrical systems, including key safety features.

350.    Immediately following this incident, Plaintiff Govan took her vehicle to the VW dealership for repairs—which consisted of cleaning the sunroof drains. The dealership did not, however, address the electrical problems in her vehicle, or the damage to the vehicle's headliner, carpeting and upholstery, which were caused by the leaking sunroof.

351.    As a result of the sunroof Defect, Plaintiff Govan no longer uses her sunroof, fearful that the situation will reoccur. She is also apprehensive about driving the vehicle because the electrical malfunctions persist; her lane assist and cruise control features remain unreliable and she is concerned about how the electrical damage will progress over time.

352.    Plaintiff Govan has spent valuable time trying to address the issues resulting from the sunroof Defect, including taking her car multiple times to the VW dealership and contacting Volkswagen America directly.

353.    Plaintiff Govan has lost use of her Class Vehicle due to the Defect.

354.    Plaintiff Govan does not like to operate her Class Vehicle due to the Defect, and does not use her sunroof at all.

355.    Plaintiff Govan's Class Vehicle at all relevant times has been under warranty.

356.    Despite that Plaintiff Govan's Class Vehicle was under warranty, VW has refused or has been unable to repair, correct, or otherwise remedy Plaintiff Govan's Class Vehicle and the issues she has experienced as a direct and proximate cause of the Defect.

357.    Due to the Defect, Plaintiff Govan's Class Vehicle was and is worth less than what she paid for it.

358.    Due to the Defect, the current and future re-sale value of Plaintiff Govan's Class Vehicle has been significantly reduced.

359.    Plaintiff Govan did not receive the benefit of her bargain with VW for her Class Vehicle.

360.    At no time has VW acknowledged the existence of the Defect to Plaintiff Govan or disclosed, warned, or otherwise informed Plaintiff Govan of the Defect.

361.    Had VW informed Plaintiff Govan of the Defect, Plaintiff Govan would not have purchased her Class Vehicle.

**Plaintiff Dimitri Williams**

362.    Plaintiff Dimitri Williams purchased his 2017 Volkswagen Passat from Jennings Volkswagen in Glenview, Illinois.

363.    Plaintiff Williams's Class Vehicle had approximately 7,000 miles on the odometer at the time of purchase, and was bought certified pre-owned.

364.    Plaintiff Williams purchased his Class Vehicle for personal, family, and/or household use.

365.    Plaintiff Williams reasonably expected to be able to use his Class Vehicle for normal and ordinary purposes.

366.    Plaintiff Williams expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

367.    Plaintiff Williams made his decision to purchase a Volkswagen Passat, in part, in reliance on representations communicated through VW's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of VW's vehicles.

368.    Prior to purchase, Plaintiff Williams test drove the vehicle. At the time of his purchase, he had no forewarning of the sunroof problem.

369.    Relying in part on VW's representations and omissions, Plaintiff Williams purchased the Class Vehicle.

370.    Since his purchase, Plaintiff Williams has experienced water leaks and damage resulting from the sunroof Defect.

371.    The sunroof in Plaintiff Williams' Class Vehicle began leaking after approximately 18 months of ownership, causing condensation in the cabin and stains on the roof lining material. He brought it in to be serviced at Bill Jacobs Volkswagen in Naperville Illinois, a certified

Volkswagen dealership. He was informed by the dealership that, although this type of leaking was a frequent problem, it was not something that they could fix for free. They informed him it was not covered by the warranty. They told him that it would cost $470 for them to fix the problem.

372.    Thereafter, in about May 2020, Plaintiff Williams had the drain tubes cleaned at Midas at a cost of $200. He was told that this was an unusual procedure for such a new car.

373.    Plaintiff Williams has spent valuable time trying to address the issues resulting from the Defect, including taking the vehicle to dealerships and other service centers in an attempt to rectify the situation.

374.    Plaintiff Williams has lost use of his Class Vehicle due to the Defect.

375.    Plaintiff Williams has been damaged as a direct and proximate cause of the Defect.

376.    Due to the Defect, Plaintiff Williams' Class Vehicle was and is worth less than what he paid for it, and its resale value is significantly diminished.

377.    Plaintiff Williams did not receive the benefit of his bargain with VW for his Class Vehicle.

378.    At no time prior to, during, or after his purchase, discussions of repairs, or otherwise, did VW inform Plaintiff Williams that his Class Vehicle contained the Defect.

379.    Had VW informed Plaintiff Williams of the Defect, he would not have purchased his Class Vehicle.

**Plaintiff Antonio Cabezas**

380.    Plaintiff Antonio Cabezas purchased a new 2018 Volkswagen SportWagen, complete with a movable panoramic sunroof from Heritage VW – a VW dealership located in Ownings Mills, Maryland.

381.    Plaintiff Cabezas purchased his Class Vehicle for personal, family, and/or household use.

382.    Plaintiff Cabezas reasonably expected to be able to use his Class Vehicle for normal and ordinary purposes.

383.    Plaintiff Cabezas expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

384.    At no time prior to, during, or after his purchase, did VW inform Plaintiff Cabezas that his Class Vehicle contained the sunroof Defect.

385.    Prior to purchasing his Class Vehicle, Plaintiff Cabezas took the vehicle for a test drive and meticulously reviewed VW's marketing and advertising statements, as well as vehicle specifications and Monroney Sticker. With two young children, Plaintiff Cabezas was particularly keen on VW's touted safety and reliability. Nowhere in any of the marketing materials, vehicle specification information, or Monroney Sticker, did VW disclose, advise or indicate that there was any defect with the Class Vehicle's sunroof.

386.    Relying on VW's representations and omissions, Plaintiff Cabezas purchased his Class Vehicle.

387.    In about September 2019, following a rainstorm, Plaintiff Cabezas came outside and discovered that the parked vehicle's windows were "fogged up." Upon inspection of the vehicle, Plaintiff Cabezas discovered a pool of water in the spare wheel well of the trunk. At the time, Plaintiff Cabezas had no reasons to suspect that the condition was a result of a defective sunroof.

388.    Beginning in July through August 2020, again following rainstorms, Plaintiff Cabezas began noticing water stains on the vehicle's headliner. In the rainy days and weeks that followed, the stains became progressively worse and Plaintiff Cabezas observed water pooling in the rear passenger footwells. The condition has degraded the interior of the vehicle and caused a strong moldy odor to permeate throughout the car. Plaintiff Cabezas has also noticed water and moisture collecting in and around the interior electrical lighting fixtures.

389.    In mid-August 2020, Plaintiff Cabezas took his vehicle to his VW dealership, Heritage, VW. He was told by a technician that the sunroof leak was an ongoing problem with VW vehicles and that a repair would take at least a month or longer. Plaintiff Cabezas was told that VW would not cover the cost of a rental car during this time.

390.    Due to the ongoing issues with his sunroof, as well as the refusal to cover his rental car costs, Plaintiff Cabezas has been in touch with Volkswagen America. On August 21, 2020, Volkswagen America confirmed that the costs for a rental car for the duration of the Class Vehicle repair would not be covered.

391.    Plaintiff Cabezas must pay for a long-term rental vehicle, at his own expense.

392.    Plaintiff Cabezas has spent valuable time trying to address the issues resulting from the sunroof Defect, including communicating with Volkswagen America by phone.

393.    Plaintiff Cabezas has lost use of his Class Vehicle due to the sunroof Defect.

394.    Plaintiff Cabezas is concerned leakage will occur again and his Class Vehicle will incur more damage.

395.    Plaintiff Cabezas has been damaged as a direct and proximate cause of the Defect.

396.    Due to the Defect, Plaintiff Cabezas' Class Vehicle was and is worth less than what he paid for it.

397.    Due to the Defect, the current and future re-sale value of Plaintiff Cabezas' Class Vehicle has been significantly reduced.

398.    Plaintiff Cabezas did not receive the benefit of his bargain with VW for his Class Vehicle.

399.    At no time prior to Plaintiff Cabezas' leak, complaint, "repair," or otherwise, did VW acknowledge the existence of the Defect to Plaintiff Cabezas or disclose, warn, or otherwise inform him of the Defect.

400.    Had VW informed Plaintiff Cabezas of the Defect, he would not have purchased his Class Vehicle.

**Plaintiff Rick Hornick**

401.    Plaintiff Rick Hornick purchased his 2017 VW Golf Alltrack, complete with a movable panoramic  sunroof, on about June 18, 2019 from a car dealership in Arlington, Massachusetts.

402.    At the time of purchase, the vehicle had approximately 20,000 miles on the odometer.

403.    Plaintiff Hornick purchased his Class Vehicle for personal, family, and/or household use.

404.    Prior to purchasing his Class Vehicle, Plaintiff Hornick test drove the vehicle and reviewed vehicle information available online, including VW's marketing materials.

405.    At no time prior to, during, or after his purchase, did VW inform Plaintiff that the Class Vehicle had a defective sunroof.

406.    Relying, in part, on VW's representations and omissions, Plaintiff Hornick purchased the Class Vehicle.

407.    Plaintiff reasonably expected to be able to use the Class Vehicle for normal and ordinary purposes.

408.    Plaintiff expected that the Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

409.    Since acquiring the Class Vehicle, Plaintiff has experienced issues with the sunroof leak, which has resulted in progressive damage to the interior and electrical components of the vehicle.

410.    In early 2020, Plaintiff Hornick began noticing water condensation in the vehicle. Then in mid-May 2020, while driving the vehicle, five warning lights went off almost simultaneously and the dashboard monitor broadcasted a message to take the vehicle to a service center immediately.

411.    On about May 20, 2020, Plaintiff Hornick took his vehicle to Wellesly VW, a VW dealership located in Wellesly, Massachusetts. At the time, the vehicle had 27,370 miles on the odometer. The dealership quickly diagnosed the issue as a leaking sunroof and informed Plaintiff that the water damage had compromised key electrical systems and that it would be unsafe to operate the vehicle in its current state. The dealership kept the vehicle for approximately 10 days,

did not provide Plaintiff with a rental during that time, and ultimately charged Plaintiff approximately $1,300 for repairs.

412.    Plaintiff Hornick has spent valuable time and money trying to address the issues resulting from the sunroof Defect.

413.    Plaintiff Hornick has lost use of his Class Vehicle due to the Defect.

414.    Plaintiff Hornick is concerned about the potential for future leaks, the progressive effects on the vehicle's electrical system and the safety of himself and his passengers.

415.    Plaintiff has been damaged as a direct and proximate cause of the Defect.

416.    Due to the Defect, Plaintiff's Class Vehicle was and is worth less than what he paid for it.

417.    Due to the Defect, the current and future re-sale value of Plaintiff's Class Vehicle has been significantly reduced.

418.    Plaintiff did not receive the benefit of his bargain with VW for his Class Vehicle.

419.    At no time prior to his purchase, the "repair" of his Class Vehicle, or otherwise, did VW acknowledge the existence of the Defect to Plaintiff or disclose, warn, or otherwise inform Plaintiff of the Defect.

420.    Had VW informed Plaintiff of the Defect, Plaintiff would not have purchased the Class Vehicle.

**Plaintiffs Lisa and Steven DelPrete**

421.    Plaintiffs Lisa and Stephen DelPrete leased a new 2019 Tiguan complete with a movable panoramic sunroof in approximately June 2019 from Deel Volkswagen – a VW dealer located in Coral Gable, Florida.

422.    Plaintiffs leased the Class Vehicle for personal, family, and/or household use.

423.    Prior to leasing the Class Vehicle, Plaintiffs researched the Class Vehicle, reviewing VW's marketing materials available online, as well as those available at the dealership. Plaintiffs also reviewed the Monroney Sticker or "window sticker," and went over the vehicle

specifications with the VW salespersons. In fact, Plaintiffs were encouraged to get a vehicle with the panoramic sunroof feature.

424.    At no time prior to, during, or after their lease, did VW inform Plaintiffs that their Class Vehicle contained the sunroof Defect.

425.    Relying on VW's representations and omissions, Plaintiffs leased their Class Vehicle for a term of 48 months.

426.    Plaintiffs reasonably expected to be able to use their Class Vehicle for normal and ordinary purposes.

427.    Plaintiffs expected that their Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

428.    Since acquiring the Class Vehicle, Plaintiffs have experienced issues with the sunroof leak, which has resulted in progressive damage to the interior of their vehicle.

429.    Plaintiffs first began noticing a strong mildew odor in the car and a white, powdery, mold-like substance in the rear passenger foot wells. When these issues did not abate, in February 2020, Plaintiffs took the vehicle to their local dealership, Schumacher VW in North Palm Beach, Florida. The service personnel at Schumacher instantly diagnosed the problem as a leak in the sunroof. In fact, Plaintiffs were informed that this was an ongoing issue with the VW panoramic sunroofs and that, since January 2020, almost 200 people had been to the dealership with complaints stemming from sunroof leaks.

430.    From approximately February 7, 2020 through February 24, 2020, Schumacher VW kept the vehicle for repairs, which included "Sunroof Drain Cleaning & Modification." Following the purported completion of repairs, the dealership refused to clean the car of all mildew stains and damage. The refusal was made despite the fact that the service technician indicated that it was unsafe to drive the vehicle due to potential health hazards caused by mold.

431.    Concerned about the danger to themselves and their children, Plaintiffs paid for a mold inspection, at the cost of approximately $400. The inspection confirmed the continued

presence of mold in the car, as well as the fact that the condition had spread to different areas in the interior of the vehicle.

432.    The February 2020 repairs did not correct the problem. By the next rain, in or around March 2020, the vehicle was again leaking, and the odor and presence of mold was again an overwhelming presence.

433.    On March 16, 2020, Plaintiffs took the vehicle back to Schumacher VW.  The dealership stated that they would address the problem, but when the vehicle returned to Plaintiffs' care the sunroof leaks continued and mold damage to the vehicle's interior became progressively worse.

434.    During this time, Plaintiffs contacted Volkswagen America directly. They were assigned a case manager, who informed them that, according to the dealership, their vehicle had been "fixed" and thus no further action would be taken by VW. The case manager maintained this position despite the fact that Plaintiffs forwarded to Volkswagen America videos of the vehicle interior proving that the sunroof leak, and resulting and ever-expanding mold issue, continued to be a problem.

435.    On or about May 26, 2020, Plaintiffs took their vehicle to a new dealership, Wallace VW, where it remained until June 26, 2020 for repairs. Yet again, the repairs proved ineffective. Shortly after the vehicle returned to their care, and coinciding with the next rain, water leaked into the vehicle, causing further damage to the interior.

436.    Plaintiffs again contained Volkswagen America, were again assigned a case manager, and were again told that VW had no viable solution to the problem. According to the case manager, Plaintiffs only recourse was to continue going to dealerships for repairs, which, as time and experience had proven, were ineffective.

437.    On or about August 10, 2020, Plaintiffs brought the vehicle to Wallace VW for another "repair." The vehicle has been there since, and Plaintiffs are not sure when it will return to their possession.

438.     Plaintiffs have spent valuable time trying to address the issues resulting from the sunroof Defect, including taking their car to various VW dealers and contacting Volkswagen America directly.

439.     Plaintiffs have lost use of their Class Vehicle due to the Defect.

440.     Plaintiffs does not like to operate their Class Vehicle due to the overwhelming odor and mold issue. Further, they are concerned of the leakage that will occur during inclement weather, the progressive damage to the interior, and the potential risks to their health and safety, and those of others, should the problem continue to persist and progress.

441.     Plaintiffs have been damaged as a direct and proximate cause of the Defect.

442.     Due to the Defect, Plaintiffs' Class Vehicle was and is worth less than what they are paying for it.

443.     Plaintiffs did not receive the benefit of their bargain with VW for their Class Vehicle.

444.     At no time prior to their lease, the numerous "repairs" of their Class Vehicle, or otherwise, did VW acknowledge the existence of the Defect to Plaintiffs or disclose, warn, or otherwise inform Plaintiffs of the Defect.

445.     Had VW informed Plaintiffs of the Defect, Plaintiffs would not have leased their Class Vehicle.

**Plaintiff Krysztof Ziarno**

446.     Plaintiff Krzysztof Ziarno purchased his 2016 VW Golf complete with a movable, panoramic sunroof in August 2016 from Crestmont Volkswagen – a VW dealer located in Pompton Plains, New Jersey.

447.     Plaintiff purchased his Class Vehicle for personal, family, and/or household use.

448.     At no time prior to, during, or after his purchase, did VW inform Plaintiff that his Class Vehicle contained the sunroof defect.

449.     Plaintiff and Class Members reasonably expected to be able to use their Class Vehicle for normal and ordinary purposes.

450.     Plaintiff expected that his Class Vehicle would be able to withstand normal weather conditions and inclement weather, including rain.

451.     At no time prior to, during, or after his purchase, did VW inform Plaintiff that his Class Vehicle contained the sunroof Defect.

452.     Since the purchase of his vehicle, Plaintiff has experienced several leaks due to the Defect.

453.     In mid-October 2019, while it was raining outside, Plaintiff experienced the first sunroof leak in his Class Vehicle of which he was aware. He found a significant amount of water on the floor of his car after a rainstorm, even though the doors, windows, and sunroof had been closed.

454.     The problem recurred on several occasions over the next few months. On a few occasions, he found water accumulating inside his vehicle while he was driving during a rainstorm.

455.     Plaintiff made an appointment for a repair with Crestmont Volkswagen in December 2019. He was unable to get an appointment for several weeks. During this period sufficient water had accumulated on the right side of the vehicle that Plaintiff could not carry a passenger. At his appointment, Plaintiff was told that the problem was a clogged drain, which could be fixed.

456.     Crestmont kept the vehicle for several days to make the purported repair, leaving Plaintiff with no means of transportation. It refused to provide a loaner vehicle to Plaintiff during that time. Crestmont eventually unclogged the drain and replaced the headliner.

457.     However, the problem of water leaking into the car returned. On rainy days, water leaked into the car and caused both discoloration to the upholstery and mold accumulations on the floor of the car. Plaintiff captured photographs and video of the damage and discoloration to his car:

 

458.    Plaintiff returned the vehicle to Crestmont VW for a second time. Crestmont Volkswagen again kept the vehicle for several days, leaving Plaintiff with no means of transportation.

459.    Crestmont VW replaced the damaged upholstery shown in the photographs above, and claimed to have fixed the problem. This time Crestmont did not replace the headliner.

460.    However, the problem of leaks was not resolved. Another leak occurred a few days later, again following a storm.

461.    Plaintiff brought his vehicle to Crestmont for a third time. Again, Crestmont kept the vehicle for a few days, leaving Plaintiff without transportation. Again, it completed a repair but did not fully resolve the Defect. Water is still entering into Plaintiff's car during rainstorms, leaving watermarks on the upholstery.

462.    The Defect has caused Plaintiff significant inconvenience, including missed college classes and work, and expenses for replacement transportation such as buses and taxis in the periods when his vehicle was being repaired.

463.    Plaintiff has been damaged as a direct and proximate cause of the Defect.

464.     Due to the Defect, Plaintiff's Class Vehicle was and is worth less than what he paid for it.

465.     Due to the Defect, the current and future re-sale value of Plaintiff's Class Vehicle has been significantly reduced.

466.     Plaintiff did not receive the benefit of his bargain with VW for his Class Vehicle.

467.     At no time has VW acknowledged the existence of the defect to Plaintiff or disclosed, warned, or otherwise informed Plaintiff of the Defect.

468.     Had VW informed Plaintiff of the sunroof defect, Plaintiff would not have purchased his Class Vehicle.

## CLASS ACTION ALLEGATIONS

469.     Pursuant to Federal Rule of Civil Procedure 23, this action is brought individually by Plaintiffs and on behalf of the following proposed Nationwide Class and State Subclasses of similarly situated individuals:

a.   **Nationwide Class**:

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the United States, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkwagen Jetta, Volkwagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

b.   **New York Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of New York, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

c.   **California Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of California, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

d.  **Illinois Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of Illinois, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

e.  **Maryland Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of Maryland, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

f.  **Massachusetts Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of Massachusetts, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

g.  **Florida Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of Florida, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

h.  **New Jersey Class:**

All individuals who, during the maximum time period allowed by law, purchased or leased VW vehicles with sunroofs in the state of New Jersey, including but not necessarily limited to the following makes or models: Audi A3 Mk3, Audi Q3, Volkswagen Arteon, Volkswagen Atlas, Volkswagen Golf, Volkswagen Jetta, Volkswagen Passat, Volkswagen Tiguan, and the Volkswagen Touareg.

470.    Plaintiffs reserve the right to amend the class definitions based on discovery.

471.    Excluded from the proposed Classes are VW; any affiliate, parent, or subsidiary of VW; any entity in which VW has a controlling interest; any officer, director, or employee of VW;

any successor or assign of VW; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased a Class Vehicle solely for the purpose of resale.

472.    Members of the proposed Classes are readily ascertainable because the Class definitions are based upon objective criteria.

473.    <u>Numerosity.</u>  This action is brought by Plaintiffs on behalf of all other persons similarly situated whose joinder in this action is impracticable because the Classes are so numerous. VW sold tens of thousands of Class Vehicles to people all across the nation, including in New York, California, and Illinois. VW continues to sell the defective Class Vehicles. Thus, there are too many members to practically join in a single action.

474.    <u>Commonality and Predominance.</u>  Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions that might affect only individual Class Members. These common questions include but are not limited to:

a.    Whether the sunroofs have a propensity to leak;

b.    Whether VW knew or should have known that the sunroofs had a propensity to leak, and, if so, when this Defect was discovered by VW;

c.    Whether VW failed to disclose, failed to warn, and actively concealed the existence of the Defect(s) from potential customers;

d.    Whether VW had a duty to disclose the Defect;

e.    Whether VW breached any express or implied warranties;

f.    Whether the Court may enter an injunction requiring VW to notify owners and lessees about the Defect;

g.    Whether the Court may enter an injunction requiring VW to cease its practice of replacing defective sunroofs with identically defective sunroofs;

h.    Whether VW had a duty to disclose the true character, quality, and nature of the Class Vehicles and the Defect;

     i.  Whether VW's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act;

     j.  Whether VW's conduct, as alleged herein, violates the consumer protection laws of New York, California, Illinois, Maryland, New Jersey, and/or Florida;

     k.  Whether VW's conduct, as alleged herein, entitles Plaintiffs and Class Members to restitution under the laws of New York, Illinois, Maryland, New Jersey, and/or Florida.

475.  <u>Typicality.</u>  Plaintiffs' claims are typical of the claims of the proposed Classes. Plaintiffs and Class Members all purchased or leased Class Vehicles with sunroofs that have a propensity to leak due to a defect in manufacturing, and/or workmanship.

476.  <u>Adequacy.</u>  Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and will prosecute vigorously on behalf of the proposed Classes.

477.  <u>Superiority.</u>  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of the individual actions against VW economically feasible. Even if Class Members themselves could afford individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective sunroofs, individualized litigation increases delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Further, prosecution of separate actions would create a substantial risk of inconsistent and varying adjudications.

478.  In the alternative, the proposed Classes may be certified because:

a.  The prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for VW;

b.  The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members, or which would substantially impair their ability to protect their interests; and

c.  VW acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to members of the proposed Classes as a whole.

### TOLLING OF THE STATUTES OF LIMITATIONS

479.  <u>Discovery Rule.</u>  Plaintiffs' and Class Members' claims accrued upon discovery that the sunroofs in their Class Vehicles were prone to leaking. While VW knew and concealed the Defect, Plaintiffs and Class Members could not and did not discover this fact through reasonable diligence prior to the purchase of their Class Vehicles.

480.  <u>Active Concealment.</u>  Any relevant statutes of limitations are tolled by VW's knowing and active concealment of the fact that the sunroofs suffered from the Defect. In August 2017, VW notified dealers that the Defect was substantial enough that "dealer stock vehicles" could not "be delivered to consumers" until the dealer had attempted a repair, but actively hid the Defect from consumers, stating, "Volkswagen is not notifying consumers" of the problem. VW had a duty to disclose this Defect and its consequent performance and safety problems to Plaintiffs and Class Members because VW had knowledge of this Defect and the Defect was not known or easily discoverable by Plaintiffs or Class Members. Despite its affirmative duty to disclose the nature and existence of this Defect, VW kept Plaintiffs and Class Members ignorant of vital information. A significant portion of evidence demonstrating VW's efforts to conceal the Defect is in the possession, custody, and control of VW to the exclusion of Plaintiffs and Class Members.

481.    <u>Estoppel</u>. VW was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the sunroofs installed in the Class Vehicles. At all relevant times, VW knowingly, affirmatively, and actively concealed the true character, quality, and nature of the sunroofs installed in the Class Vehicles. The details of VW's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs and Class Members reasonably relied upon VW's active concealment. Based on the foregoing, VW is estopped from relying on any statutes of limitation in defense of this action.

482.    <u>Equitable Tolling</u>. VW took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective sunroofs. Significant details of VW's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. VW's failure to disclose and its active concealment of the Defect amounts to bad faith and deception in and of itself. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. VW fraudulently concealed its above-described wrongful acts. Therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLAIMS FOR RELIEF

### COUNT I – BREACH OF EXPRESS WARRANTIES
**(Plaintiffs individually and on behalf of the Nationwide Class or,
in the alternative, the State Subclasses)**

483.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

484.    VW provides all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. This includes its written warranty provided at the time of sale, as well as affirmations of fact, promises, or descriptions about the Class Vehicles made in advertising or other materials, and other representations by VW concerning the Class Vehicles.

485.    VW manufactured and/or distributed the defective sunroofs included in the Class Vehicles, and any repair or replacement of the defective sunroofs are or should have been covered by the warranties VW provided to Plaintiffs and Class Members for the Class Vehicles.

486.    The Class Vehicles are non-conforming goods in that, at a minimum, they do not conform to descriptions provided by VW and they are defective as described herein.

487.    Any repair or replacement of the defective sunroofs or parts therein to make them conform to VW's representations, affirmations, promises, descriptions, and warranties are or should have been provided to Plaintiffs and Class Members for the Class Vehicles free of charge.

488.    VW breached its express warranties by providing non-conforming goods.

489.    VW breached its warranties by manufacturing, selling, leasing, and distributing the Class Vehicles with the Defect, requiring repair or replacement within the applicable warranty periods; refusing to honor the warranties with free repairs or replacements during the applicable warranty periods, refusing to honor the warranties with free repairs or replacements outside the applicable warranty periods without informing consumers of the Defect during their respective warranty periods; and/or simply refusing or being unable to repair, replace, or otherwise remedy the defective sunroofs free of charge.

490.    VW further breached these warranties by not correcting the Defect. VW's TSBs referred to the problems in the sunroofs as having occurred during the production process, namely incorrect assembly, faulty rework, and improper cleaning in production. Although VW warranted that it would correct defects in materials and workmanship in the Class Vehicles, VW instead sought to repair the defective sunroofs in the Class Vehicles with repair kits that did not fix the Defect permanently or at all, used parts for repair that were defective in the same manner as the original parts, or failed to make any repairs at all. In each scenario, VW did not correct the Defect. VW has failed and/or refused to conform the sunroofs in the Class Vehicles to the express warranties. VW's conduct has voided any attempt to disclaim liability for its actions.

491.    Plaintiffs and Class Members notified VW of the breach within a reasonable time or were not required to do so, because VW is the manufacturer and/or affording VW a reasonable

opportunity to cure its breach of written warranty would have been futile. VW knew of the Defect, chose to conceal it, and failed to comply with its warranty obligations and other express warranties.

492.    To the extent the defective Class Vehicles and warranties thereof fail their essential purposes, the written warranty terms are void.

493.    The time limits and other terms contained in VW's warranty are unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor VW. A gross disparity in bargaining power exists between VW and Class Members, and VW knew or should have known that the sunroofs in the Class Vehicles were defective at the time of sale. Moreover, VW carefully designed its conduct to conceal the Defect from consumers so that less repairs would need to be made free of charge under warranty.

494.    Plaintiffs and Class Members have complied with all obligations under the warranties, or otherwise have been excused from performance of those obligations as a result of VW's conduct described herein.

495.    Plaintiffs and Class Members have had sufficient direct dealings with VW or its agents (including dealerships) to establish privity of contract with VW.

496.    Privity is not required here because Plaintiffs and Class Members are intended third-party beneficiaries of contracts between VW and its distributors and dealers, and specifically, of VW's express warranties.

497.    VW's dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

498.    The warranties were designed for and intended to benefit consumers only.

499.    Privity is not required here because the Class Vehicles, in their defective state, with related safety issues qualify as a thing of danger.

500.    As a direct and proximate cause of VW's breaches, Plaintiffs and Class Members bought or leased Class Vehicles they otherwise would not have purchased, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered diminution

in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for repair and replacement of defective sunroofs and damage resulting from the leaking sunroofs.

501.    Plaintiffs and Class Members are entitled to legal and equitable relief against VW, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem just or proper.

## COUNT II – BREACH OF IMPLIED WARRANTIES
**(Plaintiffs Cole, Werner, Govan, Barden, Lisa and Steven Delprete, Rick Hornick, Antonio Cabezas, and Krzysztof Ziarno individually and on behalf of the California, Florida, Massachusetts, Maryland and New Jersey Classes)**

502.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

503.    VW warranted that its Class Vehicles were of merchantable quality and fit for their ordinary purpose.

504.    VW warranted that its Class Vehicles had been properly made and the sunroofs would not leak water into the interior of the vehicles while the sunroofs were closed.

505.    VW breached these implied warranties:

   a.   The Class Vehicles were not merchantable because the sunroofs leaked;

   b.   The Class Vehicles were not properly designed, not properly manufactured, and/or suffered from poor workmanship because the sunroofs leaked water into the interior of the vehicle while the sunroofs were closed;

   c.   The Class Vehicles were not fit for their ordinary purpose, including driving in rain, inclement weather, and through car washes.

506.    Plaintiffs and each member of the Class have had sufficient direct dealings with VW or its agents (including dealerships) to establish privity of contract with VW.

507.    Privity is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between VW and its dealers, and specifically, of VW's implied warranties.

508.    VW's dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

509.    The warranties were designed for an intended to benefit consumers only.

510.     Privity is not required here because the Class Vehicles, in their defective state, with related safety issues qualify as a thing of danger.

511.     As a direct and proximate cause of VW's breaches, Plaintiffs and Class Members bought or leased Class Vehicles they otherwise would not have purchased, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered diminution in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for repair and replacement of defective sunroofs and damage resulting from the leaking sunroofs.

512.     Plaintiffs and Class Members are entitled to legal and equitable relief against VW, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem just or proper.

## COUNT III – BREACH OF EXPRESS WARRANTIES UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT
### (Plaintiffs Cole, Werner, Barden and Govan individually and on behalf of the California Class)

513.     Plaintiffs incorporate by reference all previous allegations as if set forth herein.

514.     Class Vehicles are "consumer goods" within the meaning in Cal. Civ. Code § 1791(a).

515.     Plaintiffs and Class Members are "buyers" within the meaning in Cal. Civ. Code § 1791(b).

516.     VW is a "manufacturer," "distributor," or "retail seller" within the meaning in Cal. Civ. Code § 1791(e), (j), (l).

517.     As described herein, VW knowingly and willfully breached its express warranties in violation of the California Song-Beverly Consumer Warranty Act.

518.     VW's actions have deprived Plaintiffs and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what they paid for them.

519.     As a direct and proximate cause of VW's breaches, Plaintiffs and Class Members bought or leased Class Vehicles they otherwise would not have purchased, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered diminution

in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for repair and replacement of defective sunroofs and damage resulting from the leaking sunroofs.

520.    Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles, replacement of the Class Vehicle, the overpayment or diminution in value of their Class Vehicles, and/or the cost to make the goods conform. They are also entitled to all incidental and consequential damages resulting from VW's conduct, as well as reasonable attorneys' fees and costs.

### COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT
#### (Plaintiffs Cole, Werner, Barden, and Govan, individually and on behalf of the California Class)

521.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

522.    Class Vehicles are "consumer goods" within the meaning in Cal. Civ. Code § 1791(a).

523.    Plaintiffs and Class Members are "buyer[s]" within the meaning in Cal. Civ. Code § 1791(b).

524.    VW is a "manufacturer," "distributor," or "retail seller" within the meaning in Cal. Civ. Code § 1791(e), (j), (l).

525.    The implied warranty of merchantability included with the sale of each Class Vehicle under the Act means that VW warranted that each Class Vehicle:

   a.    would pass without objection in trade under the contract description;

   b.    was fit for the ordinary purposes for which the Class Vehicle would be used;

   c.    were adequately contained, packaged, and labeled; and

   d.    conformed to the promises or affirmations of fact made.

Civ. Code § 1791.1(a)

526.    As described herein, VW knowingly and willfully breached its implied warranties in violation of the California Song-Beverly Consumer Warranty Act.

527.    The Class Vehicles are not merchantable at the time of sale.

528.    The Class Vehicles would not pass without objection in the automotive trade because their sunroofs are inherently defective in that they have a propensity to leak, making them unfit for the ordinary purpose for which the Class Vehicles are normally used.

529.    The Class Vehicles cannot be said to be adequately labeled because nothing discloses the sunroofs' propensity to leak nor advises Plaintiffs or Class Members of the existence of the Defect.

530.    The Class Vehicles do not conform to the promises or affirmations made by VW.

531.    The Class Vehicles cannot pass the core test of merchantability – fitness for the ordinary purpose for which the goods are used – because they are not substantially free of defects and they are not safe.

532.    VW's actions have deprived Plaintiffs and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiffs and Class Members paid for them.

533.    As a direct and proximate cause of VW's breaches, Plaintiffs and Class Members bought or leased Class Vehicles they otherwise would not have purchased, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered diminution in value. Plaintiffs and Class Members have also incurred and will continue to incur costs for repair and replacement of defective sunroofs and damage resulting from the leaking sunroofs.

534.    Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles, replacement of the Class Vehicle, the overpayment or diminution in value of their Class Vehicles, and/or the cost to make the goods conform. They are also entitled to all incidental and consequential damages resulting from VW's conduct, as well as reasonable attorneys' fees and costs.

### COUNT V – VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
**(Plaintiffs Gjonbalaj and Campbell individually and on behalf of the New York Class)**

535.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

536.    The sale and distribution of the Class Vehicles in New York constitutes a consumer-oriented act and thereby is governed by the New York deceptive acts and practices statute, General Business Law ("GBL") § 349.

537.    VW violated GBL § 349 by representing that:

    a.  The Class Vehicles, their sunroofs and related components had characteristics, uses, or benefits which they did not have; and,

    b.  The Class Vehicles, their sunroofs, and related components were of a particular standard, quality, or grade which they were not.

538.    VW's scheme and concealment of the true characteristics of the vehicles and sunroofs were material to Plaintiffs and New York Class Members, as VW intended.

539.    Had Plaintiffs and New York Class Members known the truth, they would not have purchased or leased the Class Vehicles, or – if the Class Vehicle's true nature had been disclosed and mitigated, Plaintiffs and Class Members would have paid significantly less for the Class Vehicles.

540.    Plaintiffs and New York Class Members had no way of discerning or otherwise learning that VW's representations were false and misleading and that VW had concealed or failed to disclose facts relevant to the Defect in their Class Vehicles, until Plaintiffs and New York Class Members' Class Vehicles began manifesting the Defect. Plaintiffs and New York Class Members did not, and could not, unravel VW's deception on their own.

541.    VW had an ongoing duty to the New York Class to refrain from unfair and deceptive practices under GBL § 349 in the course of their business. Specifically, VW owed Plaintiffs and New York Class Members a duty to disclose all material facts concerning the Defect because VW possessed exclusive knowledge, intentionally concealed such knowledge from Plaintiffs and the New York Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

542.    VW's violations present a continuing risk to the New York Class and the general public.

543.     VW's actions complained of herein affect the public interest.

544.     As a result of VW's statutory violations, Plaintiffs and New York Class Members sustained injuries and are entitled to relief under the Act.

**COUNT VI – NEW YORK GENERAL BUSINESS LAW § 350**
**(Plaintiff Gjonbalaj and Campbell individually and on behalf of the New York Class)**

545.     Plaintiffs incorporate by reference all previous allegations as if set forth herein.

546.     VW engages in the "conduct of business, trade, or commerce" under GBL § 350.

547.     False advertising under GBL § 350-a includes "advertising, including labeling, of a commodity … if such advertising fails to reveal facts material in light of … representations [made] with respect to the commodity. …"

548.     VW caused to be made or disseminated through New York – via documents provided with purchase, advertising, marketing, and other publications – statements that were untrue or misleading to Plaintiffs and New York Class Members.

549.     VW made numerous material misrepresentations or omissions of fact with intent to mislead and deceive the New York Class Members concerning the Class Vehicles, particularly with regard to the Defect. Specifically, VW intentionally concealed and suppressed material facts concerning the quality of the Class Vehicles in order to intentionally and grossly defraud and mislead Plaintiffs and New York Class Members concerning the Defect.

550.     The misrepresentations and omissions set forth herein were material and likely to deceive a reasonable consumer.

551.     The inherent sunroof Defect was undetectable to the ordinary consumer, until the Defect began to manifest in ways visible to Class Members.

552.     VW intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and New York Class Members.

553.     VW's false advertising was likely to and did, in fact, deceive reasonable consumers including New York Class Members about the true characteristics of the Class Vehicles, sunroofs, and the Defect.

554.    VW's violations of GBL § 350 present a continuing risk to Plaintiffs, New York Class Members, and to the general public.

555.    VW's deceptive acts and practices affect the public interest.

556.    The Class Vehicles did not perform as advertised and, thus, they are far less valuable than advertised.

557.    New York Class Members who purchased Class Vehicles either would not have purchased those vehicles at all or else they would have paid less for the Class Vehicles but for VW's false advertising in violation of GBL § 350. New York Class Members who leased Class Vehicles either would not have leased them at all or would have leased them at a lower cost but for VW's false advertising in violation of GBL § 350.

558.    Plaintiffs and New York Class Members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of VW's false advertising in violation of GBL § 350, including but not limited to purchasing or leasing a diminished value or complete lost value for the Class Vehicles purchased or leased.

559.    Plaintiffs and New York Class Members have suffered lost or diminished use, enjoyment, and utility of their Class Vehicles along with suffering annoyance, aggravation, and inconvenience resulting from VW's violation of GBL § 350.

560.    Plaintiffs and New York Class Members seek monetary relief against VW measured as the greater of (a) actual damages in an amount to be determined at trial, or (b) statutory damages. Because VW's conduct was committed willingly and knowingly, Plaintiffs and New York Class Members are entitled to recover three times actual damages, up to $10,000.

561.    Plaintiffs and New York Class Members also seek an order enjoining VW's false advertising and further seek attorney's fees and any other just and proper relief under GBL § 350.

**COUNT VII – VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Plaintiffs Cole, Werner, Barden, and Govan individually and**
**on behalf of the California Class)**

562.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

563.    VW has violated and continues to violate California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., which prohibits unlawful, unfair, and fraudulent business acts or practices.

564.    VW's acts and practices, alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL. In particular, VW sold Class Vehicles to Plaintiffs and Class Members even though the sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the Defect and the attendant risks of the Defect at the point of sale or otherwise.

565.    VW's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. for the reasons set forth below.

566.    VW's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, VW knowingly concealed, continues to conceal, failed, and continues to fail to disclose at the point of sale and otherwise that Class Vehicles' sunroofs have a propensity to leak. Had VW disclosed that information, Plaintiffs and Class Members would not have purchased Class Vehicles or would have paid significantly less for them.  Furthermore, VW charges for repairs of the sunroof Defect without disclosing that the problem is, indeed, a defect and it is widespread.

567.    VW owed a duty to disclose the Defect and its corresponding safety risk to Plaintiffs and members of the Class because VW possessed superior and exclusive knowledge regarding the defect. Further, VW had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe, reliable, and able to withstand being in the rain without allowing water to penetrate the passenger compartment.

568.    VW's conduct also constitutes unfair business practices for at least the following reasons:

    a.  The gravity of potential harm to Plaintiffs and Class Members as a result of VW's acts and practices far outweighs any legitimate utility of VW's conduct;

b. VW's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and Class Members; and

c. VW's conduct undermines or violates stated policies underlying the UCL—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

569. As a direct and proximate result of VW's business practices described herein, Plaintiffs and Class Members suffered a foreseeable injury-in-fact and damages (*e.g.*, lost money or property) because they purchased and paid for Class Vehicles that, had they known of the Defect, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

570. Plaintiffs and Class Members are entitled to equitable relief, including an order directing VW to disclose the existence of the Defect inherent in its sunroofs and to provide restitution and disgorgement of all profits paid to VW as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

**COUNT VIII – VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**
**Cal. Civ. Code § 1750, *et seq.***
**(Plaintiffs Cole, Werner, Barden and Govan, individually and**
**on behalf of the California Class)**

571. Plaintiffs incorporate by reference all previous allegations as if set forth herein.

572. VW is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

573. Plaintiffs and Class Members are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

574. VW's acts and practices, which were intended to result, and which did result, in the sale of Class Vehicles with defective sunroofs, violated and continues to violate the Consumer Legal Remedies Act ("CLRA") for at least the following reasons:

a.   VW represents that its vehicles with sunroofs had characteristics, values, or benefits which they do not have;

b.   VW advertises its goods with intent not to sell them as advertised;

c.   VW represents that its vehicles and sunroofs are of a particular standard, quality, or grade when they are not;

d.   VW represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and,

e.   VW represents that its goods have been supplied in accordance with a previous representation when they have not.

575.   As described herein, VW sold vehicles to Plaintiffs and Class Members even though the sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and VW failed to disclose its knowledge of its sunroof Defect and further failed to disclose the attendant risks associated with that Defect at the point of sale or otherwise. VW intended that Plaintiffs and Class Members rely on this omission in deciding to purchase their vehicles. Plaintiffs and Class Members did in fact rely on said omission.

576.   VW owed a duty to disclose the Defect and its corresponding safety risk to Plaintiffs and members of the Class because VW possessed superior and exclusive knowledge regarding the defect. Further, VW had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe, reliable, and able to withstand being in the rain without allow water to penetrate the passenger compartment.

577.   Had VW adequately disclosed the Defect inherent in its sunroofs, Plaintiffs and Class Members would not have purchased their Class Vehicles or, in the alternative, they would have only been willing to pay less for their Class Vehicles. Furthermore, VW charges consumers for the repair and replacement of the defective sunroofs without disclosing that leaking problem is a widespread Defect.

578.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs Cole, Werner and Barden, have provided written notice of the Defect to VW, and the 30-day notice period has expired without cure. Accordingly, Plaintiffs, individually and on behalf of the California Class, seek monetary damages to the fullest extent allowable under CLRA.

579.    Pursuant to Cal. Civ. Code § 1782, Plaintiff Govan will give notice of the Defect to VW and upon the expiration of the period described in Cal. Civ. Code Section 1782, subd. (d), Plaintiffs will amend this Consolidated Complaint to state a claim for damages on behalf of Plaintiff Govan under the CLRA.

580.    Pursuant to Cal. Civ. Code § 1780, Plaintiffs seek an order enjoining VW for the unlawful practices described above and a declaration that VW's conduct violates the Consumer Legal Remedies Act, as well as actual and punitive damages and attorneys' fees and costs.

## COUNT IX - VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq*. and 720 ILCS 295/1a
### (Plaintiff Williams individually and on behalf of the Illinois Class)

581.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

582.    Plaintiff Williams brings this claim individually and on behalf of the Illinois Class.

583.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

584.    Plaintiff Williams and the Illinois Class Members are "consumers" as that term is defined in 815 ILCS 505/1(e).

585.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

586.    VW designed, manufactured, and approved of the defective sunroofs, and subsequently of the sale of the Class Vehicles to Plaintiff Williams and the Illinois Class, without

disclosing the sunroof defect. During normal operation the sunroof defect would not reveal itself unless certain environmental conditions existed, *e.g.* rain. Plaintiff Williams and Illinois Class Members had no way of discerning that VW's representations of safety and reliability were false and misleading because the sunroof defect would not reveal itself on normal inspection and/or test drive. At a minimum, this omission of a material fact constitutes a deceptive business practice in violation of Illinois statutory law and further violates Illinois common law as set forth herein.

587.    VW thus violated and continues to violate the Act by, at minimum, willfully failing to disclose and actively concealing the sunroof defect.

588.    VW engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA by installing, failing to disclose and actively concealing the sunroof defect by marketing its vehicles as reliable, safe, and of high quality.

589.    VW's conduct is unlawful in that, among other things, it violates the Transportation Recall Enhancement, Accountability and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30101, *et seq.* (by failing to timely inform the NHTSA of the sunroof defect and allowing the Vehicles to be sold with the sunroof defect).

590.    VW knew the sunroofs installed in the Class Vehicles were defective after having received numerous complaints, and issuing guidance in various forms to dealers, regarding the defects. Nevertheless, VW continued to manufacture, market, and sell Class Vehicles with the defective sunroofs all while concealing the Defect from customers. VW did this because, though sunroofs are a relatively low-cost item to manufacture, they add significantly to the Class Vehicle's purchase price, making it one of the most profitable options available to VW.

591.    VW intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead consumers, including Plaintiff Williams and the Illinois Class.

592.    VW knew or should have known that its conduct violated the Illinois CFA.

593.    VW owed Plaintiff Williams and the Illinois Class a duty to disclose the sunroof defect and safety risks of the Class Vehicles because they:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with the sunroof defect;

    b.   intentionally concealed the foregoing from Plaintiff Williams, Illinois Class members; and/or

    c.   made incomplete representations about the safety and reliability of the Vehicles given their knowledge of the sunroof defect.

594.   VW's use of a defective sunroof and its omission of any representation regarding the Defect were material to Plaintiff Williams and the Illinois Class.

595.   VW's unfair and/or deceptive acts and practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Williams, about the safety, reliability, quality and true value of the Class Vehicles.

596.   Plaintiff Williams and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of VW's misrepresentations and its failure to disclose material information. Plaintiff Williams and Illinois Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Class Vehicles' true nature had been disclosed and mitigated—would have paid significantly less for them. Plaintiff Williams and Illinois Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

597.   VW had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

598.   VW's violations present a continuing risk to Plaintiff Williams as well as to the general public. VW's unlawful acts and practices complained of herein affect the public interest.

599.   As a direct and proximate result of VW's violations of the Illinois CFA, Plaintiff Williams and the Illinois Class have suffered injury-in-fact and/or actual damage.

600.     Pursuant to 815 ILCS 505/10a(a), Plaintiff Williams and the Illinois Class seek monetary relief against VW in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

601.     Plaintiff Williams also seeks an order enjoining VW's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

### COUNT X - VIOLATION OF MARYLAND CONSUMER PROTECTION ACT
### Md. Code Ann. Law, Com. Law § § 13-101, *et seq.*
### (Plaintiff Cabezas individually and on behalf of the Maryland Class)

602.     Plaintiffs incorporate by reference all previous allegations as if set forth herein.

603.     Defendants are "person[s]" and "merchant[s]" as those terms are defined in Md. Code Ann., Com. Law § 13-101.

604.     Plaintiff Cabezas and Maryland Class Members are "consumers" as that term is defined in Md. Code Ann., Com. Law § 13-101.

605.     The Maryland Consumer Protection Act broadly prohibits unfair, abusive, or deceptive trade practice in the sale or lease of consumer goods or consumer services. Md. Code Ann., Com. Law § 13-303. This includes a prohibition against any deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer relies on the same in connection with the sale of any consumer goods or services. Md. Code Ann., Com. Law § 13-301.

606.     As detailed herein, VW violated the Maryland Consumer Protection Act. VW manufactured and approved the sale of the defective sunroofs, and subsequently of the sale of the Class Vehicles to Plaintiff Cabezas and the Maryland Class, without disclosing the sunroof defect. During normal operation the sunroof defect would not reveal itself unless certain environmental conditions existed, *e.g.* rain. Plaintiff Cabezas and Maryland Class Members had no way of discerning that VW's representations of safety and reliability were false and misleading because the sunroof defect would not reveal itself on normal inspection and/or test drive. At a minimum,

this omission of a material fact constitutes a deceptive business practice in violation of Maryland statutory law and further violates Maryland common law as set forth herein.

607.    VW thus violated and continues to violate the Act by, at minimum, willfully failing to disclose and actively concealing the sunroof defect.

608.    VW engaged in misleading, false, unfair or deceptive acts or practices that violated the Maryland's Consumer Protection Act by installing, failing to disclose and actively concealing the sunroof defect by marketing the Class Vehicles as reliable, safe, and of high quality.

609.    VW knew the sunroofs installed in the Class Vehicles were defective after having received numerous complaints, and issuing guidance in various forms to dealers, regarding the Defect. Nevertheless, VW continued to manufacture, market and sell Class Vehicles with the defective sunroofs all while misrepresenting the quality of the vehicles and concealing the Defect from customers. VW did this because, though sunroofs are a relatively low-cost item to manufacture, they add significantly to the Class Vehicle's purchase price, making it one of the most profitable options available to VW.

610.    VW intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead consumers, including Plaintiff Cabezas and the Maryland Class.

611.    VW knew or should have known that its conduct violated Maryland's Consumer Protection Act.

612.    VW owed Plaintiff Cabezas and the Maryland Class a duty to disclose the sunroof defect and safety risks of the Class Vehicles because they:

       a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with the sunroof defect;

       b.    intentionally concealed the foregoing from Plaintiff Cabezas, Maryland Class members; and/or

       c.    made incomplete representations about the safety and reliability of the Vehicles given their knowledge of the sunroof defect.

613.    VW's use of a defective sunroof and its omission same were material to Plaintiff Cabezas and the Maryland Class.

614.    VW's unfair and deceptive acts and practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Cabezas, about the safety, reliability, quality and true value of the Class Vehicles.

615.    Plaintiff Cabezas and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of VW's misrepresentations and its failure to disclose material information. Plaintiff Cabezas and Maryland Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Class Vehicles' true nature had been disclosed and mitigated—would have paid significantly less for them. Plaintiff Cabezas and Maryland Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

616.    VW had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under Maryland's Consumer Protection Act. All owners of Class Vehicles suffered  ascertainable loss in the form of the diminished value of their vehicles as a result of VW's deceptive and unfair acts and practices made in the course of VW's business.

617.    VW's violations present a continuing risk to Plaintiff Cabezas as well as to the general public. VW's unlawful acts and practices complained of herein affect the public interest.

618.    As a direct and proximate result of VW's violations of Maryland Consumer Protection Act, Plaintiff Cabezas and the Maryland Class have suffered a foreseeable injury-in-fact and damages (*e.g.*, lost money or property) because they purchased and paid for Class Vehicles that, had they known of the Defect, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

619.    Plaintiff Cabezas and Maryland Class Members are entitled to monetary and statutory damages to the fullest extent allowable under the law, equitable relief, including an order directing VW to disclose the existence of the Defect inherent in its sunroofs and to provide

restitution and disgorgement of all profits paid to VW as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

### COUNT XI - VIOLATION OF FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT
### Fla. Stat. § 501.201, *et seq.*
### (Plaintiffs Lisa and Steven DelPrete individually and on behalf of the Florida Class)

620.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

621.    Plaintiffs Lisa and Steven DelPrete and Florida Class Members are "consumers" as defined in Fla. Stat. § 501.203.

622.    At all relevant times herein, VW was engaged in the conduct of "trade or commerce" as defined in Fla. Stat. §§ 501.203.

623.    Florida's Deceptive and Unfair Trade Practices Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

624.    As detailed herein, VW violated Florida's Deceptive and Unfair Trade Practices Act by engaging in misrepresentations and omissions of material facts in the sale and advertisement of Class Vehicles. VW's misrepresentations and omissions include misrepresenting the true nature, quality and characteristic of the Class Vehicles, including the sunroof feature, while failing to disclose to consumers that the sunroofs are defective in that they are prone to leaks. VW sold vehicles to Plaintiffs and Florida Class Members even though the sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and VW failed to disclose its knowledge of its sunroof Defect and further failed to disclose the attendant risks associated with that Defect at the point of sale or otherwise. VW intended that Plaintiffs and Class Members rely on this omission in deciding to purchase their vehicles. Plaintiffs and Class Members did in fact rely on said omission.

625.    VW owed a duty to disclose the Defect and its corresponding safety risk to Plaintiffs and members of the Class because VW possessed superior and exclusive knowledge

regarding the defect. Further, VW had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe, reliable, and able to withstand being in the rain without allow water to penetrate the passenger compartment.

626.    In addition, VW's actions in connection with the manufacturing, distributing and sale of the Class Vehicles, as set forth herein, evidences a lack of good faith, honesty in fact, and observance of fair dealing, so as to constitute unconscionable commercial practices in violation of the Florida's Unfair and Deceptive Trade Practices Act.

627.    Had VW adequately disclosed the Defect inherent in its sunroofs, Plaintiffs and Class Members would not have purchased their Class Vehicles or, in the alternative, they would have only been willing to pay less for their Class Vehicles. Furthermore, VW charges consumers for the repair and replacement of the defective sunroofs and/or denies adequate repairs without disclosing that leaking problem is a widespread Defect.

628.    Plaintiffs and Florida Class Members are entitled to monetary and statutory damages to the fullest extent allowable under the law, equitable relief, including an order directing VW to disclose the existence of the Defect inherent in its sunroofs and to provide restitution and disgorgement of all profits paid to VW as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

### COUNT XI - VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### N.J. Stat. Ann. § 56:8-1, *et seq.*
### (Plaintiff Ziarno individually and on behalf of the New Jersey Class)

629.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

630.    Plaintiffs, New Jersey Class Members and VW are "person[s]" as defined in N.J. Stat. Ann. § 56:8-1.

631.    The New Jersey Consumer Fraud Act ("NJCFA") protects consumers from "any unconscionable   commercial   practice,   deception,   fraud,   false   pretense,   false   promise,

misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

632.     As detailed above, VW engaged in unlawful conduct by deliberately and knowingly misrepresenting and omitting the true character, quality, and nature of the sunroofs in the Cass Vehicles.

633.     VW intended that Plaintiff and New Jersey Class Members rely on its misrepresentation and/or acts of concealment and omission, so that they would purchase the Class Vehicles.

634.     Accordingly, VW has engaged in, unfair, and deceptive trade practices. Further, Defendant's acts and practices described herein offend established public policy because the harm caused to Plaintiff and New Jersey Class Members, and their personal property, outweighs any benefit associated with such practices, and because VW fraudulently, negligently and deceptively concealed the true nature of the Defect.

635.     VW's actions as set forth above occurred in the conduct of trade or commerce.

636.     By engaging in the above-described practice and the actions and omissions herein alleged, VW has committed one or more unlawful acts in violation of the NJCFA.

637.     VW's conduct caused Plaintiff and New Jersey Class Members to suffer ascertainable loss. In addition to direct monetary losses, Plaintiff and New Jersey Class Members have suffered an ascertainable loss in that they received less than what was promised to them by Defendant at the time they purchased their vehicles. Plaintiff and New Jersey Class Members have also had to expend time and resources in repairing their sunroofs. Therefore, Plaintiff and New Jersey Class Members are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

638.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the New Jersey Class Members. Had the Defect in the Class Vehicles been disclosed, Plaintiff and the New Jersey Class Members would not have purchased Class Vehicles or would have paid significantly less for them.

639.     Plaintiff and New Jersey Class Members are entitled to equitable relief, including an order directing VW to disclose the existence of the Defect inherent in its sunroofs and to provide restitution and disgorgement of all profits paid to VW as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

640.     Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint by certified mail.

## COUNT XII – FRAUD BY OMISSION AND/OR FRAUDULENT CONCEALMENT
### (Plaintiffs individually and on behalf of the Nationwide Class, or
### in the alternative, the State Subclasses)

641.     Plaintiffs incorporate by reference all previous allegations as if set forth herein.

642.     At all relevant times, VW had a duty to disclose the Defect to Plaintiffs and Class Members. VW owed a duty to disclose the Defect and its corresponding safety risk to Plaintiffs and members of the Class because VW possessed superior and exclusive knowledge regarding the Defect. Further, VW had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe, reliable, and able to withstand inclement weather (including, being in the rain without allowing water to penetrate the passenger compartment).

643.     Once VW made representations to the public about safety, quality, functionality, and reliability, VW was under a duty to disclose these omitted facts – where one does speak, one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. Rather than disclose the Defect, VW intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the presence of the Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement by failing to disclose the existence of the

Defect and its inability to correct or permanently repair the Defect in its marketing materials, including in the brochures, advertisements, and Monroney Sticker of the Class Vehicles.

644.    VW omitted, concealed, and/or suppressed the existence of the Defect in the Class Vehicles and its inability to permanently repair the Defect.

645.    VW's omission or concealment of the existence of the Defect and its inability to permanently repair it was done knowingly, intentionally, and with the intent to induce consumers to purchase the defective Class Vehicles for a price more than their actual worth.

646.    VW knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. VW knew their omission, concealment and suppression of the Defect would sell more Class Vehicles and would discourage Plaintiffs and Class Members from seeking replacement or repair of the Defect during the applicable warranty periods. Further, VW intended to induce Plaintiffs and Class Members into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

647.    Plaintiffs and Class Members were unaware of the Defect because VW did not disclose in any of the marketing or informational materials for the Class Vehicles that the Defect existed and that VW could not permanently repair the Defect.  Further, VW did not issue press releases and did not make its Tech Tips, TSBs, and other internal communications available to the public, to consumers, or to the owners and lessees of Class Vehicles via direct communications.

648.    Had VW not omitted, concealed, or suppressed the existence of the Defect and its inability to permanently repair the Defect from Plaintiffs and Class Members, then Plaintiffs and Class Members would have seen that the Defect exists and has no permanent repair when they reviewed the brochures and other advertising and informational materials prior to their purchases and Plaintiffs and Class Members would not have purchased the vehicles or would have paid less for them, had they been informed of the Defect prior to their purchases.

649.    VW acted with malice, oppression, and fraud.

650.    Plaintiffs and Class Members reasonably relied upon VW's knowing concealment and omissions.

651.    As a result of VW's concealment and/or suppression of the existence of the Defect, Plaintiffs and Class Members sustained damage as described herein.

## COUNT XIII - UNJUST ENRICHMENT
**(Plaintiffs individually and on behalf of the Nationwide Class or, in the alternative, the State Subclasses)**

652.    Plaintiffs incorporate by reference all previous allegations as if set forth herein.

653.    As described above, VW sold Class Vehicles to Plaintiffs and Class Members even though the sunroofs installed in those Class Vehicles were defective and posed a safety hazard.

654.    VW failed to disclose its knowledge of the sunroof defect and the Defect's attendant risks – at the point of sale or otherwise.

655.    VW unjustly charged and charges Class Members for repairs and/or replacement of the defective sunroofs without disclosing that the Defect is widespread and that the repairs do not address the root cause of the Defect.

656.    As a result of its acts and omissions related to the defective sunroofs, VW obtained monies that rightfully belong to Plaintiffs and Class Members.

657.    As a result of its wrongful acts, concealments, and omissions of the Defect in its Class Vehicles, as set forth above, VW charged a higher price for the Class Vehicles than their true value. Plaintiffs and Class Members paid that higher price for their vehicles to VW's authorized dealers, which are in VW's control. VW also reaps huge profits from the sales of its vehicles through its authorized dealers, netting €30 billion for the fiscal year ending December 31, 2019 alone.

658.    VW appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth. VW also received monies for vehicles that Plaintiffs and Class Members would have paid less for, not purchased with the sunroof feature (if the model was

also available without one), or would not have purchased the Class Vehicles at all had they been aware of the Defect.

659.   It would be inequitable and unjust for VW to retain these wrongfully obtained profits.

660.   VW's retention of these wrongfully acquired profits would violate fundamental principles of justice, equity, and good conscience.

## PRAYER FOR RELIEF

Therefore, Plaintiffs seek judgment against VW and request relief as follows:

A.  An Order certifying this case as a Class Action;

B.  An Order appointing Plaintiffs as Class Representative of the proposed Classes;

C.  An Order appointing Plaintiffs' counsel as Class Counsel;

D.  Damages and other relief under statutory or common law;

E.  Attorneys' fees and costs;

F.  Pre- and post- judgment interest;

G.  Declaratory, injunctive, and equitable relief; and

H.  Such other relief as is just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the proposed Classes, hereby demand a trial by jury as to all matters so triable.

DATE: August 28, 2020

Respectfully submitted,


/s/ Mitchell M. Breit
Mitchell M. Breit
Jason 'Jay' Barnes (*pro hac vice*)
SIMMONS HANLY CONROY
12 Madison Avenue
New York, NY 10016-7416
Tel. (212) 784-6400
Fax (212) 213-5949

mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

Gregory F. Coleman
(*pro hac vice* to be sought)
Lisa A. White
(*pro hac vice* to be sought)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel. (865) 247-0080
Fax (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Mark P. Bryant
(*pro hac vice* to be sought)
Emily Ward Roark
(*pro hac vice* to be sought)
**BRYANT LAW CENTER PSC**
601 Washington Street
P.O. Box 1876
Paducah, KY 42002-1876
Tel. (270) 442-1422
Fax (270) 443-8788
mark@bryant.law
emily@bryant.law

Russell D. Paul (NY2361939)
Jeffrey L. Osterwise
(*pro hac vice* to be sought)
Amey J. Park
(*pro hac vice* to be sought)
Abigail J. Gertner
(*pro hac vice* to be sought)
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
apark@bm.net
agertner@bm.net

Tina Wolfson
Christopher E. Stiner
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024
(310) 474-9111
twolfson@ahdootwolfson.com
cstiner@ahdootwolfson.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2020 I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ *Mitchell M. Breit*
Mitchell M. Breit
SIMMONS HANLY CONROY