UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SOKOL GJONBALAJ, JOSEPH CAMPBELL,
JESSICA COLE, KAREN WERNER, AUSTIN
BARDEN, MARY GOVAN, DIMITRI WILLIAMS,
ANTONIO CABEZAS, RICK HORNICK, LISA AND
STEVEN DELPRETE and KRZYSZTOF ZIARNO,
individually and on behalf of all others similarly
situated,

                        Plaintiffs,

            v.

VOLKSWAGEN GROUP OF AMERICA, INC., a
New Jersey corporation and VOLKSWAGEN AG,
a foreign corporation,
                        Defendants.
-------------------------------------------------------------------X

Civil Action No. 2:19-cv-07165
(BMC)


ORAL ARGUMENT REQUESTED


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE CONSOLIDATED AND
AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT .......................................................................................... 1

LEGAL STANDARD ........................................................................................................... 2

I.  Steven DelPrete Did Not Lease His Subject Vehicle ........................................... 3

II.  The Express Warranty Claims Should be Dismissed (Counts I and III) ........................... 4

    A.  The Claim against VWAG must be Dismissed ....................................................... 4

    B.  The NVLWs Do Not Apply to Plaintiffs' Design defect Claims ........................... 4

    C.  Plaintiffs Do Not Plausibly Plead Facts Establishing a Breach of Express Warranty .................................................................................................... 5

    D.  Campbell's Claim Is Barred by the Statute of Limitations .................................. 11

    E.  Alleged "Puffery" Advertising Statements Do Not Create a Separate Express Warranty .................................................................................................. 12

    F.  The NVLW Bars Recovery of Incidental and Consequential Damages including Loss of Value .................................................................................... 12

    G.  Failure to Provide Pre-suit Notice Bars the Claims of Cabezas and Williams ........................................................................................................ 13

III.  The Claims for Breach of Implied Warranty of Merchantability Must be Dismissed (Counts II, IV) ............................................................................................... 13

    A.  Cabezas' Claim Fails for Lack of Pre-Sale Notice ............................................. 13

    B.  Ziarno's Claim is Time Barred ........................................................................... 13

    C.  Certain Plaintiffs' Claims are Barred by Lack of Privity ................................... 13

    D.  Barden and Cole's Song-Beverly Claims Fail Because They Bought Used Vehicles ....................................................................................................... 15

    E.  Certain Plaintiffs Did Not Experience any Leak During the Implied Warranty Period ................................................................................................. 15

    F.  Certain Claims Fail Because the Vehicles Were Merchantable at the Time of Sale .............................................................................................................. 16

III.     Plaintiffs' Statutory Consumer Fraud and Common Law Fraudulent Concealment Claims
         Should Be Dismissed (Counts V-XII) ................................................................. 18

         A.     Plaintiffs have Improperly Lumped Together the Material Allegations
                Asserted Against VWGoA and VWAG ................................................. 18

         B.     The Claims of Affirmative Misrepresentation Fail.................................. 19

         C.     CA Plaintiffs Have Not Established that No Adequate Legal Remedy
                Exists ..................................................................................................... 22

         D.     The Omission-Based Common Law and Statutory Fraud Claims Fail......... 23

                1.  No Adequate Facts Establishing Reliance or Causation (Werner,
                    Cole and Barden) ........................................................................... 23

                2.  Failure to Establish a Duty to Disclose Under Applicable Law
                    (Hornick, Williams, Cabezas and Ziarno) ....................................... 25

                3.  Failure to Plead "Ascertainable Loss" Required by the NJCFA
                    (Ziarno) .......................................................................................... 27

                4.  No Manifestation During the Warranty Period (Zairno, Barden and
                    Cole)................................................................................................ 28

                5.  Fraudulent Concealment Claims Barred by Economic Loss Rule
                    (DelPretes and Cabezas) ................................................................. 29

                6.  All Plaintiffs' Statutory and Common Law Fraud Claims Must be
                    Dismissed for Failure to Establish that Defendants Had the
                    Requisite Pre-Sale Knowledge ....................................................... 29

IV.     The Unjust Enrichment Claims Must Be Dismissed ......................................... 36

V.      Plaintiffs Lack Standing to Bring Class Claims Relating to Audi Vehicles That They Did
        Not Purchase or Lease ....................................................................................... 39

        CONCLUSION..................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am. Inc.*,
  795 F.2d 238 (2d Cir. 1986)....................................................................................6

*Am. Suzuki Motor Corp. v. Superior Ct.*,
  37 Cal. App. 4th 1291 (1995) ................................................................................16

*Amato v. Subaru of Am., Inc.*,
  2019 U.S. Dist. LEXIS 209659 (D.N.J. Dec. 5, 2019)..........................................9

*Andre v. Mattress Firm*,
  2019 U.S. Dist. LEXIS 116451 (S.D.N.Y. July 12, 2019) .....................................8

*Apace Commc'ns, Ltd. v. Burke*,
  522 F. Supp. 2d 509 (W.D.N.Y. 2007).................................................................19

*Arch Ins. Co. v. Precision Stone, Inc.*,
  584 F.3d 33 (2d Cir. 2009)......................................................................................3

*Argabright v. Rheem Mfg. Co.*,
  201 F. Supp. 3d 578 (D.N.J. 2016) ..................................................................20, 38

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................2

*Azoulai v. BMW of N. Am. LLC*,
  2017 U.S. Dist. LEXIS 57121 (N.D. Cal. Apr. 13, 2017) .....................................20

*Baranco v. Ford Motor Co.*,
  294 F. Supp. 3d 950 (N.D. Cal. 2018) ...................................................................9

*Bebry v. ALJAC L.L.C.*,
  954 F. Supp. 2d 173 (E.D.N.Y. 2013) ...................................................................3

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017).................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................2

*Birdsong v. Apple Inc.*,
  590 F.3d 955 (9th Cir. 2009) .................................................................................16

*Blissard v. FCA US LLC*,
   2018 U.S. Dist. LEXIS 201725 (C.D. Cal. Nov. 9, 2018) ............................................... *passim*

*Block v. Jaguar Land Rover N. Am.*,
   2019 US Dist. LEXIS 221297 (D.N.J. Dec. 23, 2019) ..................................................... 25, 26

*Brown v. Hyundai Motor Am.*,
   2019 U.S. Dist. LEXIS 148305 (D.N.J. Aug. 30, 2019) .................................................. 30, 33

*Bruno v. Zimmer, Inc.*,
   2017 U.S. Dist. LEXIS 216684 (Aug. 11, 2017) .................................................................. 19

*Burch v. Pioneer Credit Recovery, Inc.*,
   551 F.3d 122 (2d Cir. 2008) ............................................................................................... 2

*Cabebe v. Nissan N. Am., Inc.*,
   2018 U.S. Dist. LEXIS 185017 (N.D. Cal. 2018) ............................................................... 21

*Cadena v. Am. Honda Motor Co.*,
   2018 U.S. Dist. LEXIS 225506 (C.D. Cal. Nov. 14, 2018) .................................................. 6

*Cadena v. Am. Honda Motor Co.*,
   2019 WL 3059931 (C.D. Cal. May 29, 2019) .................................................................... 31

*Cardenas v. Toyota Motor Corp.*,
   2019 U.S. Dist. LEXIS 168773 (S.D. Fla. Sep. 30, 2019) ................................................. 29

*Cardenas v. Toyota Motor Corp.*,
   418 F. Supp. 3d 1090 (S.D. Fla. 2019) ............................................................................. 14

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................................................................. 4

*Cf. O'Shea v. Ford Motor Co.*,
   2011 WL 12876170 (C.D. Cal. Dec. 28, 2011) .................................................................. 34

*Chizniak v. Certainteed Corp.*,
   2020 U.S. Dist. LEXIS 17020 (N.D.N.Y. Jan. 30, 2020) .................................................... 11

*Chubb & Son v. C & C Complete Servs, LLC*,
   919 F. Supp. 2d 666 (D. Md. 2013) ................................................................................... 29

*City of Rockford v. Mallinckrodt ARD*,
   360 F. Supp. 3d 730 (N.D. Ill. 2019) ................................................................................ 37

*City of St. Petersburg v. Total Containment, Inc.*,
   2008 U.S. Dist. LEXIS 106243 (S.D. Fla. 2008) ................................................................. 3

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
  2013 U.S. Dist. LEXIS 141444 (E.D.N.Y. Sept. 30, 2013)......................................3

*Coba v. Ford Motor Co.*,
  2013 US Dist. LEXIS 8366 (D.N.J. Jan. 22, 2013) .................................................26

*Coba v. Ford Motor Co.*,
  930 F.3d 174 (3d Cir. 2019)....................................................................................5

*Coleman-Anacleto v. Samsung Elecs. Am.*,
  2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ............................................................32

*Connick v. Suzuki Motor Co.*,
  174 Ill. 2d 482 (1996) ......................................................................................13, 26

*Corwise v. FMS Inv. Corp.*,
  2018 U.S. Dist. LEXIS 222931 (E.D.N.Y. May 1, 2018) ........................................3

*Cruz v. TD Bank, N.A.*,
  711 F.3d 261 (2d Cir. 2013)....................................................................................2

*Cummings v. FCA US, LLC*,
  401 F. Supp. 3d 288 (N.D.N.Y. 2019).......................................................5, 30, 33

*Daniel v. Tootsie Roll Indus., LLC*,
  2018 U.S. Dist. LEXIS 129143 (S.D.N.Y. Aug. 1, 2018).....................................39

*Darne v. Ford Motor Co.*,
  2017 U.S. Dist. LEXIS 142425 (N.D. Ill. Sep. 1, 2017) .......................................24

*Daugherty v. American Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) .................................................................................6

*David v. Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) .................................................................11

*David v. Volkswagen Grp. of Am., Inc.*,
  2018 U.S. Dist. LEXIS 70284 (D.N.J. Apr. 26, 2018) ...............................5, 31, 34

*Dawson v. GM LLC*,
  2019 U.S. Dist. LEXIS 121469 (D.N.J. July 22, 2019).........................................15

*De Sole v. Knoedler Gallery, LLC*,
  974 F. Supp. 2d 274 (S.D.N.Y. Sep. 30, 2013)....................................................12

*Den Hollander v. Copacabana Nightclub*,
  624 F.3d 30 (2d Cir. 2010).....................................................................................2

*Deras v. Volkswagen Grp. of Am., Inc.*,
2018 WL 2267448 (N.D. Cal. May 17, 2018) ......................................................31

*DiMuro v. Clinique Labs.*,
LLC, 572 F. App'x 27 (2d Cir. 2014) .................................................................39

*Dixon v. Ford Motor Co.*,
2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. 2015) ................................................10

*Doll v. Ford Motor Co.*,
814 F. Supp. 2d 526 (D. Md. 2011) ....................................................................13

*Elias v. Hewlett-Packard Co.*,
950 F. Supp. 2d 1123 (N.D. Cal. 2013) ..............................................................28

*Elkind v. Revlon Consumer Prods. Corp.*,
2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. 2015) ..............................................3, 19

*Elward v. Electrolux Home Prods.*,
2020 U.S. Dist. LEXIS 96000 (N.D. Ill. June 1, 2020) ..................................24, 25

*Estate of White v. R.J. Reynolds Tobacco Co.*,
109 F. Supp. 2d 424 (D. Md. 2000) ....................................................................26

*Evans v. Daikin N. Am., LLC*,
2019 U.S. Dist. LEXIS 17477 (D. Mass. 2019) ....................................................6

*Felix v. Richard D. London & Assocs., P.C.*,
2020 U.S. Dist. LEXIS 153209 (D. Md. 2020) .....................................................8

*Gaines v. GM Co.*,
2019 U.S. Dist. LEXIS 29716 (S.D. Cal. Feb. 25, 2019) ....................................28

*Garcia v. TEMPOE, LLC*,
2018 U.S. Dist. LEXIS 52497 (D.N.J. Mar. 29, 2018) ..........................................8

*Gerstle v. Am. Honda Motor Co.*,
2017 U.S. Dist. LEXIS 62809 (N.D. Cal. Apr. 25, 2017) ....................................37

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
316 Fed. Appx. 561 (9th Cir. 2008) ....................................................................38

*Glass v. BMW of N. Am., LLC*,
2011 U.S. Dist. LEXIS 149199 (D.N.J. Dec. 29, 2011) ......................................28

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) .....................................................................21

*Gonzales v. CarMax Auto Superstores, LLC*,
  2013 WL 12207506 (C.D. Cal. Nov. 5, 2013) ........................................................................18

*Granillo v. FCA US LLC*,
  2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29, 2016) .............................................34, 35, 36

*Greenberger v. GEICO General Ins. Co.*,
  631 F.3d 392 (7th Cir. 2011) ................................................................................................26

*Guaranty Trust Co. v. York*,
  326 U.S. 99 (1945) ................................................................................................................22

*Hart v. BHH, LLC*,
  2016 U.S. Dist. LEXIS 59943 (S.D.N.Y. May 5, 2016) .........................................................39

*Herremans v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) ......................................................14

*Herrera v. Volkswagen Grp. of Am.*,
  2016 U.S. Dist. LEXIS 192907 (C.D. Cal. Sep. 9, 2016) .......................................................15

*Hughes v. Ester C Co.*,
  330 F. Supp. 3d 862 (E.D.N.Y. 2018) ...................................................................................38

*In re Caterpillar, Inc.*,
  2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015) ..............................................................9

*In re Caterpillar, Inc.*,
  2015 WL 4591236 (D.N.J. July 29, 2015) .............................................................................28

*In re Facebook, Inc., IPO Derivative Litig.*,
  797 F.3d 148 (2d Cir. 2015) ....................................................................................................2

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  355 F. Supp. 3d 582 (E.D. Mich. Nov. 28, 2018) .................................................................29

*In re Ford Tailgate Litig.*,
  2014 U.S. Dist. LEXIS 119769 (N.D. Cal. Aug. 8, 2014) (FL, IL, MA, NY
  law) .......................................................................................................................................36

*In re GM Air Conditioning Mktg. & Sales Practices Litig.*,
  2019 U.S. Dist. LEXIS 190708 (E.D. Mich. Nov. 4, 2019) ...................................................28

*In re GM Air Conditioning Mktg. & Sales Practices Litig.*,
  406 F. Supp. 3d 618 (E.D. Mich. 2019) ...............................................................................8, 9

*In re GM LLC Ignition Switch Litig.*,
  339 F. Supp. 3d 262 (S.D.N.Y. 2018) ...................................................................................37

vii

*In re Scotts EZ Seed Litig.*,
  2013 U.S. Dist. LEXIS 73808 (S.D.N.Y. 2013) ........................................................12

*In re Scotts EZ Seed Litig.*,
  2013 WL 2303727 (S.D.N.Y. 2013) ........................................................20

*In re Seagate Tech. LLC Litig.*,
  233 F. Supp. 3d 776 (N.D. Cal. 2017) ........................................................20

*IvyMedia Corp. v. iLIKEBUS, Inc.*,
  2015 U.S. Dist. LEXIS 91342 (D. Mass. July 13, 2015) ........................................................38

*Jones v. Koons Auto., Inc.*,
  752 F. Supp. 2d 670 (D. Md. 2010) ........................................................16

*Kahn v. FCA US, LLC*,
  2019 U.S. Dist. LEXIS 134583 (C.D. Cal. Aug. 2, 2019) ........................................17, 18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) (California UCL and CLRA claims subject to
  Rule 9(b)) ........................................................20, 22

*King v. City of New York*,
  2014 U.S. Dist. LEXIS 141441 (E.D.N.Y. July 31, 2014) ........................................................3

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ........................................................17

*Leon v. Cont'l AG*,
  301 F. Supp. 3d 1203 (S.D. Fla. 2017) ........................................................29

*Leonard v. Tollycraft Corp.*,
  1989 U.S. Dist. LEXIS 12363 (S.D.N.Y. Oct. 19, 1989) ........................................................11

*Licul v. Volkswagen Group of Am.*,
  2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ........................................8, 9, 38

*Liebler v. LG Elecs. U.S.A., Inc.*,
  2015 U.S. Dist. LEXIS 72770 (D.N.J. June 4, 2015) ........................................................21

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F3d 1153 (3d Cir. 1993) ........................................................26

*Lloyd v. GMC*,
  397 Md. 108 (2007) ........................................................27

*Long v. Hewlett-Packard Co.*,
  2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 7, 2007) ........................................................7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................3

*Luppino v. Mercedes-Benz USA, LLC*,
  2013 U.S. Dist. LEXIS 161689, 2013 WL 6047556 (D.N.J. Nov. 12, 2013) ..........................4

*Madrigal v. Hint*,
  2017 U.S. Dist. LEXIS 221801 (C.D. Cal. Dec. 14, 2017) ....................................37

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8, 2019)................................15, 23

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  2019 U.S. Dist. LEXIS 25381 (N.D. Cal. Feb. 15, 2019) ..........................12, 14, 35

*Marshall v. Hyundai Motor Am.*,
  334 F.R.D. 36 (S.D.N.Y. 2019) ...............................................................3

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014)........................................................37

*McCalley v. Samsung Elecs. Am. Inc.*,
  2008 U.S. Dist. LEXIS 28076 (D.N.J. Mar. 31, 2008)........................................16

*McQueen v. BMW of N. Am.*,
  2013 U.S. Dist. LEXIS 123232 (D.N.J. Aug. 29, 2013)......................................31

*Mercedes-Benz of N. Am. v. Garten*,
  94 Md. App. 547 (1993) ...............................................................16, 17

*Merkin v. Honda N. Am., Inc.*,
  2017 U.S. Dist. LEXIS 187233 (D.N.J. Nov. 13, 2017)......................................38

*Mexia v. Rinker Boat Co.*,
  174 Cal. App. 4th 1297 (2009) ..............................................................18

*Miller v. Hyundai Motor Am.*,
  2017 U.S. Dist. LEXIS 161729 (S.D.N.Y. Sep. 29, 2017)....................................5, 6

*Mladenov v. Wegmans Food Mkts., Inc.*,
  124 F. Supp. 3d 360 (D.N.J. Aug. 26, 2015) ................................................27

*Mono-Systems, Inc. v. Leco Plastics, Inc.*,
  2017 U.S. Dist. LEXIS 137183 (S.D.N.Y. August 24, 2017) .................................11

*Myers v. BMW of N. Am., LLC*,
  2016 WL 5897740 (N.D. Cal. Oct. 11, 2016)................................................21, 23

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
   723 F.3d 192 (2d Cir. 2013)................................................................................20

*Nobile v. Ford Motor Co.*,
   2011 U.S. Dist. LEXIS 26766 (D.N.J. Mar. 14, 2011)........................................15

*O'Connor v. Ford Motor Co.*,
   2020 U.S. Dist. LEXIS 141393 (N.D. Ill. Aug. 7, 2020)................................25, 38

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................................23

*Ochre LLC v. Rockwell Architecture Planning & Design*,
   2012 U.S. Dist. LEXIS 172208 (S.D.N.Y. Nov. 8, 2012)....................................18

*Oliver v. Funai Corp.*,
   2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015).......................................32

*Ozeran v. Jacobs*,
   798 Fed. Appx. 120 (9th Cir. 2020)....................................................................22

*Philips v. Ford Motor Co.*,
   726 F. App'x 608 (9th Cir. June 8, 2018)............................................................23

*Phoenix Ins. Co. v. Rosen*,
   242 Ill. 2d 48 (2011) ...........................................................................................8

*Pierre-Charles v. Consumer Portfolio Servs.*,
   2018 WL 3425737 (D.N.J. July 16, 2018)...........................................................27

*Puhalla v. Mercedes-Benz USA*,
   LLC, 2020 U.S. Dist. LEXIS 92807 (S.D. Fla. May 27, 2020)............................37

*Quintana v. B. Braun Med. Inc.*,
   2018 WL 3559091 (S.D.N.Y. 2018).....................................................................21

*Resnick v. Hyundai Motor Am.*,
   2016 WL 9455016 (C.D. Cal. Nov. 14, 2016).....................................................32

*Rollolazo v. BMW of N. Am. LLC*,
   2017 U.S. Dist. LEXIS 181157 (C.D. Cal. Feb. 3, 2017).....................................36

*Santos v. Sanyo Mfg. Corp.*,
   2013 U.S. Dist. LEXIS 63596 (D. Mass. May 3, 2013).....................................8, 37

*Schechter v. Hyundai Motor Am.*,
   2019 U.S. Dist. LEXIS 126021 (D.N.J. July 29, 2019)............................32, 33, 38

x

*Schechter v. Hyundai Motor Am.*,
2019 WL 3416902 (D.N.J. July 29, 2019)...........................................................................27

*Schechter v. Hyundai Motor Am.*,
2020 U.S. Dist. LEXIS 55598 (D.N.J. Mar. 31, 2020)..........................................................33

*Schiesser v. Ford Motor Co.*,
2016 U.S. Dist. LEXIS 149392 (N.D. Ill. 2016) ...................................................6, 20, 21, 25

*Shamamyan v. FCA US LLC*,
2020 U.S. Dist. LEXIS 121965 (C.D. Cal. Apr. 1, 2020) ....................................................24

*Sharp v. Bank of America, N.A.*,
2020 U.S. Dist. LEXIS 62316 (N.D. Ill. Mar. 31, 2020)......................................................37

*Sloan v. GM LLC*,
2017 U.S. Dist. LEXIS 120851 (N.D. Cal. Aug. 1, 2017).................................................5, 31

*Sonner v. Premier Nutrition Corp.*,
2020 U.S. App. LEXIS 26513 (9th Cir. Aug. 20, 2020) ......................................................22

*Speier-Roche v. Volkswagen Group of Am., Inc.*,
2014 U.S. Dist. LEXIS 59991 (S.D. Fl. April 30, 2004).............................................9, 14, 37

*Stearns v. Select Comfort Retail Corp.*,
2009 U.S. Dist. LEXIS 112971 (N.D. Cal. Dec. 4, 2009).................................................8, 12

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 U.S. Dist. LEXIS 70945 (D.N.J. June 2, 2015)..............................................21, 27, 34

*Stewart v. Electrolux Home Prods.*,
2018 WL 1784273 (E.D. Cal. Apr. 13, 2018).......................................................................32

*Stewart v. Smart Balance, Inc.*,
2012 WL 4168584 (D.N.J. June 26, 2012)...........................................................................28

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. Jan. 24, 2017)..................................................................23

*Suddreth v. Mercedes-Benz, LLC*,
2011 U.S. Dist. LEXIS 126237 (D.N.J. Oct. 31, 2011).........................................................16

*Suriaga v. GE*,
2019 U.S. Dist. LEXIS 214732 (D.N.J. Dec. 12, 2019).......................................................13

*Tabler v. Panera LLC*,
2019 U.S. Dist. LEXIS 187694 (N.D. Cal. Oct. 29, 2019)...................................................23

*Tershakovec v. Ford Motor Co.*,
   2018 U.S. Dist. LEXIS 116130 (S.D. Fla. July 12, 2018) ....................................................14

*Tomasella v. Nestlé USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020) ....................................................................................................36

*Tomassini v. FCA US LLC*,
   2015 U.S. Dist. LEXIS 81009 (N.D.N.Y. June 23, 2015) ........................................................9

*Troup v. Toyota Motor Corp.*,
   545 Fed. Appx. 668 (9th Cir. 2013) ......................................................................................16

*Victorino v. FCA US LLC*,
   2018 WL 1083395 (S.D. Cal. Feb. 27, 2018) ........................................................................31

*Victorino v. FCA US LLC*,
   326 F.R.D. 282 (S.D. Cal. June 13, 2018) .............................................................................15

*VVIG, Inc. v. Alvarez*,
   2019 U.S. Dist. LEXIS 175304 (S.D. Fla. Oct. 9, 2019) ........................................................21

*Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
   431 F. Supp. 3d 698 (D. Md. 2020) .......................................................................................38

*Williams v. Apple, Inc.*,
   2020 U.S. Dist. LEXIS 55069 (N.D. Cal. Mar. 27, 2020) ......................................................24

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir 2017) ................................................................................................28

*Williams v. Yamaha Motor Corp.*,
   2015 U.S. Dist. LEXIS 193825 (C.D. Cal. Jan. 7, 2015) (CA and MD law) .........................37

*Wilson v. Neighborhood Restore Dev.*,
   2019 U.S. Dist. LEXIS 157275 (E.D.N.Y. Sep. 13, 2019) .....................................................20

*Wiseman v. First Mariner Bank*,
   2013 U.S. Dist. LEXIS 136229 (D. Md. Sep. 23, 2013) ........................................................20

*Wozniak v. Ford Motor Co.*,
   2019 U.S. Dist. LEXIS 1339 (E.D. Mich. Jan. 4, 2019) (NY, NJ, MA, IL.
   MD, CA and FL common law fraud/consumer protection statutes) .......................................29

*Zuehlsdorf v. FCA US LLC*,
   2019 U.S. Dist. LEXIS 83169 (C.D. Cal. Apr. 30, 2019) ................................................17, 18

*Zurich American Ins. Co. v. Dah Sing Bank, Ltd*.
No. 03-civ-7778, 2004 U.S. Dist. LEXIS 10786, 2004 WL 1328215 (S.D.N.Y.
Jun. 15, 2004) ..................................................................................................4

**Statutes**

Cal. Civ. Code § 1791(a) ..................................................................................15

Cal. Civ. Code § 1791.1(a)(2) ..........................................................................16

Cal. Civ. Code § 1792 .......................................................................................15

Cal. Com. Code § 2719(3) ................................................................................12

California Song-Beverly Act ..............................................................................15

G.L.C. 106, § 2-317 ..........................................................................................15

G.L.C. 106, § 2-317(c) ......................................................................................15

IL Consumer Fraud Act .....................................................................................24

Md. Code Ann., Com. Law §2-607 ...................................................................13

Md. Comm. Law Code Ann. § 13-408(a) ..........................................................21

N.J.S.A. 12A:2-317 ...........................................................................................15

N.J. Stat. Ann. § 12A:2-725 ..............................................................................13

NY CLS UCC § 2-725 .......................................................................................11

Song-Beverly Consumer Warranty Act ...............................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) and 9(b) ......................................................................39

Fed. R. Civ. P. 12(b)(6), 9(b) and 12(b)(1) ........................................................1

Fed R. Civ. 9(b) .........................................................................................*passim*

Rule 8 .........................................................................................................1, 4, 18

Rule 12 ...............................................................................................................22

Rule 12(b) ..........................................................................................................23

Defendants Volkswagen Group of America, Inc. ("VWGoA") and Volkswagen AG ("VWAG") respectfully submit this Motion to Dismiss and Memorandum of Law pursuant to Fed. R. Civ. P. 12(b)(6), 9(b) and 12(b)(1).

## PRELIMINARY STATEMENT

In the Consolidated and Amended Class Action Complaint ("CACAC"), 11 individual plaintiffs, who reside in 7 different states, allege to be new and used car purchasers and lessees of certain 2016-2018 Volkswagen model vehicles equipped with sunroofs.  CACAC ¶¶ 203, 245, 265, 292, 321,339, 362, 380, 401, 421, 446.  Plaintiffs claim that their Volkswagen vehicles' sunroofs were improperly designed and "prone to leak due to problems with their drainage systems and/or incorporation of defective seals." *Id.* ¶¶47, 49.  Plaintiffs assert individual claims, and also seek to represent a nationwide putative class and several state subclasses of all individuals who purchased or leased a Volkswagen and Audi vehicle equipped with a sunroof. Notably, Plaintiffs' putative class includes Audi vehicles notwithstanding the fact that no Plaintiff in this action purchased or leased an Audi vehicle.  *Id.* ¶469.

Despite its volume, the CACAC consists primarily of conclusory allegations that are bereft of pleaded facts and fail to establish essential elements of Plaintiffs' claims.  Additionally, throughout the CACAC, Plaintiffs impermissibly lump together, in completely undifferentiated allegations, the two separate and distinct Defendants, VWGoA, the U.S. distributor and warrantor of Plaintiffs' vehicles, and VWAG, the remote German designer and manufacturer of those vehicles.  This violates the basic pleading requirements of Rule 8, and certainly violates the heightened specificity pleading requirements of Rule 9(b) which apply to the statutory and common law fraud-based claims asserted against each Defendant.

The CACAC asserts claims for alleged breach of express warranty (Count I); breach of

implied warranty under state law (Count II); breach of express and implied warranty under the

Song-Beverly Consumer Warranty Act (Counts III and IV); violations of various state consumer

fraud statutes (Counts V-XI); common law fraud by omission and fraudulent concealment

(Count XII); and unjust enrichment (Count XIII).

For the reasons discussed below, the CACAC fails to state a valid claim for relief against

Defendants and should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient "factual matter

accepted as true, to state a claim to relief that is plausible on its face." *Cruz v. TD Bank, N.A.*,

711 F.3d 261, 267 (2d Cir. 2013). A claim will have "facial plausibility" only when the plaintiff

pleads facts, not conclusory allegations, which "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). In other words, the factual allegations must "raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "formulaic recitation of the

elements of a cause of action," without supporting facts, does not suffice. *Burch v. Pioneer

Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008); *In re Facebook, Inc., IPO Derivative

Litig.*, 797 F.3d 148, 159 (2d Cir. 2015) (courts are not "bound to accept conclusory allegations

or legal conclusions masquerading as factual conclusions."). Moreover, "[w]here a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'" *Den Hollander v. Copacabana

Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010).

Further, all of Plaintiffs' fraud-based claims, including their claims under statutory

consumer fraud statutes, are subject to the heightened pleading specificity requirements of Fed.

2

R. Civ. 9(b).[1]

## I.      Steven DelPrete Did Not Lease His Subject Vehicle

At the outset, Plaintiff Steven DelPrete's claims must be dismissed because he is not an

owner or lessee of the 2019 Volkswagen Tiguan upon which his claims are based.  While

claiming to be the lessee (CACAC ¶ 421), the applicable Lease Agreement shows that the

vehicle was, in fact, leased by Delnet Productions, Inc. and Lisa Zusmer Del Prete.  *See* Lease

Agreement, Exh. A to the accompanying Declaration of Anna T. Kukowski ("Kukowski

Decl.").[2]  Accordingly, Steven DelPrete has no valid claim, and also lacks Article III standing to

assert any claim.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Elkind v. Revlon

Consumer Prods. Corp.*, 2015 U.S. Dist. LEXIS 63464, *8-9 (E.D.N.Y. 2015) (Plaintiff cannot

assert claim for a product they did not purchase); *City of St. Petersburg v. Total Containment,

Inc.,* 2008 U.S. Dist. LEXIS 106243, *46 (S.D. Fla. 2008).

---

[1] Like the CACAC, this Motion to Dismiss applies, to each of the Plaintiffs' claims, the law of his/her state of residence, which is also the state in which he/she purchased or leased the subject vehicle. *See e.g.,* CACAC Counts V-XI (asserting claims under the consumer fraud statutes of Illinois, New York New Jersey, Florida, Maryland, California – each brought by the respective Plaintiffs that reside and purchased their vehicles in those respective states). *Arch Ins. Co. v. Precision Stone, Inc*., 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law."); *Clayton's Auto Glass, Inc. v. First Data Corp.,* 2013 U.S. Dist. LEXIS 141444, *14 (E.D.N.Y. Sept. 30, 2013).  This comports with the applicable choice of law analysis under New York law under which courts have, in similar circumstances, applied the law of the State in which Plaintiff both resides and purchased/leased his/her vehicle. *Marshall v. Hyundai Motor Am*., 334 F.R.D. 36, 54 (S.D.N.Y. 2019).

[2] The Court may take judicial notice of the documents submitted with the Declarations accompanying this motion to dismiss, including public records of State Departments of Motor Vehicles, Retail Installment Sale Contracts/Lease Agreements, dealership service records, the New Vehicle Limited Warranties, and Technical Service Bulletins as they are referenced in the CACAC and are also directly implicated by the allegations and claims therein. *See Corwise v. FMS Inv. Corp*., 2018 U.S. Dist. LEXIS 222931, *4 (E.D.N.Y. May 1, 2018); *King v. City of New York*, 2014 U.S. Dist. LEXIS 141441, *8 (E.D.N.Y. July 31, 2014) ("It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records."); *Bebry v. ALJAC L.L.C.*, 954 F. Supp. 2d 173, 177 (E.D.N.Y. 2013) (taking judicial notice of records from the New York State Department of State Division of Corporations because it is a "record of an administrative agency"). The records have been redacted to protect personal information.

**II.**   <u>**The Express Warranty Claims Should be Dismissed**</u> (**Counts I and III**)

**A.**   <u>**The Claim against VWAG must be Dismissed**</u>

Plaintiffs' breach of express warranty claims are based upon the New Vehicle Limited Warranties (NVLWs) applicable to their vehicles. CACAC ¶¶ 4, 147.  In contravention of Rule 8, the CACAC purports to lump VWGoA and VWAG, two separate and distinct entities,[3] together under the title "VW" (Preamble to CACAC); *Zurich American Ins. Co. v. Dah Sing Bank, Ltd.* No. 03-civ-7778, 2004 U.S. Dist. LEXIS 10786, 2004 WL 1328215, at *6 (S.D.N.Y. Jun. 15, 2004) (dismissing claims where the complaint "lump[ed] the three bank defendants together and assert[ed] that they collectively processed the checks").

The NVLWs applicable to Plaintiffs' vehicles were issued by VWGoA, not VWAG.  *See* the NVLWs, Exhs. A-D to the accompanying Declaration of Peter Green ("Green Decl.") at p 6. Since VWAG did not issue these express warranties, no breach of express warranty claim lies against VWAG.  *Luppino v. Mercedes-Benz USA, LLC,* 2013 U.S. Dist. LEXIS 161689, *18-19, 2013 WL 6047556, *6 (D.N.J. Nov. 12, 2013) (dismissing warranty claim against Daimler because the warranty was issued by MBUSA, the U.S. distributor and warrantor, and not Daimler, the German manufacturer).

**B.**   <u>**The NVLWs Do Not Apply to Plaintiffs' Design defect Claims**</u>

The NVLWs cover, within their prescribed period, "any repair to correct a defect in manufacturer's material or workmanship." CACAC ¶5, 147-48; Green Decl., Exhs. A-D at p. 3. Courts throughout the country have recognized that such warranties do not cover purported design defects. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016);

---

[3] VWGoA is the U.S. distributor and warrantor of the Plaintiffs' vehicles. It is incorporated in New Jersey and has its principal place of business in Herndon, Virginia. VWAG is the remote German designer and manufacturer of Plaintiffs' vehicles.  It is a corporate citizen of Germany with its principal place of business in Wolfsburg, Germany.

*Coba v. Ford Motor Co.*, 930 F.3d 174, 181 (3d Cir. 2019); *Sloan v. GM LLC,* 2017 U.S. Dist. LEXIS 120851, *29 (N.D. Cal. Aug. 1, 2017). The CACAC alleges that the same purported sunroof defect exists in every putative class vehicle (CACAC ¶¶10, 16) – a classic claim of design defect that is not covered under the NVLWs. *Cummings v. FCA US, LLC,* 401 F. Supp. 3d 288, 315 (N.D.N.Y. 2019) (bringing a class action "*contradicts* the nature of manufacturing defects, which, by definition, are imperfections that inevitably occur in a typically small percentage of products"); *David v. Volkswagen Grp. of Am., Inc.,* 2018 U.S. Dist. LEXIS 70284, at *11 n.5 (D.N.J. Apr. 26, 2018) (same).

Plaintiffs' perfunctory conclusory allegation that the sunroofs also contain defects in "manufacturing and/or workmanship" (CACAC ¶11) is insufficient; it is bereft of pleaded facts and does not alter the gravamen of Plaintiffs' claim that one or more purported design defects exist and are shared by all of the putative class vehicles. While Plaintiffs also purport to premise a "manufacturing defect" claim upon two Technical Service Bulletins (TSBs) (CACAC ¶¶50-51), those TSBs apply only to 2015-2017 Golf Sportwagens/Alltracks, which Plaintiffs Gjonbalaj, Cabezas, Campbell, Barden, Ziarno, DelPretes and Williams do not own. Therefore, the express warranty claims of these Plaintiffs should be dismissed, on this ground, in their entirety. As to the remaining Plaintiffs whose vehicles are included in the TSBs, while we respectfully submit that reliance upon the TSBs does not create a manufacturing defect claim, per the Court's prior recommendation, Defendants only seek to dismiss, on this ground, that portion of their express warranty claims that are premised upon an alleged design defect.

**C.**   **Plaintiffs Do Not Plausibly Plead Facts Establishing a Breach of Express Warranty**

In order to plead a claim for breach of express warranty, Plaintiffs must allege that within the NVLW's time/mileage parameters, they brought their vehicles to an authorized Volkswagen dealer for repair and that the dealer refused or failed to perform the necessary repairs. *Miller v.*

5

*Hyundai Motor Am.*, 2017 U.S. Dist. LEXIS 161729, *18 (S.D.N.Y. Sep. 29, 2017); *Cadena v. Am. Honda Motor Co.*, 2018 U.S. Dist. LEXIS 225506, at *22 (C.D. Cal. Nov. 14, 2018).  Most if not all of the Plaintiffs fail to properly plead a breach of the NVLW because they have not alleged that a Volkswagen dealership refused to repair or failed to repair their vehicles' sunroof during the NVLWs' time/mileage period.

Plaintiff Gjonbalaj admits that two separate VW dealers could not verify the existence of a sunroof leak, despite the use of an open water hose test (CACAC ¶¶211-219).  He does not allege that a warranty repair was refused.  In addition, Gjonbalaj admits that the NVLW on his vehicle has not expired (CACAC ¶238), and he does not claim to have ever again presented his vehicle to a VW dealer with any further sunroof leakage complaint. An inability to detect a leak does not equate to a "refusal or inability to repair." *Miller v. Hyundai Motor Am.*, 2017 U.S. Dist. LEXIS 161729, *18 (S.D.N.Y. Sep. 29, 2017).

Plaintiffs Campbell, Cole, Werner, Govan, Barden, Williams, Hornick and Ziarno did not seek repairs for their vehicles until the 3-year/36,000 mile (whichever occurs first) NVLW period applicable to their vehicles had already expired.  An express warranty 'does not cover repairs made after the applicable time or mileage periods have elapsed.'" *See, e.g., Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 830 (2006), quoting *Abraham v. Volkswagen of Am. Inc.,* 795 F.2d 238, 251 (2d Cir. 1986); *Schiesser v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 149392 (N.D. Ill. 2016); *Evans v. Daikin N. Am., LLC*, 2019 U.S. Dist. LEXIS 17477 (D. Mass. 2019).

In particular, the NVLW on Campbell's vehicle, which commenced when the vehicle was first sold in November 2015, expired before he bought the vehicle on August 7, 2019 (*see* Certified Department of Motor Vehicle ["DMV"] Title Record, Exh. 1 to the accompanying

6

Declaration of Michael Gallub ("Gallub Decl."). Likewise, Cole purchased her 2017 vehicle with 39,923 miles on the odometer – after the 36,000 mile NVLW limitation expired. *Id.,* Exh. 2 to Gallub Decl.; CACAC ¶265.  When Werner brought her 2017 vehicle to a dealer for repair, the vehicle had already been driven more than 50,000 miles, outside the NVLW period. *See* Exh. A to the Declaration of Jose Cabral ("Cabral Decl."); CACAC ¶292.[4]  Likewise, Govan's 2017 vehicle had already been driven more than 53,000 miles, beyond the warranty period, when it was brought to a dealership for repair in April 2019. (CACAC ¶346; Declaration of Luis Sylva ("Sylva Decl."); Exhs. A-B to Declaration of Brandon Hitchman ("Hitchman Decl.").

Barden's vehicle was sold to its original purchaser on September 4, 2016, and thus, the NVLW period had already expired before Barden purchased the vehicle on March 6, 2020 (*see* Certified DMV Vehicle Registration Documents, Exh. 3 to Gallub Decl.; CACAC ¶ 321). Williams did not bring the vehicle to a dealer for any alleged sunroof leak repaired until the vehicle had already been driven 56,836 miles on – likewise beyond the 36,000 miles NVLW period.  *See* Exhs. A-B to Declaration of David Turner ("Turner Decl."); CACAC ¶371. Similarly, the original sale of Hornick's 2017 vehicle occurred on December 29, 2016 (Green Decl., ¶ 18), and therefore the 3-year NVLW period had expired before he brought his vehicle to a dealer for repair on May 20, 2020 (CACAC ¶411).  Finally, Ziarno alleges that he purchased his vehicle in August 2016 (CACAC ¶446), and first presented his vehicle to a dealer for alleged repair in December 2019, after the 3-year NVLW period expired (CACAC ¶¶453, 455).

Accordingly, these Plaintiffs have failed to state a valid claim for breach of the NVLWs.

---

[4] Ms. Werner tries to avoid the time/mileage limitations by suggesting that "she had a leak occur while her vehicle was under warranty…." ¶304.  The suggestion that the NVLW covers alleged "defects" that purportedly occur during the warranty period, even if no repair is sought, ignores the NVLW and the applicable law that there is no breach of express warranty where the vehicle was not presented for repair during the warranty period. *Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262, *11 (N.D. Cal. July 7, 2007) (breach of express warranty claim dismissed where defect was first reported to defendant after the warranty had expired).

Plaintiffs cannot evade the NVLWs' time and mileage limitations by conclusorily labeling them "unconscionable."  CACAC ¶493.  In California, Florida, Maryland, Massachusetts, New Jersey and New York (the state laws applicable to these Plaintiffs), a contract or clause is not unconscionable unless it is established to be *both* procedurally and substantively unconscionable, or in Illinois, *either* procedurally or substantively unconscionable.[5]

To determine procedural unconscionability, courts look to the circumstances surrounding the transaction, such as plaintiffs' ability to understand the contract terms and the existence of a meaningful choice at the time of contracting.  Plaintiffs do not allege that they lacked meaningful choices as to brand, year, make, model, and durations of warranties of vehicles available on the market for purchase, or that they were denied an opportunity to understand the warranty limitations for the vehicles they purchased.  *See In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 629 (E.D. Mich. 2019) (rejecting procedural unconscionability because "the auto industry is one of the most competitive marketplaces that exists" and "[a]n individual seeking to purchase one of the Class Vehicles has many other options — sometimes within walking distance of his local GM dealership — if he is unhappy with the warranty that GM provides"); *id.* (holding that "the clear weight of authority" has rejected the argument that a vehicle "warranty [is] procedurally unconscionable because [consumers] had no meaningful choice in determining the time limits [of the warranty]"); *Santos v. Sanyo Mfg. Corp.,* 2013 U.S. Dist. LEXIS 63596, *8 (D. Mass. May 3, 2013) (same).

---

[5] *Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 112971, *28-29 (N.D. Cal. Dec. 4, 2009); *Licul v. Volkswagen Group of Am.*, 2013 U.S. Dist. LEXIS 171627, *7 (S.D. Fla. Dec. 5, 2013); *Felix v. Richard D. London & Assocs., P.C.*, 2020 U.S. Dist. LEXIS 153209, *13 (D. Md. 2020); *Santos v. Sanyo Mfg. Corp.,* 2013 U.S. Dist. LEXIS 63596, *8  (D. Mass. May 3, 2013); *Garcia v. TEMPOE, LLC*, 2018 U.S. Dist. LEXIS 52497, *7 (D.N.J. Mar. 29, 2018); *Andre v. Mattress Firm*, 2019 U.S. Dist. LEXIS 116451, *11 (S.D.N.Y. July 12, 2019); *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011).

A contract is not substantively unconscionable unless its terms are so unfair as to be overly oppressive or unduly harsh to one of the parties. *See e.g., Amato v. Subaru of Am., Inc*., 2019 U.S. Dist. LEXIS 209659, *22 (D.N.J. Dec. 5, 2019).  The NVLWs in issue are not overly oppressive or unduly harsh.  Indeed, their time and mileage durations met or exceed those of other vehicle warranties that courts throughout the country have determined *not* to be unconscionable.  *See e.g. In re GM Air Conditioning Mktg. & Sales Practices Litig*., 406 F. Supp. 3d at 627 (E.D. Mich. 2019) (3-year/36,000 miles); *In re Caterpillar, Inc*., 2015 U.S. Dist. LEXIS 98784, *71 (D.N.J. July 29, 2015) (2-year warranty); *Speier-Roche v. Volkswagen Group of Am., Inc.,* 2014 U.S. Dist. LEXIS 59991, *21 (S.D. Fl. April 30, 2004) (12-month/12,000 miles); *Licul v. Volkswagen Grp. of Am.*, 2013 U.S. Dist. LEXIS 171627, *2, (S.D. Fla. Dec. 5, 2013) (2-year/24,000 miles).

Finally, any claim of unconscionability premised upon Defendants' alleged knowledge of the claimed defect fails as a matter of law.  *In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d at 630 (joining the "majority" of courts that have ruled that a seller's "presale knowledge" of an alleged defect is insufficient to demonstrate unconscionability).  *See also Tomassini v. FCA US LLC,* 2015 U.S. Dist. LEXIS 81009, *27 (N.D.N.Y. June 23, 2015); *Amato v. Subaru of Am., Inc*., 2019 U.S. Dist. LEXIS 209659, *28 (D.N.J. Dec. 5, 2019); *Baranco v. Ford Motor Co*., 294 F. Supp. 3d 950, 974 n. 23 (N.D. Cal. 2018); *Licul v. Volkswagen Grp. of Am.*, 2013 U.S. Dist. LEXIS 171627, *5 (S.D. Fla. Dec. 5, 2013).

Further, the express warranty claims of Cole, Werner, and Govan should also be dismissed because they allege that repairs were, in fact, performed, and do not claim any ongoing problem after those repairs (CACAC ¶¶ 272, 278, 308, 313, 350).[6]  While Govan alleges that

---

[6] Cole alleges that after the car was repaired, she inspected the vehicle and found that the spare tire wheel well was full of water (CACAC ¶280).  However, there is no allegation that this was caused by a leak which occurred

"electrical malfunctions" due to the water ingress persist, she does not allege that she ever returned the vehicle to the dealership and/or that repairs were refused during the NVLW period. Similarly, Cabezas' claim fails because he admits that an authorized dealership offered in August 2020 to repair his vehicle free of charge, but fails to allege whether he accepted the dealership's offer (CACAC ¶389). Finally, Plaintiffs Lisa and Stephen DelPrete claim their vehicle underwent several warranty repair attempts, but do not claim that the last warranty repair within the NVLW period was unsuccessful (CACAC ¶¶437). Thus, these Plaintiffs have failed to allege facts showing that a covered problem was presented to a dealer and not repaired during the NVLW period.

Plaintiffs Gjonbalaj, Cole, Werner, Govan, Cabezas, Hornick, and the DelPretes have no legitimate warranty claim for the further reason that they fail to allege that they availed themselves of free VWGoA Service Actions which would remediate the alleged sunroof water leak issue in their vehicles. The CACAC admits that VWGoA has issued Service Actions to its customers which proactively address and remediate any sunroof water leak condition, free of charge. *Id.*, ¶¶73-75; 103-107; 114. The Service Actions, which are available until December 31, 2021, provide for free inspection, cleaning and modification of the front sunroof drains by an authorized VW dealer. *Id.,* ¶105; *see* Service Actions, Exh. E to Green Decl. Plaintiffs' conclusory lay-assertion that the Service Action "is not a permanent fix" (¶117) is unsupported by pleaded facts and cannot state a claim of breach of warranty. *See Dixon v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 146263 at *10 (E.D.N.Y. 2015).

Finally, in view of the above, there is no merit to Plaintiffs' wholly conclusory allegation that the NVLW "fails of its essential purpose" (CACAC ¶492). The law is clear that a limited

---

subsequent to the repair, nor is there any allegation that she reported this to VW or an authorized dealer for any further repair.

repair and replacement warranty, such as the NVLWs here, does not fail of its essential purpose unless Plaintiffs plead facts establishing that the seller is unwilling or unable to repair the allegedly defective goods within a reasonable period of time, after a reasonable number of repair attempts. *Mono-Systems, Inc. v. Leco Plastics, Inc.*, 2017 U.S. Dist. LEXIS 137183, *22, 24-25 (S.D.N.Y. August 24, 2017) ("Significantly, 'before the exclusive remedy is considered to have failed in its essential purpose, the seller must be given an opportunity to repair or replace the product'"); *David v. Am. Suzuki Motor Corp.,* 629 F. Supp. 2d 1309, 1319 n. 1 (S.D. Fla. 2009). The facts alleged in the CACAC do not plausibly support such a claim, and indeed, contradict it. *Leonard v. Tollycraft Corp.*, 1989 U.S. Dist. LEXIS 12363, *18-19 (S.D.N.Y. Oct. 19, 1989).

Accordingly, Plaintiffs' express warranty claims should be dismissed.

**D.**  **Campbell's Claim Is Barred by the Statute of Limitations**

Plaintiff Campbell's express warranty claim is untimely under New York's four-year statute of limitations which begins to run when Defendant's tender of delivery is made, "regardless of the aggrieved party's lack of knowledge of the breach."  NY CLS UCC § 2-725. Campbell's vehicle was sold to the original purchaser in November 2015, more than four years before this action was commenced (*see* Exh. 1 to Gallub Decl.).  Campbell's untimely claim is not entitled to a "discovery" toll (CACAC ¶479) applying only to warranties that explicitly extend to future performance, which the NVLW clearly is not.  *Chizniak v. Certainteed Corp*., 2020 U.S. Dist. LEXIS 17020, *14 (N.D.N.Y. Jan. 30, 2020) (a "repair or replace" warranty, such as the NVLWs here, "is not a warranty of future performance").

Nor was the statute of limitations tolled by alleged fraudulent concealment (CACAC ¶480).  The CACAC's conclusory assertion that Defendants did not notify consumers of the alleged sunroof problem fails to plead facts, much less the required particularized facts, necessary to establish that Defendants took affirmative steps to conceal the cause of action from

11

Campbell. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. Sep. 30, 2013).

**E.     Alleged "Puffery" Advertising Statements Do Not Create a Separate Express Warranty**

No express warranty arises from alleged generalized marketing statements touting the "quality, reliability, and safety" of vehicles. CACAC ¶¶166, 168, 170, 172, 178-179, 182-187, 249.  It is well-settled that such generalized statements constitute, at most, non-actionable puffery which does not create an express warranty. *In re Scotts EZ Seed Litig.*, 2013 U.S. Dist. LEXIS 73808, *18 (S.D.N.Y. 2013) (characterization of a product as "powerful" and of "uncompromising quality" is an example of non-actionable puffery); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 25381, *11-12 (N.D. Cal. Feb. 15, 2019) ("safe" and "reliable" nonactionable puffery).

**F.     The NVLW Bars Recovery of Incidental and Consequential Damages including Loss of Value**

The CACAC alleges, *inter alia*, a loss of value of the vehicle and seeks "damages" and "consequential damages…" CACAC ¶¶500-501, 519-520.  The NVLW specifically excludes recovery of incidental and consequential damages as well as loss of value of the vehicle.  *See* the NVLWs (Exhs. A-D to Green Decl.), which state:

> "Other expenses. This limited warranty does not cover any incidental or consequential damage, including loss of value of the vehicle, lost profits or earnings, and out-of-pocket expenses for substitute transportation or lodging."

Such provisions are enforceable.  *Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 112971, *28, 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009); Cal. Com. Code § 2719(3).

Accordingly, Plaintiffs are not entitled to recover any consequential damages, including alleged loss of value of their vehicles, and those claims should be dismissed**.**

12

G.      **Failure to Provide Pre-Suit Notice Bars the Claims of Cabezas and Williams**

Pre-suit notice to VWGoA was required for a breach of express warranty claim under IL and MD law.  *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494 (1996); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011). Plaintiffs Williams (IL) and Cabezas (MD) fail to allege that they provided requisite pre-suit notice of an alleged breach of warranty to VWGoA. *Doll,* 814 F. Supp. 2d at 542 (without informing defendant that plaintiff was claiming a breach of warranty, "the entire purpose of the notice requirement [which is to avoid litigation] would be lost").

III.    **The Claims for Breach of Implied Warranty of Merchantability Must be Dismissed (Counts II, IV)**

A.      **Cabezas' Claim Fails for Lack of Pre-Sale Notice**

For the same reason discussed above, Plaintiff Cabezas' implied warranty claim fails for lack of pre-sale notice to VWGoA.[7]  Md. Code Ann., Com. Law §2-607.

B.      **Ziarno's Claim is Time Barred**

NJ law imposes a four-year limitations period on implied warranty claims running from the date of Defendant's "tender of delivery," "regardless of the aggrieved party's lack of knowledge of the breach."  N.J. Stat. Ann. § 12A:2-725.  Ziarno purchased his vehicle on August 26, 2016, (*see* Certified DMV Title Records, Exh. 4 to Gallub Decl.), and the CACAC, which named Ziarno as a Plaintiff for the first time, was filed on August 28, 2020, more than four years later and after the statute of limitation had expired.  *Suriaga v. GE*, 2019 U.S. Dist. LEXIS 214732, *9-10 (D.N.J. Dec. 12, 2019) (rejecting fraudulent concealment tolling because the allegations were premised upon mere non-disclosure).

C.      **Certain Plaintiffs' Claims are Barred by Lack of Privity**

---

[7] Williams, who also failed to plead pre-sale notice, does not assert an implied warranty claim.

13

Under CA and FL law, vertical privity is an essential requirement for an implied warranty claim. *Tershakovec v. Ford Motor Co*., 2018 U.S. Dist. LEXIS 116130, *35 (S.D. Fla. July 12, 2018); *Mandani v. Volkswagen Grp. of Am., Inc.,* 2019 U.S. Dist. LEXIS 25381, *15 (N.D. Cal. Feb. 15, 2019). Barden (CA), Cole (CA), Werner (CA), Govan (CA) and the DelPretes (FL) did not purchase/lease their vehicles from VWGoA or VWAG. Their implied warranty claims must be dismissed.

Plaintiffs erroneously allege that privity is established by Plaintiff having "direct dealings with VW or its [dealership] agents." (¶ 506). This conclusory allegation is insufficient as a matter of law. *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991, at *23 (S.D. Fla. Apr. 30, 2014); *Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957, at *18-19 (C.D. Cal. Oct. 3, 2014). The CACAC pleads no facts setting forth any "direct dealings" between Plaintiffs and VWGoA or VWAG, the remote German manufacturer. Likewise, there are no pleaded facts establishing an agency relationship between either Defendant and any dealership.

Finally, there is no merit to Plaintiffs' conclusory allegation that "privity is not required here because plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between VW and its dealers, and specifically, of VW's implied warranties" (¶ 507). Aside from the fact that Plaintiffs identify no such "contracts," CA and FL do not recognize a third-party beneficiary exception to the privity requirement. *Mandani,* 2019 U.S. Dist. LEXIS 25381, at *15 ("there is no third-party beneficiary exception to California's privity requirement"); *Cardenas v. Toyota Motor Corp*., 418 F. Supp. 3d 1090, 1110 (S.D. Fla. 2019) (same under FL law).

**D.**     **Barden and Cole's Song-Beverly Claims Fail Because They Bought Used
Vehicles**

Cole and Barden's California Song-Beverly Act claims must be dismissed because that

statute only applies to the sale of new consumer goods. Cal. Civ. Code § 1792; § 1791(a)

(defining "consumer goods" as "any new product…"); *Mandani v. Volkswagen Grp. of Am., Inc.,*

2019 U.S. Dist. LEXIS 133926, at *18 (N.D. Cal. Aug. 8, 2019).  Since Cole and Barden

purchased their vehicles used, their Song-Beverly claims must be dismissed. *See* Exhs. 2-3 to

Gallub Decl.; CACAC ¶ 321; *Victorino v. FCA US LLC*, 326 F.R.D. 282, 300 (S.D. Cal. June 13,

2018) (Song-Beverly Act does not apply even where used vehicle was purchased from an

authorized dealership); *Herrera v. Volkswagen Grp. of Am.,* 2016 U.S. Dist. LEXIS 192907, **2,

15 (C.D. Cal. Sep. 9, 2016) (same).

**E.**     **Certain Plaintiffs Did Not Experience any Leak During the Implied Warranty
Period**

The MA and NJ Uniform Commercial Codes limit any implied warranty to the term of

any applicable express warranty. See G.L.C. 106, § 2-317; G.L.C. 106, § 2-317(c); N.J.S.A.

12A:2-317 (same).  Furthermore, the NVLWs applicable to Plaintiffs' vehicles expressly state, in

bold face type: "**Any implied warranty, including any warranty of merchantability... is

limited in duration to the period of this written warranty…**" (3 years or 36,000 miles

[whichever occurs first] for Plaintiffs vehicles) (Exhs. C-D to Green Decl.).  Ziarno (NJ) and

Hornick (MA) do not claim that their vehicles experienced any sunroof leak within the

applicable warranty period.  *See* CACAC ¶¶ 446, 453.  Their breach of implied warranty claims

should, therefore, be dismissed.  *Dawson v. GM LLC*, 2019 U.S. Dist. LEXIS 121469, *17

(D.N.J. July 22, 2019) (dismissing implied warranty claim because under  N.J.S.A. 12A:2-317 an

"implied warranty does not extend beyond the time or mileage limitation provided by an express

warranty"); *Nobile v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 26766, *11 (D.N.J. Mar. 14,

15

2011); *Suddreth v. Mercedes-Benz, LLC*, 2011 U.S. Dist. LEXIS 126237, *12 (D.N.J. Oct. 31,

2011) (same); *McCalley v. Samsung Elecs. Am. Inc.*, 2008 U.S. Dist. LEXIS 28076, *20 (D.N.J.

Mar. 31, 2008) (same).

### F.   Certain Claims Fail Because the Vehicles Were Merchantable at the Time of Sale

The implied warranty of merchantability is not a guarantee of perfection and "does not

impose a general requirement that goods precisely fulfill the expectation of the buyer." *Am.*

*Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1296 (1995).  Instead, it provides that

the product possesses "the most basic degree or fitness for ordinary use." *Birdsong v. Apple Inc.*,

590 F.3d 955, 958 (9th Cir. 2009); *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 686 (D. Md.

2010) (dismissing breach of implied warranty of merchantability claim where "[t]here [was] no

suggestion that the car was unfit for use or otherwise functionally useless."); *see* Cal. Civ. Code

§ 1791.1(a)(2).

In the automobile context, courts have held that a vehicle is not rendered unmerchantable

unless the symptoms of a defect are persistent, and the defect "compromise[s] the vehicle's

safety, render[s] it inoperable," or "drastically undermine[s] the ordinary operation of the

vehicle."  *Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013); *Blissard v.*

*FCA US LLC*, 2018 U.S. Dist. LEXIS 201725 at *20 (C.D. Cal. Nov. 9, 2018); *see Mercedes-*

*Benz of N. Am. v. Garten*, 94 Md. App. 547, 562 (1993).

Plaintiffs Govan (CA), Barden (CA), Cole (CA), Werner (CA) and Cabezas (MD) fail to

plead facts establishing any of these criteria.  They do not claim that the alleged sunroof leak

rendered their vehicles "inoperable," or that the alleged leak was persistently experienced to the

point in which their ability to operate their vehicles was "drastically" impaired.  In fact, no

Plaintiff claims to have ever stopped driving his/her vehicle.  Cole and Werner, in particular,

admit that their vehicles' alleged water leak has been repaired.  CACAC ¶¶ 278, 308-09. Similarly, Barden purchased his used vehicle after the warranty period had already expired, and further admits that his vehicle could be repaired. Cabezas admits that a Volkswagen dealership offered to repair his vehicle.  *Id.* at ¶¶ 331, 389; Exh. 3 to Gallub Decl.

As such, these Plaintiffs have failed to plausibly plead that their vehicles are not merchantable.  *Zuehlsdorf v. FCA US LLC*, 2019 U.S. Dist. LEXIS 83169, *26 (C.D. Cal. Apr. 30, 2019) (holding that "defects where a vehicle's operability was not impaired until a particular part malfunctioned and required replacement may be insufficient to demonstrate unmerchantability," but, on other hand, "where a defect's symptoms were *persistent* and could not be addressed through repair or replacement of an isolated component, there can be a viable claim that the vehicle was unmerchantable") (emphasis added);  *Blissard,* 2018 U.S. Dist. LEXIS 201725, *19 (same; dismissing implied warranty claim, despite allegations of safety concerns and adverse effects on operability in cold weather, because plaintiff "alleged that the defect can be cured through replacement of '[f]ouled components'"); *Kahn v. FCA US, LLC,* 2019 U.S. Dist. LEXIS 134583, *18-19 (C.D. Cal. Aug. 2, 2019)(same; dismissing implied warranty claim holding "simply because the rear wiring harness failed after the expiration of the warranty does not amount to a breach of the implied warranty of merchantability and merely constitutes a part malfunction that required replacement"); *Mercedes-Benz of N. Am. v. Garten*, 94 Md. App. 547, 562 (1993)(holding that vehicle was merchantable because there was no evidence that the car was unsafe, or "ever failed to start or failed to transport [plaintiff] where he needed to go"); *see also Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (holding that the "basic inquiry" is "whether the vehicle was fit for driving"  and dismissing claim because  "Plaintiffs have not alleged that they stopped using their vehicles" ).

17

Furthermore, Werner, Cabezas and Barden do not allege that their vehicles' safety was ever compromised, or that they stopped driving their vehicles due to the alleged defect.  In addition, while Cole conclusorily alleges that she *"fears"* her vehicle may have suffered electrical issues, she does not claim that her vehicle actually suffered any electrical issues, let alone any issues that may pose a safety risk.  CACAC ¶ 281 (emphasis added); *Kahn,* 2019 U.S. Dist. LEXIS 83169, at *19 (dismissing implied warranty claim because although plaintiff alleges he experienced the alleged defect, he "does not allege that he personally experienced any of the rear wire harness symptoms *that inure to a safety* concern—*i.e.*, the failure of the third brake light or license plate lights");  *Gonzales v. CarMax Auto Superstores, LLC*, 2013 WL 12207506, at *3 (C.D. Cal. Nov. 5, 2013) (dismissing implied-warranty claim under Song-Beverly where, apart from plaintiff's conclusory allegation that he felt "unsafe" in his vehicle, he pleaded no facts showing his vehicle did not in fact provide safe and reliable transportation and at least "a minimum level of quality").

Finally, while Govan claims to experience "electrical malfunctions in her vehicle" (¶¶349-50), she does not claim that the alleged electrical malfunctions existed at the time of sale, nor does she allege facts establishing that they were, in fact, caused by any sunroof leak.  *See Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297, 1305 (2009) (holding that to have an actionable claim, the defect must exist "at the time of sale").

Accordingly, Plaintiffs' implied warranty claims should be dismissed.


### III.  Plaintiffs' Statutory Consumer Fraud and Common Law Fraudulent Concealment Claims Should Be Dismissed (Counts V-XII)

#### A.  Plaintiffs have Improperly Lumped Together the Material Allegations Asserted Against VWGoA and VWAG

A complaint that simply lumps together multiple defendants in material allegations fails

to satisfy the minimum standard demanded by Rule 8. *Ochre LLC v. Rockwell Architecture Planning & Design*, 2012 U.S. Dist. LEXIS 172208, *17 (S.D.N.Y. Nov. 8, 2012). In addition, Rule 9(b), which applies to Plaintiffs' common law and statutory fraud-based claims, "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Bruno v. Zimmer, Inc*., 2017 U.S. Dist. LEXIS 216684, *27 (Aug. 11, 2017), *quoting Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007).

Here, as discussed *supra*, essentially all of the material allegations of the CACAC impermissibly lump together VWGoA and VWAG – two separate and distinct parties – under the collective label "VW" (CACAC Preamble). This alone requires dismissal of the fraud-based claims under the heightened specificity standards of Rule 9(b).

### B.   The Claims of Affirmative Misrepresentation Fail

Plaintiffs' claims of affirmative misrepresentation fail to meet the required pleading standards and should be dismissed.[8] Cabezas (MD), Williams (Ill), Campbell (NY) and Barden (CA) allege that they purchased their vehicles because Defendants' marketing campaign emphasized the "quality," "reliability," and "safety" of Defendant's vehicles. CACAC ¶¶ 249, 327, 367, 385. Notwithstanding the failure to differentiate the two Defendants, it is well-settled that such generic statements of "reliability" and "safety" constitute, at most, non-actionable puffery that cannot support a claim of misrepresentation or fraud. *Elkind v. Revlon Consumer Products Corp.,* 2015 U.S. Dist. LEXIS 63464 at *13 (E.D.N.Y. May 14, 2015) ("[V]ague statements of a product's superiority are nonactionable puffery."); *Beck v. FCA US LLC*, 273 F.

---

[8] Plaintiff Hornick (MA) does not assert a statutory consumer fraud claim, and thus does not plead any claim based on alleged misrepresentation.

Supp. 3d 735, 750 (E.D. Mich. 2017) (statements regarding a vehicle's "safety, quality, reliability, or performance" "undoubtedly constitute non-actionable puffery"); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (same; "top-quality" and "dependable"); *Azoulai v. BMW of N. Am. LLC*, 2017 U.S. Dist. LEXIS 57121, *24-25 (N.D. Cal. Apr. 13, 2017) (same); *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, *6 (S.D.N.Y. 2013); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 793 (N.D. Cal. 2017) (collecting cases).

In addition to not being actionable, these alleged puffery statements are not pled with the particularity required by Rule 9(b).  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (California UCL and CLRA claims subject to Rule 9(b)); *Wiseman v. First Mariner Bank*, 2013 U.S. Dist. LEXIS 136229, *29 (D. Md. Sep. 23, 2013) (same; Maryland CPA); *Schiesser v. Ford Motor Co.,* 2016 U.S. Dist. LEXIS 149392, *14 (N.D. Ill. Oct. 28, 2016) (same; Illinois CFA).  Under Rule 9(b), "a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

Plaintiffs do not identify any particular statement or advertisement concerning their vehicles' sunroofs, much less when, where, by whom and how they were purportedly exposed to *any* statement or representation prior to purchasing their vehicles.  *See Wilson v. Neighborhood Restore Dev.*, 2019 U.S. Dist. LEXIS 157275, *15 (E.D.N.Y. Sep. 13, 2019) (dismissing claim as "plaintiffs have not described any particular statements made by Defendants that they contend were fraudulent, let alone stated when, where, and by whom the statements were made").

Dismissal is also warranted for those Plaintiffs' claims (Cole, Werner, Govan, Hornick, Cabezas, Barden, Campbell and Ziarno) that are also premised upon alleged statements

contained in brochures pertaining to their vehicles, such as "balances sleek and rugged," "[t]ransforms drives into journeys," and "[d]esigned to be a mobile refuge from the outside world."  *See* CACAC ¶¶ 164, 181, 184-185. As discussed above, such statements are non-actionable puffery.

Furthermore, all applicable state laws required that Plaintiffs plead facts establishing the essential elements of causation or reliance in order to state a statutory consumer fraud claim premised upon affirmative misrepresentation.[9]  Plaintiffs have failed to plead such facts.  No Plaintiff has claimed to have viewed, heard or read, let alone relied upon, any alleged marketing brochures prior to purchasing his/her vehicle.   *See e.g.,* Fed. R. Civ. P. 9(b); *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, **9-10 (S.D.N.Y. 2018) (dismissing claims under § 349 and § 350 because "[t]hese allegations do not suggest Plaintiff ever saw these statements and under what circumstances"); *Stevenson v. Mazda Motor of Am., Inc.,* 2015 U.S. Dist. LEXIS 70945, *22 (D.N.J. June 2, 2015) ("while Plaintiff cites to his own warranty booklet, he does not state whether he viewed this booklet prior to purchasing the vehicle. Plaintiff has therefore not alleged specific facts to show that Mazda's misrepresentations…in the warranty booklet were a cause of his loss"); *Cabebe v. Nissan N. Am., Inc*., 2018 U.S. Dist. LEXIS 185017, *23 (N.D. Cal. 2018) (same); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (same).

In this regard, the vague and wholly conclusory allegation that Plaintiffs "relied on VW's

---

[9] See *VVIG, Inc. v. Alvarez*, 2019 U.S. Dist. LEXIS 175304, at *27-31 (S.D. Fla. Oct. 9, 2019); *Schiesser v. Ford Motor Co.,* 2016 U.S. Dist. LEXIS 149392, **14, 16 (N.D. Ill. Oct. 28, 2016); *Liebler v. LG Elecs. U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 72770, *12, 20 (D.N.J. June 4, 2015); *Quintana v. B. Braun Med. Inc.,* 2018 WL 3559091, *28 (S.D.N.Y. 2018) (dismissing G.B.L. § 349 claim because plaintiff failed to allege that she "ever saw" the subject "statements and under what circumstances"); *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *6-7 (N.D. Cal. Oct. 11, 2016) (CLRA and UCL claims require "actual reliance"); Md. Comm. Law Code Ann. § 13-408(a).

deceptive warranty practices, advertising campaigns, and/or material omissions…" (CACAC ¶ 191) is bereft of any supporting facts, and fails to comply with applicable pleading standards.

Finally, Cole's (CA) bare-bones allegation that "before purchasing her vehicle, VW specifically informed Plaintiff Cole that she would not have any sunroof leaks" (CACAC ¶ 268) is woefully inadequate, under Rule 9(b), to support her CLRA and UCL claims.  Cole does not allege "when" this statement by "VW" was purportedly made to her, "who" (which person from which Defendant) allegedly made the statement, and "how" and "where" the statement was allegedly communicated to her.  *Kearns, supra,* 567 F.3d at 1126.

### C.  CA Plaintiffs Have Not Established that No Adequate Legal Remedy Exists

The California UCL only provides for equitable remedies.  *Ozeran v. Jacobs,* 798 Fed. Appx. 120, 122 (9th Cir. 2020). In addition, Plaintiff Govan's CLRA claim only seeks equitable relief, and Plaintiffs Barden, Cole and Werner seek equitable relief as well as monetary damages. CACAC ¶¶ 578-579.  However, claims for equitable relief under the UCL and CLRA cannot survive a Rule 12 motion where, as here, Plaintiffs have failed to establish that there is no adequate remedy at law. *Sonner v. Premier Nutrition Corp*., 2020 U.S. App. LEXIS 26513 (9th Cir. Aug. 20, 2020).

In *Sonner,* the Ninth Circuit, affirming the dismissal of equitable relief claims brought under the UCL/CLRA, explained that while a federal court must apply state substantive law in a diversity case,

> *this does not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court…Equitable relief in a federal court is of course subject to restrictions*: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery; *a plain, adequate and complete remedy at law must be wanting*…

*Id.* at *4 (*quoting Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)).  Thus, pursuant to *York*, the Ninth Circuit held that plaintiff was *required* to allege that she lacked an adequate remedy at law, and since "the operative complaint di[d] not allege that [plaintiff] lack[ed] an adequate legal remedy," the district court properly granted defendants' Rule 12(b) motion to dismiss the UCL and CLRA claims for equitable relief.  *Id.* at *8 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502 (1974) (holding complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law"); *see also Philips v. Ford Motor Co*., 726 F. App'x 608, 609 (9th Cir. June 8, 2018) (same; affirming pleading stage dismissal of UCL and all other equitable claims).

Here, Govan, Barden Cole, and Werner do not allege, let alone establish, that they lack an adequate remedy at law. Thus, their UCL claim, and their claims for equitable relief under the CLRA, must be dismissed.

### D.  <u>The Omission-Based Common Law and Statutory Fraud Claims Fail</u>

1.  <u>No Adequate Facts Establishing Reliance or Causation (Werner, Cole and Barden)</u>: These CA Plaintiffs' UCL, CLRA and fraudulent concealment claims, premised upon alleged concealment or failure to disclose, must be dismissed because they fail to plead the necessary particularized facts establishing the essential element of reliance.  As to the UCL claim, this deficiency applies with equal force regardless of whether the UCL claims are predicated upon "unfairness" or "fraud.  *Sud v. Costco Wholesale Corp.,* 229 F. Supp. 3d 1075 (N.D. Cal. Jan. 24, 2017); *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *6-7 (N.D. Cal. Oct. 11, 2016) (CLRA and UCL claims require "actual reliance").

Under CA law, in order to prove reliance on an omission, Plaintiffs must plead and prove that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Madani v. Volkswagen Grp. of Am., Inc.,* 2019 U.S. Dist. LEXIS 133926, at *30

(N.D. Cal. Aug. 8, 2019).  Furthermore, Plaintiffs' fact allegations regarding reliance must satisfy the heightened pleading requirements of Rule 9(b).  *Tabler v. Panera LLC,* 2019 U.S. Dist. LEXIS 187694, *28 (N.D. Cal. Oct. 29, 2019).

Werner and Cole's conclusory allegations that they relied "on VW's representations described herein" (¶¶269, 297), and Barden's conclusory allegation that he relied on *unidentified* "marketing campaigns emphasizing the quality, reliability and safety of VW vehicles" (¶327), fail to plead the required facts establishing reliance.  *Williams v. Apple, Inc*., 2020 U.S. Dist. LEXIS 55069, *41 (N.D. Cal. Mar. 27, 2020).  In addition, Plaintiffs fail to plead with any specificity that they heard, read or saw any advertisements or other representations from any Defendant, prior to purchase, that they claim should have contained the allegedly omitted disclosure.  They have therefore failed to plausibly plead, with the requisite Rule 9(b) particularity, that they "would have been aware of" the alleged omission if it was disclosed.  *See Shamamyan v. FCA US LLC*, 2020 U.S. Dist. LEXIS 121965, *20-21 (C.D. Cal. Apr. 1, 2020) (dismissing UCL and CLRA claims based on omissions in "unidentified…'advertising campaign(s) focus[ing] on its vehicles being free of defects' and 'product brochures, pamphlets, and media concerning the Subject Vehicles sold to Plaintiffs'" as these allegations "do not provide sufficient factual content to satisfy Rule 9(b)'s heightened requirements," including when or where any omission occurred).

The same holds true for Williams' omission claims under the IL Consumer Fraud Act and for common law fraudulent concealment.  Under IL law, to state a claim for common law fraudulent concealment, a plaintiff must plead particularized facts establishing the essential element of "reliance," and under the IL CFA, that his injury was "caused" by defendant's deceptive conduct.  *Elward v. Electrolux Home Prods*., 2020 U.S. Dist. LEXIS 96000, *59-60

(N.D. Ill. June 1, 2020); *Darne v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 142425, *29 (N.D. Ill. Sep. 1, 2017).  This required Williams to identify, with Rule 9(b) specificity, a statement made by any Defendant, that he saw or heard prior to purchase, that failed to disclose the alleged defect.  *Elward*, 2020 U.S. Dist. LEXIS 96000, *59-60; *Schiesser,* 2016 U.S. Dist. LEXIS 149392 at *14 (N.D. Ill. Oct. 28, 2016).

Williams has failed to do so.  While asserting a conclusory allegation that he purchased his vehicle in reliance upon unidentified marketing campaigns (¶ 367), he has not alleged any specific communication or advertisement pertaining to his 2017 Passat, let alone its sunroof, that he claims to have relied upon when he purchased his vehicle.  *Schiesser,* 2016 U.S. Dist. LEXIS 149392, at *15-16 (dismissing omission claim under ICFA and common law fraud because while plaintiff alleged that he relied on Ford's representations regarding safety, "plaintiff has not pointed to a specific communication or advertisement that he relied upon when he purchased his Vehicle"); *O'Connor v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 141393, *28 (N.D. Ill. Aug. 7, 2020) (same).

2.  <u>Failure to Establish a Duty to Disclose Under Applicable Law (Hornick, Williams, Cabezas and Ziarno)</u>:  The common law fraudulent concealment claims of these Plaintiffs also fail because they do not allege facts establishing that either Defendant had a duty to disclose. Under MA law, there is no duty to disclose unless (1) the parties were in a fiduciary or similar relationship of trust, (2) the disclosure is necessary to prevent a partial statement from being misleading, or (3) "the nondisclosed fact is basic to, or goes to the essence of, the transaction."  *Block v. Jaguar Land Rover N. Am.,* 2019 US Dist. LEXIS 221297, *32 (D.N.J. Dec. 23, 2019) (MA law).  Hornick (MA), who purchased a used vehicle from a third-party entity, does not, and cannot, allege a fiduciary relationship with either Defendant, nor does he

plead that he relied upon any partial statement from either Defendant in purchasing his vehicle. *Id.*; CACAC ¶ 404 (merely alleging in conclusory fashion that prior to purchase he "reviewed vehicle information available online, including VW's marketing materials").

Hornick also does not allege any "transaction" with either Defendant, or even with an authorized Volkswagen dealer. *Block v. Jaguar Land Rover N. Am.,* 2019 US Dist. LEXIS 221297, *32 (D.N.J. Dec. 23, 2019) (dismissing MA fraudulent concealment claim where plaintiff purchased vehicle from a third party and thus failed to allege that "she engaged in a transaction with" Jaguar).

There is also no duty to disclose under the laws of IL (Williams), NJ (Ziarno) and MD (Cabezas) "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F3d 1153, 1183 (3d Cir. 1993); *see Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996); *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (applying Illinois law); *Estate of White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp. 2d 424, 431 (D. Md. 2000). No previous statement by either Defendant, other than generalized non-actionable puffery, has been alleged,[10] nor have these Plaintiffs alleged facts establishing any of the required elements of (1) a fiduciary relationship, such as principal and agent, client and attorney, or beneficiary and trustee; (2) that the transaction itself is "intrinsically fiduciary"; or (3) that one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied. *Coba v. Ford Motor Co.*, 2013 US Dist. LEXIS 8366, *12 (D.N.J. Jan. 22, 2013) (holding that there is no special relationship between consumers and automobile manufacturers that would impose a duty

---

[10] As stated earlier, Williams and Cabezas merely allege that they relied upon non-actionable puffery marketing statements emphasizing "safety" and "reliability" (CACAC ¶¶ 367, 385). Ziarno (NJ) does not allege that he reviewed or relied on any marketing or other statements, puffery or otherwise.

to disclose); *Estate of White,* 109 F. Supp. 2d at 431 ("the arms-length relationship between defendant cigarette manufacturers and … the consumer of their products, does not create a special relationship that gives rise to a duty to speak").[11]

3. Failure to Plead "Ascertainable Loss" Required by the NJCFA (Ziarno)**:** Ziarno's NJCFA claim fails because he has not sufficiently plead the requisite "ascertainable loss," defined as a cognizable loss that "is quantifiable and measurable." *Stevenson*, 2015 WL 3487756, at *4 (D.N.J. June 2, 2015).  Under NJ law, he was required to factually plead an entitlement to damages under either (1) an out-of-pocket loss theory or (2) a loss in value or benefit-of-the-bargain theory. *Pierre-Charles v. Consumer Portfolio Servs.,* 2018 WL 3425737, at *4 (D.N.J. July 16, 2018); *Mladenov v. Wegmans Food Mkts., Inc.,* 124 F. Supp. 3d 360, 375 (D.N.J. Aug. 26, 2015).

Ziarno fails to plead an ascertainable loss under the out-of-pocket loss theory because he has not alleged, nor can he, that the vehicle he received was essentially worthless. *Mladenov,* 124 F. Supp. 3d at 375 (dismissing NJCFA claim where Plaintiffs failed to "allege facts supporting an out-of-pocket loss, i.e., that the products they purchased were worthless"). Likewise, Ziarno's allegation that he was deprived of the "benefit of his bargain" (CACAC ¶ 466) fails to establish ascertainable loss because he failed to plead the required facts establishing "the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered." *Schechter v. Hyundai Motor Am.,* 2019 WL 3416902, at *8 (D.N.J. July 29, 2019) (dismissing NJCFA claim that Plaintiff "would have paid less" for his vehicle because he did

---

[11] MD law allows fraudulent concealment claims to proceed in the absence of a special relationship where "sufficient allegations of a serious risk of bodily harm or death has been made." However, Plaintiff Cabezas merely alleges a leaking sunroof and a "moldy odor," and not any facts establishing a "serious risk of bodily harm." *Lloyd v. GMC,* 397 Md. 108, 139 (2007) (allowing claim to proceed where plaintiffs alleged that the seatbacks "have a tendency to collapse in rear-impact collisions," which has caused "significant numbers of serious injuries including paraplegia, quadriplegia and death").

"not provide any information with respect to the terms of his leased vehicle, including its price; nor has he alleged any facts that describe what a hypothetical lease for a vehicle with a defective powertrain would be, in order for the Court to ascertain, or even reasonable estimate, the difference in value between [p]laintiff's lease and the alleged lease which he would have executed"). *See also Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *10 (D.N.J. June 26, 2012); *In re Caterpillar, Inc.,* 2015 WL 4591236, *38 (D.N.J. July 29, 2015).

    4.  <u>No Manifestation During the Warranty Period (Ziarno, Barden and Cole)</u>: The NJCFA claim of Ziarno further fails because the requirement of an "ascertainable loss" is not established when, as here, the allegedly defective component outperformed its warranty period.  *In re GM Air Conditioning Mktg. & Sales Practices Litig.,* 2019 U.S. Dist. LEXIS 190708, *8 (E.D. Mich. Nov. 4, 2019); *Glass v. BMW of N. Am., LLC,* 2011 U.S. Dist. LEXIS 149199, *34 (D.N.J. Dec. 29, 2011).  Ziarno does not claim to have experienced a sunroof leak while his vehicle's 3-year/36,000-mile NVLW warranty period was in effect.

    With respect to Barden and Cole (CA), under CA law an alleged defect that manifests after the expiration of the express warranty period cannot support a claim under the CLRA, UCL or common law fraud unless the defect presents an "unreasonable safety risk" or defendant made an affirmative misrepresentation.  *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1025 (9th Cir 2017) (explaining that the purpose of this limitation in the post-warranty context is to ensure that durational limits on express warranties are not rendered meaningless); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1135 (N.D. Cal. 2013).  Barden and Cole (CA) purchased their vehicles used after the NVLW period expired, and they failed to adequately allege any misrepresentation or plead facts establishing an unreasonable safety risk.  *See* Exhs. 2-3 to Gallub Decl.; *Williams,* 851 F.3d at 1028-29 (dismissing claims because the allegations of an

unreasonable safety hazard "is speculative and unsupported by factual allegations"); *Gaines v. GM Co.*, 2019 U.S. Dist. LEXIS 29716, *12 (S.D. Cal. Feb. 25, 2019) (allegation that water "could damage wiring or electrical components" and thus presents a safety hazard is "purely conjectural," especially given the large number of class vehicles, because "the lack of any known injuries undercuts the plausibility of her claim of an unreasonable safety risk" ).

5. Fraudulent Concealment Claims Barred by Economic Loss Rule (DelPretes and Cabezas):  Under FL law, the DelPretes' claims for common-law fraudulent concealment, alleging only economic loss, are barred by the economic loss rule.  *Cardenas v. Toyota Motor Corp.,* 2019 U.S. Dist. LEXIS 168773, *20-21 (S.D. Fla. Sep. 30, 2019); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017).

Under MD law, Cabezas claim fails because the economic loss rule bars fraudulent concealment claims for economic loss where there is no "intimate nexus" between the parties. *Chubb & Son v. C & C Complete Servs, LLC*, 919 F. Supp. 2d 666, 675 (D. Md. 2013) (noting that "contractual privity or its equivalent may satisfy this intimate nexus").  Cabezas did not purchase his vehicle from Defendants and seeks only economic damages.[12]

6. All Plaintiffs' Statutory and Common Law Fraud Claims Must be Dismissed for Failure to Establish that Defendants Had the Requisite Pre-Sale Knowledge:  Under all applicable state laws, knowledge of the alleged defect at the time of sale is a required element of all Plaintiffs' common law and statutory consumer fraudulent omission/concealment claims.  *See e.g., Wozniak v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 1339, n. 5 (E.D. Mich. Jan. 4, 2019) (NY, NJ, MA, IL. MD, CA and FL common law fraud/consumer protection statutes).  Here, the

---

[12] Although Maryland recognizes "an exception where the plaintiff alleges the concealment or failure to warn of a defect giving rise to a "*serious risk of bodily harm*," *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 590 (E.D. Mich. Nov. 28, 2018), Plaintiff Cabezas who merely alleges a leaking sunroof and a "moldy odor" fails to plead any facts establishing a "serious risk of bodily harm."

CACAC fails to allege the required facts establishing that either Defendant, let alone both, had knowledge of the alleged sunroof leakage defect prior to the time that Plaintiffs purchased/leased their vehicles.

Plaintiffs purport to rely upon 17 hearsay anonymous complaints posted by unidentified third-parties on the NHTSA website. CACAC ¶ 134. All of these complaints *post-date* the purchases of Plaintiffs Ziarno, Govan,[13] Werner and Gjonbalaj. CACAC ¶¶ 134, 203, 292, 446, 339. In addition, all 17 complaints were posted on NHTSA's website *after* the Barden and Hornick vehicles were sold to their first purchasers (Exh. 3 to Gallub Decl.; Green Decl. ¶18);[14] 16 of them *post-date* Williams' June 5, 2018 and Cabezas' May 25, 2018 purchases; 12 *post-date* Cole's December 26, 2018 purchase; 5 *post-date* the DelPretes' June 2019 lease; and 4 *post-date* Campbell's August 2019 purchase.[15] CACAC ¶¶ 265, 421; Exh. A to Declaration of Edward J. Puls ("Puls Decl."); Exh. 1 to Gallub Decl. Thus, without even considering the inapplicable nature of many of the complaints, these anonymous third-party complaints to NHTSA do not establish pre-sale knowledge of anything relating to Plaintiffs' statutory and common law fraud-based claims. *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 308 (N.D.N.Y. Aug. 1, 2019) (complaints to NHTSA that post-date plaintiff's purchase cannot demonstrate requisite knowledge); *Brown v. Hyundai Motor Am.*, 2019 U.S. Dist. LEXIS 148305, *19 (D.N.J. Aug. 30, 2019).

It is also significant that none of the 17 complaints pertain to Williams' 2017 Passat, or to

---

[13] While Govan alleges she purchased her vehicle in November 2017, CACAC ¶ 339, she actually purchased it on November 7, 2016. *See* Exh. A to Hitchman Decl.

[14] Barden and Hornick purchased their vehicles used from third-party entities not affiliated with Defendants.

[15] The consumer complaint dated July 28, 2018, which is the incident date, was filed with NHTSA on August 10, 2018; the complaint dated December 25, 2018, was filed on January 3, 2019; the complaint dated November 21, 2018 was filed on February 1, 2019; the complaint dated December 12, 2018 was filed on February 5, 2019; the complaint dated November 4, 2018 was filed on February 21, 2019; the complaint dated May 4, 2019 was filed on June 12, 2019; the complaint dated April 30, 2019 was filed on July 10, 2019. CACAC ¶ 134.

any model year Passat vehicle.  Similarly, only one of the complaints that pre-date the DelPretes' June 2019 lease of their 2019 Tiguan actually involves a Tiguan, and none of the complaints that predate Campbell's purchase pertain to his 2016 Golf vehicle.  *See David v. Volkswagen Group of America, Inc*., 2018 U.S. Dist. LEXIS 70284, *15-16 (D.N.J. Apr. 26, 2018) (rejecting allegations of pre-sale knowledge because they "do not involve the 2014 Touareg [plaintiff's vehicle] and/or occurred after Plaintiff made his purchase").  In this regard, there is no pleaded factual support for Plaintiffs' conclusory allegation that prior complaints involving model and model year vehicles different from the Plaintiffs' vehicles can be used to impute pre-sale knowledge of an alleged defect in each of the Plaintiffs' vehicles.  *See Victorino v. FCA US LLC*, 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("When addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect") (collecting cases).

Even if all 17 of those third-party complaints to NHTSA had pre-dated each of the Plaintiff's purchases/leases, they would still not be sufficient to establish pre-sale knowledge of an alleged systemic sunroof defect in the face of the "tens of thousands of class vehicles" alleged by Plaintiffs.  *See Cadena v. Am. Honda Motor Co.,* 2019 WL 3059931, at *12 (C.D. Cal. May 29, 2019) (30 complaints to NHTSA, even if known by Honda, were not sufficient for pre-sale knowledge); *Deras v. Volkswagen Grp. of Am., Inc*., 2018 WL 2267448 (N.D. Cal. May 17, 2018) (holding pre-sale knowledge is only established "where there were an *unusual* number of complaint[s]," and 56 complaints out of hundreds of thousands of vehicles isn't sufficient); *McQueen v. BMW of N. Am.*, 2013 U.S. Dist. LEXIS 123232, at *18 (D.N.J. Aug. 29, 2013); *Sloan v. GM LLC*, 2017 U.S. Dist. LEXIS 120851, *25 (N.D. Cal. August 1, 2017) (81 complaints over 7 years not sufficient).

31

The same holds true with respect to the mere 5 alleged posts on VW's Facebook page, which only involve Tiguan vehicles.  Only Gjonbalaj and DelPretes have Tiguan vehicles, and the Facebook posts involve different model years than the 2018-2019 model years owned by Gjonbalaj and DelPrete.  In addition, only 3 of those inapplicable Facebook posts pre-date Gjonbalaj's purchase. CACAC ¶ 135.

Similarly, Plaintiffs' allegations concerning consumer complaints posted on third-party websites, such as reddit.com and carcomplaints.com, fail to establish the requisite pre-sale knowledge.  Plaintiffs do not allege that any of these complaints were seen by either Defendant at any time, let alone prior to Plaintiffs' purchases/leases.  CACAC ¶¶ 128-131, 138-144; *see e.g., Schechter v. Hyundai Motor Am.,* 2019 U.S. Dist. LEXIS 126021, *18-19 (D.N.J. July 29, 2019) ("[I]mputing knowledge of a defect to a manufacturer based upon an internet posting would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery") (quotations omitted); *Resnick v. Hyundai Motor Am.,* 2016 WL 9455016, at *1 (C.D. Cal. Nov. 14, 2016) (rejecting allegations of knowledge based on complaints posted on "Hyundai-Forums.com" because plaintiffs did not plead facts indicating Hyundai monitored these websites and "complaints on websites do not…commute knowledge to a manufacturer"); *Stewart v. Electrolux Home Prods.,* 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018) (same); *Coleman-Anacleto v. Samsung Elecs. Am.,* 2017 WL 86033, at *9 (N.D. Cal. Jan. 10, 2017) (same); *Oliver v. Funai Corp.,* 2015 U.S. Dist. LEXIS 169998, at *10 (D.N.J. Dec. 21, 2015) (same).

In addition, 10 of the 15 third-party-website complaints, grouped under the heading "Additional Consumer Complaints about the Tiguan," do not apply to Williams, Cole, Werner, Campbell, Barden, Govan, Cabezas, Hornick, or Ziarno - none of whom own or leased a Tiguan.

As to Plaintiffs Gjonbalaj and DelPrete, only 7 of the third-party website complaints pre-date Gjonbalaj's August 2017 purchase, and none of them involve Gjonbalaj's model year 2018 Tiguan vehicle or the DelPretes' 2019 Tiguan.  CACAC ¶144 (the two posts involving the 2018 Tiguan were posted in July 2018).  Most, in fact, involve vehicles manufactured many years before Gjonbalaj's 2018 and the DelPretes' 2019 Tiguan, including three involving a 2009 Tiguan, one involving a 2010 Tiguan, one involving a 2012 Tiguan, and one involving a 2014 model year vehicle. CACAC ¶¶ 138-142, 144; *see also Schechter v. Hyundai Motor Am.*, 2020 U.S. Dist. LEXIS 55598, at *28 (D.N.J. Mar. 31, 2020) (rejecting "knowledge" allegations based upon an earlier filed class action involving 2010-2012 model year vehicles because "Plaintiff does not allege that Defendants continued to manufacture these [2017] vehicles with the same components and parts, or that, notwithstanding the significant passage of time, the Santa Fes from 2010-2012 have not undergone a change in design.").

Similarly, of the other 5 third-party website complaints, grouped under the heading "VW Forum Consumer Complaints," two (2) do not even identify the model/model year vehicles involved, all *post-date* the purchases of Govan, Ziarno, Gjonbalaj and Werner, and all *post-date* the sale of Barden and Hornick's vehicles to their first purchaser.  CACAC ¶ 128; *Cummings,* 401 F. Supp. 3d at 308 (rejecting knowledge allegations based upon post-sale complaints).  None of the third-party website complaints establish that VWGoA or VWAG had knowledge of Plaintiffs' alleged sunroof defect prior to the time that Plaintiffs purchased/leased their vehicles.

Pre-sale knowledge is, likewise, not established by the vague and conclusory allegations of purported testing data, warranty claims, and complaints lodged with dealerships -- none of which is identified or supported by any pleaded facts. CACAC ¶¶ 60-62; *Cummings,* 401 F. Supp. at 308; *Brown*, 2019 U.S. Dist. LEXIS 148305, at *18; *Schechter,* 2019 U.S. Dist. LEXIS

126021, at *20; *Blissard v. FCA US LLC,* 2018 U.S. Dist. LEXIS 201725 at *36 (C.D. Cal. Nov. 9, 2018).

Finally, pre-sale knowledge is not established by the TSBs and PROFI communication[16] referenced in the CACAC.  The PROFI communication is inapplicable, as it states on its face that it applies to 2015-2016 Golf Sportwagens, and no Plaintiff purchased or leased such vehicles.  CACAC ¶ 78.  Furthermore, the PROFI communication was merely a request from VWGoA to certain dealers that *if* customers complain of water leaks, the dealers should inspect the vehicles for loose or pinched drain tubes and present the information to VWGoA.  This was investigatory in nature and does not evidence any defect, let alone establish pre-sale knowledge of any defect.  *Cf. O'Shea v. Ford Motor Co.,* 2011 WL 12876170, at *5 (C.D. Cal. Dec. 28, 2011) (granting summary judgment in favor of Ford where at the time of plaintiff's purchase, Ford was investigating the cause of white flakes in vehicles of the same model plaintiff bought).

Nor do the TSBs alleged in the CACAC demonstrate the requisite pre-sale knowledge on the part of either Defendant.  First, none of the TSBs pertain to Williams' 2017 VW Passat or any model year Passat.  *See David v. Volkswagen Group of America, Inc*., 2018 U.S. Dist. LEXIS 70284, *15-16 (D.N.J. Apr. 26, 2018).  Second, none of the TSBs were issued before Ziarno's August 2016 purchase or before the September 4, 2016 sale of Barden's vehicle to its first purchaser.  *See* Exhs. 3-4 to Gallub Decl.; *Granillo v. FCA US LLC,* 2016 U.S. Dist. LEXIS 116573, at *31(D.N.J. Aug. 29, 2016) ("TSBs issued after Plaintiffs purchased their vehicles do not indicate that Defendant had pre-sale knowledge of the content of those TSBs"); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 U.S. Dist. LEXIS 70945, at *18 (D.N.J. June 2, 2015) (same).

Third, with respect to Werner, only *one* alleged TSB (dated September 28, 2016) pre-

---

[16]  A PROFI communication is a communication with Product Field Information designated dealers who assist Volkswagen with technical issues.

dates her October 2016 purchase (CACAC ¶¶ 82, 292), and that TSB (i) relates only to 2015-

2017 Golf and Golf GTI vehicles, not Werner's 2017 Alltrack (Id., ¶ 82) and (ii) relates to stress

cracks in the sunroof frame caused by "a difference in the expansion rate between the plastic

water channel and steel reinforcement plates"; not to the unidentified welding issue that Werner

claims was the cause of her alleged leak.  CACAC ¶ 303; Exh F. to Green Decl.; *Mandani v.*

*Volkswagen Grp. of Am.,* 2019 U.S. Dist. LEXIS 25381, at *21 (N.D. Cal. Feb. 15, 2019)

(rejecting pre-sale knowledge based on TSB identifying "[c]lacking or knocking noises directly

after a load change" because Plaintiff did not allege "any such noise" in his vehicle).

Similarly, the only TSB that applies to Gjonbalaj's 2018 Tiguan (dated March 27, 2019)

was issued more than 18 months *after* he purchased his vehicle on August 2017. CACAC ¶¶ 99-

100, 203.  In addition, while this TSB pre-dates the DelPretes' June 2019 lease, it addressed a

specific issue involving adhesion of the sunroof side seal to the body of the vehicle – an issue not

alleged by the DelPrete Plaintiffs.  *Id.* ¶ 430; *see also Granillo v. FCA US LLC*, 2016 U.S. Dist.

LEXIS 116573, at *31-32 (D.N.J. Aug. 29, 2016) (TSBs fail to show requisite knowledge if it

post-dated plaintiff's purchase or does not address the specific defect alleged by plaintiff);

*Blissard,* 2018 U.S. Dist. LEXIS 201725, at *37-38 (holding that the two TSBs alleged in the

complaint did not demonstrate defendant's pre-sale knowledge because, although it showed

FCA's awareness of sludge in general, there was no indication "that FCA knew that the cause of

such build-up was manufacturer-installed coolant" - the defect that was alleged).

The same holds true regarding Barden, Campbell, Ziarno, Cole, Govan, Hornick and

Cabezas.  Barden, Campbell and Ziarno do not allege that their 2016 VW Golf vehicles had the

issue identified in the 4 TSBs pertaining to them, *i.e.,* stress cracks at the edge of the

reinforcement plates of the sunroof frame due to a difference in the expansion rate between the

plastic water channel and steel reinforcement plates.  *See* CACAC ¶¶ 82, 86, 89, 93; Exhs. F-I to Green Decl.[17]  Cole, Govan, Hornick and Cabezas similarly fail to allege that their 2017 Alltrack and 2018 SportWagen vehicles had the issues identified in the TSBs pertaining to them.  Those TSBs identify distinct issues: (i) one TSB identifying spot welds and/or insufficient cleaning of the sunroof frame that may impact the outer sunroof seal from adhering to the body of the vehicle (CACAC ¶¶ 85; 94),[18] and (ii) one TSB[19] referencing a specific condition where the rear sunroof drain hoses may be pinched shut by foam blocks because of too much length in the sunroof drain between the second and third securing clips.  Exhs. J-) to Green Decl. None of these Plaintiffs allege any facts establishing that their vehicles exhibited any of the conditions to which these TSBs relate. CACAC ¶¶ 83, 98, 95, 101.  *Blissard,* 2018 U.S. Dist. LEXIS 201725, at *37-38; *Granillo*, 2016 U.S. Dist. LEXIS 116573, at *31-32.

Accordingly, the CACAC fails to plead facts establishing that either Defendant had knowledge of the defect alleged by Plaintiffs prior to the time in which Plaintiffs' vehicles were sold or leased.

### IV.    The Unjust Enrichment Claims Must Be Dismissed

All of the Plaintiffs' claims, except for Cabezas (MD), fail because unjust enrichment is an equitable remedy that cannot be asserted where, as here, Plaintiffs have failed to establish the absence of an adequate remedy at law.  *See Tomasella v. Nestlé USA, Inc*., 962 F.3d 60, 84, (1st

---

[17] The November 18, 2016 Tech Tip applicable to these Plaintiffs' Golf vehicles, which discusses cleaning the sunroof drains and adjusting the sunroof glass, fails to provide the requisite pre-sale knowledge for the same reason as none of these Plaintiffs claim that their leak was due to these issues identified in the Tip. CACAC ¶ 84.  In addition, this Tip was issued after Ziarno bought his vehicle and after Barden's vehicle was sold to its first purchaser.

[18] While Plaintiffs allege 2 TSBs, in actuality, there is only one, because the September 6, 2017 TSB is merely an update to the November 22, 2016 TSB.  CACAC ¶ 94.

[19] Plaintiffs allege 4 TSBs, but in actuality, there is only one TSB because the others are merely updates to the October 24, 2016 TSB. CACAC ¶¶ 98, 101.

Cir. 2020); *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 119769, *12-13, n.3 (N.D. Cal. Aug. 8, 2014) (FL,  IL, MA, NY law); *Rollolazo v. BMW of N. Am. LLC*, 2017 U.S. Dist. LEXIS 181157, *51-54 (C.D. Cal. Feb. 3, 2017) (FL law); *Madrigal v. Hint,* 2017 U.S. Dist. LEXIS 221801, *12 (C.D. Cal. Dec. 14, 2017) (CA law);  *City of Rockford v. Mallinckrodt ARD,* 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019); *In re GM LLC Ignition Switch Litig.,* 339 F. Supp. 3d 262, 337 (S.D.N.Y. 2018) (NJ law).

Furthermore, the unjust enrichment claims of all Plaintiffs, except for Barden, Cole and Campbell, must be dismissed because there can be no claim for unjust enrichment where the rights of the parties relate to a contract—in this case, the written express NVLWs applicable to the Plaintiffs' vehicles.  *In re GM LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 337-339 (S.D.N.Y. 2018) (NJ law) (same); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014); *Williams v. Yamaha Motor Corp.,* 2015 U.S. Dist. LEXIS 193825, *38 (C.D. Cal. Jan. 7, 2015) (CA and MD law); *Speier-Roche v. Volkswagen Group of Am., Inc*., 2014 U.S. Dist. LEXIS 59991, *25 (S.D. Fla. Apr. 30, 2014); *Sharp v. Bank of America, N.A*., 2020 U.S. Dist. LEXIS 62316, *18 (N.D. Ill. Mar. 31, 2020); *Santos v. Sanyo Mfg. Corp.,* 2013 U.S. Dist. LEXIS 63596, *19 (D. Mass. May 3, 2013).

The unjust enrichment claims of Barden and Hornick should also be dismissed because they purchased their vehicles "used" from third party entities not affiliated with Defendants. Their purchases did not confer a benefit on either Defendant, which is required in order to state such a claim under CA and MD law.  CACAC ¶¶ 321, 401; *Puhalla v. Mercedes-Benz USA,* LLC, 2020 U.S. Dist. LEXIS 92807, *151 (S.D. Fla. May 27, 2020) (dismissing unjust enrichment claims of used car purchasers under, *inter alia,* MA law); *Gerstle v. Am. Honda Motor Co*., 2017 U.S. Dist. LEXIS 62809, at *39 (N.D. Cal. Apr. 25, 2017) (same; CA law).

In addition, Plaintiffs' unjust enrichment claims are predicated upon the same fraud-based allegations as their fraudulent concealment and statutory consumer fraud claims.  Since Plaintiffs have not plead facts sufficient to state valid claims under those statutes, and have not established the essential requirements of pre-sale knowledge, reliance and duty to disclose, the unjust enrichment claims necessarily fail for the same reasons.  *O'Connor v. Ford Motor Co*., 2020 U.S. Dist. LEXIS 141393, *30 (N.D. Ill. Aug. 7, 2020) (Rule 9(b) applies to unjust enrichment claim premised upon fraud allegations); *Girard v. Toyota Motor Sales, U.S.A., Inc*., 316 Fed. Appx. 561, 563 (9th Cir. 2008); *see also Argabright v. Rheem Mfg. Co.,* 201 F. Supp. 3d 578, 613 (D.N.J. 2016); *IvyMedia Corp. v. iLIKEBUS, Inc*., 2015 U.S. Dist. LEXIS 91342 (D. Mass. July 13, 2015); *Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 718 (D. Md. 2020); *Hughes v. Ester C Co.,* 330 F. Supp. 3d 862 (E.D.N.Y. 2018) (dismissing claim that is duplicative of the claims under consumer protection statutes and further holding that unjust enrichment claim should be dismissed "where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed"); *Licul v. Volkswagen Group of Am*., 2013 U.S. Dist. LEXIS 171627, *18 (S.D. Fla. Dec. 5, 2013).

Finally, under NJ law, there is no claim for unjust enrichment in the absence of a "direct relationship between the parties."  *Merkin v. Honda N. Am., Inc.,* 2017 U.S. Dist. LEXIS 187233, *17 (D.N.J. Nov. 13, 2017).  This requires that plaintiff confer the alleged unjust benefit *directly* upon defendants.  *Id.*   Ziarno, the NJ Plaintiff, did not purchase his vehicle from either of the Defendants.  Thus, no "direct relationship between the parties" exists.  *Schechter v. Hyundai Motor Am*., 2019 U.S. Dist. LEXIS 126021, *34 (D.N.J. July 29, 2019) (dismissing claim because plaintiff leased his vehicle from an authorized Hyundai dealer, not the distributor, defendant

Hyundai Motor America); *Merkin,* 2017 U.S. Dist. LEXIS 16504 at *17-18 (same re Honda North America).

**V.    Plaintiffs Lack Standing to Bring Class Claims Relating to Audi Vehicles That They Did Not Purchase or Lease**

Plaintiffs, who purchased/leased only Volkswagen vehicles, lack standing to bring putative class claims relating to Audi vehicles. CACAC ¶ 46 (putative class vehicles include "2016-present Audi A3 Mk3, Audi Q3").  In this Circuit, a named plaintiff does not have standing to bring class action claims for products that he did not purchase unless "those products, and the false and deceptive manner in which they are marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." *Daniel v. Tootsie Roll Indus., LLC*, 2018 U.S. Dist. LEXIS 129143, *13 (S.D.N.Y. Aug. 1, 2018).  Here, other than a bald conclusory allegation that all of the sunroofs "are substantially similar in design, manufacture, and operation" (CACAC ¶47), Plaintiffs fail to allege any supporting facts establishing that the sunroofs in the putative class Audi vehicles are the same or share the same alleged defect(s) as the sunroofs in the Volkswagen vehicles.  Indeed, none of the TSBs or Tech Tips upon which Plaintiffs rely pertain to Audi vehicles, nor do the service actions applicable to certain Plaintiffs' Volkswagen vehicles pertain to any Audi vehicles.  In addition, Plaintiffs allege no facts establishing that any Audi vehicles were marketed in a false or deceptive manner.

Accordingly, the Court should strike the putative class claims relating to the Audi vehicles.  *See e.g., DiMuro v. Clinique Labs*., LLC, 572 F. App'x 27, 29 (2d Cir. 2014); *Hart v. BHH, LLC,* 2016 U.S. Dist. LEXIS 59943, *9 (S.D.N.Y. May 5, 2016).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants VWGoA and VWAG respectfully request that the CACAC be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), and that the putative class claims relating to Audi vehicles be stricken, together with such other and further relief as the Court deems just and proper.

Dated: October 2, 2020                    Respectfully submitted,

                                         HERZFELD & RUBIN, P.C.

                                         By: /s/ *Michael B. Gallub*
                                              Michael B. Gallub (4477)
                                              mgallub@herzfeld-rubin.com

                                         *Attorneys for Defendants Volkswagen Group of*
                                         *America, Inc. and Volkswagen AG*